Docket No.  21 Civ. 5762 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN BAERGA; STEVEN GREENE; GIOVANNA SANCHEZ-ESQUIVEL; and SARAH ARVIO, individually and on behalf of all others similarly situated, and COMMUNITY ACCESS, INC.; NATIONAL ALLIANCE ON MENTAL ILLNESS OF NEW YORK CITY, INC.; and CORRECT CRISIS INTERVENTION TODAY - NYC,

Plaintiffs,

- against -

CITY OF NEW YORK, BILL DE BLASIO; DERMOT F. SHEA; NYPD POLICE OFFICER KRZYSZTOF WNOROWSKI; NYPD POLICE OFFICER SHERON; NYPD POLICE OFFICER MCDOWELL; NYPD POLICE SERGEANT NATHAN MOLE; NYPD POLICE OFFICER MARTIN HABER; NYPD POLICE SERGEANT CARRKU GBAIN, NYPD POLICE OFFICER VIKRAM PRASAD; NYPD POLICE OFFICER ANDRE DAWKINS; NYPD POLICE OFFICER TYRONE FISHER; NYPD POLICE OFFICER DEVINDRA RAMAYYA; NYPD POLICE OFFICER JULIAN TORRES; NYPD OFFICER APRIL SANCHEZ, and NYPD OFFICERS JOHN and JANE DOES # 1-40,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

*HON. SYLVIA. O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
   *Attorney for Defendants City, de Blasio, Shea, Wnorowski,*
   *Sheron, Mole, Haber, Gbain, Dawkins, Fisher, Ramayya,*
   *Torres, Prasad, McDowell, and Sanchez*
   100 Church Street
   New York, N.Y. 10007
   *Of Counsel: Alan H. Scheiner*
        *Jeffrey F. Frank*
   Tel: (212) 356-2344/3541

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ III

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

STANDARD ON A MOTION TO DISMISS ...................................................................... 3

ARGUMENT

       POINT I

              PLAINTIFFS' CLAIMS FOR FALSE ARREST AND WARRANTLESS ENTRY SHOULD BE DISMISSED BECAUSE THERE WAS PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES FOR THE POLICE ACTIONS ................................................................. 3

              A.  Plaintiffs' Unlawful Seizure Claims Should be Dismissed Due to Probable Cause ..................................... 3

              B.  Plaintiffs' Unlawful Entry Claims Fail Due to Exigent Circumstances ......................................................... 7

       POINT II

              THREE INDIVIDUAL PLAINTIFFS FAIL TO STATE CLAIMS FOR EXCESSIVE FORCE ......................................... 8

       POINT III

              PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE ADA, THE REHABILITATION ACT, OR THE NYCHRL ............................................................................ 10

              A.  Plaintiffs' Claims under the ADA and the Rehabilitation Act Fail ............................................................ 10

              B.  Plaintiffs' NYCHRL Claims Also Fail ............................................. 13

**Page**

POINT IV

        THE    INDIVIDUAL    DEFENDANTS    ARE
        ENTITLED TO QUALIFIED IMMUNITY .............................................. 14

        A.  Arguable  Probable  Cause  Supported  Each
            Individual Plaintiff's Seizure ............................................. 15

        B.  Defendants Are Entitled to Qualified Immunity
            for their Use of Force to Seize Three of the Four
            Individual Plaintiffs ........................................................ 15

POINT V

        THE  ORGANIZATIONAL  PLAINTIFFS  LACK
        DIRECT OR ASSOCIATIONAL STANDING ...................................... 16

        A.  The  Organizational  Plaintiffs  Lack  Direct
            Standing ........................................................................... 16

        B.  The  Organizational  Plaintiffs  Also  Lack
            Associational Standing ...................................................... 18

POINT VI

        PLAINTIFFS'    *MONELL*    CLAIMS    ARE
        DEFICIENT AND SHOULD BE DISMISSED ...................................... 19

        A.  The Patrol Guide Section Cited By Plaintiff is
            Constitutional and Cannot Serve as Bases for
            their *Monell* Claims ........................................................ 20

        B.  The Amended Complaint Fails to Establish a *De
            Facto* Policy or Practice.................................................. 22

        C.  Plaintiffs  Fail  to  Demonstrate  Deliberate
            Indifference..................................................................... 23

POINT VII

        PLAINTIFFS'  CLAIMS  UNDER  THE  NEW
        YORK  STATE  CONSTITUTION  *SHOULD*  BE
        DISMISSED ......................................................................... 24

CONCLUSION.................................................................................. 25

**Statutes**                                                                    **Pages**

**TABLE OF AUTHORITIES**

**Cases**                                                                       **Pages**

*Addington v Texas*,
    441 U.S. 418 (1979)...............................................................................21

*Al-Anesi v. City of New York*,
    18 Civ. 8439 (LAK) (GWG), 2022 U.S. Dist. LEXIS 100196
    (S.D.N.Y. June 6, 2022),
    *report and recommendation adopted at* 2022 U.S. Dist.
    LEXIS 140855 (S.D.N.Y. Aug. 8, 2022)...............................................14

*Allen v. Antal*,
    12 Civ. 8024 (NSR), 2014 U.S. Dist. LEXIS 79031,
    *aff'd*, 665 F. App'x 9 (2d Cir. 2016)......................................................25

*Anonymous v. City of Meriden*,
    10-CV-37 (MPS), 2013 U.S. Dist. LEXIS 72678
    (D. Conn. May 22, 2013).......................................................................20

*Arroyo v. City of New York*,
    683 F. App'x 73 (2d Cir. 2017) ...............................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................3

*Bahl v. Cnty. of Ramsey*,
    695 F.3d 778 (8th Cir. 2012) ................................................................12

*Batt v. Buccilli*,
    725 F. App'x 23 (2d Cir. 2018) .....................................................5, 7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................3

*Boddie v. City of New York*,
    15 Civ. 4275 (GHW), 2016 U.S. Dist. LEXIS 50248
    (S.D.N.Y. Apr. 13, 2016)................................................................23, 24

*Brigham City v. Stuart*,
    547 U.S. 398 (2006)................................................................................7

*Brown v. City of New York*,
    13 Civ. 1018 (KBF), 2016 U.S. Dist. LEXIS 53365
    (S.D.N.Y. Apr. 20, 2016).......................................................................14

**Cases**                                                                                          **Pages**

*Calderon v. City of New York,*
    138 F. Supp. 3d 593 (S.D.N.Y. 2015)..................................................................23

*Camoia v. City of New York,*
    09-CV-2545 (NGG) (LB), 2018 U.S. Dist. LEXIS 179355
    (E.D.N.Y. Oct. 16, 2018)..................................................................................13

*Carnegie-Mellon Univ. v. Cohill,*
    484 U.S. 343 (1988)..........................................................................................25

*Cash v. Cnty. of Erie,*
    654 F.3d 324 (2d Cir. 2011)..............................................................................19

*City of Canton v. Harris,*
    489 U.S. 378 (1989)..........................................................................................20

*Concepcion v. City of New York,*
    15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601
    (E.D.N.Y. May 6, 2019) ...................................................................................14

*Conn. Citizens Def. League, Inc. v. Lamont,*
    6 F.4th 439 (2d Cir. 2021) ...............................................................................17

*Conn. Parents Union v. Russell-Tucker,*
    8 F.4th 167 (2d Cir. 2021) ...............................................................................17

*Connick v. Thompson,*
    563 U.S. 51 (2011)............................................................................................23

*Cruz v. City of New Rochelle,*
    13 Civ. 7432 (LMS), 2017 U.S. Dist. LEXIS 63832
    (S.D.N.Y. Apr. 3, 2017)....................................................................................7

*Curley v. Village of Suffern,*
    268 F.3d 65 (2d Cir. 2001)................................................................................5

*Davis v. Shah,*
    821 F.3d 231 (2d Cir. 2016)..............................................................................10

*De Boise v. Taser Int'l, Inc.,*
    760 F.3d 892 (8th Cir. 2014) ...........................................................................12

*Disability Advocates, Inc. v McMahon,*
    279 F. Supp. 2d 158 (N.D.N.Y. 2003),
    *aff'd,* 124 F. App'x 674 (2d Cir. 2005)...........................................................12

**<u>Cases</u>**                                                                                                      **<u>Pages</u>**

*Disability Rights N.Y. v. New York*,
  17-CV-6965 (RRM) (SJB), 2019 U.S. Dist. LEXIS
  102609 (E.D.N.Y. June 14, 2019) ...................................................................18

*DJL Rest. Corp. v. City of New York*,
  749 N.E.2d 186 (N.Y. 2001)............................................................................13

*Dwares v. City of New York*,
  985 F.2d 94 (2d Cir. 1993)...............................................................................20

*Farooq v. N.Y.C. Health & Hosps. Corp.*,
  19 Civ. 6294 (JMF), 2020 U.S. Dist. LEXIS
  153815 (S.D.N.Y. Aug. 25, 2020) ....................................................................25

*Ferebee v. City of New York*,
  15 Civ. 1868 (PAC), 2017 U.S. Dist. LEXIS 104783
  (S.D.N.Y. July 6, 2017) ....................................................................................10

*Husbands ex rel. Forde v. City of New York*,
  335 F. App'x 124 (2d Cir. 2009) .........................................................................9

*Garcia v. Does*,
  779 F.3d 84 (2d Cir. 2015)................................................................................15

*Graham v. Connor*,
  490 U.S. 386 (1989)............................................................................................9

*Guan v. City of New York*,
  37 F.4th 797 (2d Cir. 2022) ................................................................................4

*Hainze v. Richards*,
  207 F.3d 795 (5th Cir. 2000) ............................................................................12

*Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
  15 Civ. 7065 (RA), 2019 U.S. Dist.
  LEXIS 137487 (S.D.N.Y. Aug. 14, 2019)........................................................11

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)..........................................................................................17

*Heller v. Bedford Cent. Sch. Dist.*,
  144 F. Supp. 3d 596 (S.D.N.Y. 2015),
  *aff'd*, 665 F. App'x 49 (2d Cir. 2016).................................................................4

*Jaegly v. Couch*,
  439 F.3d 149 (2d Cir. 2006)................................................................................4

**Cases**                                                                             **Pages**

*In re K.L.*,
  1 N.Y.3d 362 (2004) ...................................................................................................21

*Kash v. Honey*,
  38 F. App'x 73 (2d Cir. 2002) ...............................................................................9, 16

*Kass v. City of New York*,
  864 F.3d 200 (2d Cir. 2017) .......................................................................................14

*Keeney v. City of New London*,
  196 F. Supp. 2d 190 (D. Conn. 2002) .........................................................................8

*Kerman v. City of New York*,
  261 F.3d 229 (2d Cir. 2001) ....................................................................................4, 8

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018) ...............................................................................................15

*Leon v. Town Bd. of the Town of Ramapo*,
  22 Civ. 3965 (LTS), 2022 U.S. Dist. LEXIS
  129670 (S.D.N.Y. July 18, 2022) ................................................................................4

*Lynch v. Ackley*,
  811 F.3d 569 (2d Cir. 2016) .......................................................................................14

*Maccharulo v. N.Y. State Dep't of Corr. Servs.*,
  08 Civ. 301 (LTS), 2010 U.S. Dist. LEXIS
  73312 (S.D.N.Y. July 21, 2010) ................................................................................11

*Marom v. City of New York*,
  15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466,
  (S.D.N.Y. Mar. 7, 2016) .............................................................................................24

*Matthews v. City of New York*,
  15 Civ. 2311 (ALC), 2016 U.S. Dist. LEXIS 136907
  (S.D.N.Y. Sep. 30, 2016) .............................................................................................7

*McClarin v. City of New York*,
  16-CV-6846 (FB), 2020 U.S. Dist. LEXIS 104180
  (E.D.N.Y. June 15, 2020) .............................................................................................7

*McCollum v. City of New York*,
  16-CV-5272 (LDH), 2020 U.S. Dist. LEXIS 221433
  (E.D.N.Y. Nov. 25, 2020) ...........................................................................................10

**Cases**                                                                          **Pages**

*McLennon v. City of New York*,
171 F. Supp. 3d 69 (E.D.N.Y. 2016) ...................................................22

*Mental Hygiene Legal Serv. v. Cuomo*,
609 F. App'x 693 (2d Cir. 2015) ......................................................20

*Michigan v. Fisher*,
558 U.S. 45 (2009) (*per curiam*) .......................................................8

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ...........................................................14

*Monell v. Dep't of Soc. Servs. of City of New York*,
436 U.S. 658 (1978) ...............................................2, 19, 20, 21, 22, 23, 24

*N.J. Prot. & Advocacy, Inc. v. Davy*,
05-1784 (SRC), 2005 U.S. Dist. LEXIS 22749
(D.N.J. Sep. 30, 2005) ................................................................18

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
684 F.3d 286 (2d Cir. 2012) ...........................................................16

*Nunez v. City of New York*,
735 F. App'x 756 (2d Cir. 2018) .......................................................23

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) ..................................................................20

*Oliver v. City of New York*,
19 Civ. 11219 (PGG) (JLC), 2022 U.S. Dist. LEXIS 27053
(S.D.N.Y. Feb. 15, 2022) ..............................................................25

*Papineau v. Parmley*,
465 F.3d 46 (2d Cir. 2006) ..............................................................9

*Pluma v. City of New York*,
13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134,
(S.D.N.Y. Mar. 31, 2015) ..............................................................24

*Quon v. Henry*,
14 Civ. 9909 (RJS), 2017 U.S. Dist. LEXIS 60444
(S.D.N.Y. Mar. 27, 2017) ..............................................................16

*Reynolds v. Giuliani*,
506 F.3d 183 (2d Cir. 2007) ...........................................................24

**Cases**             **Pages**

*Ricciuti v. N.Y.C. Transit Auth.*,
   124 F.3d 123 (2d Cir. 1997)............................................................................5

*Rodriguez v. City of New York*,
   197 F.3d 611 (2d Cir. 2003)..........................................................................10

*Romano v. Howarth*,
   998 F.2d 101 (2d Cir. 1993)..........................................................................10

*Segal v. City of New York*,
   459 F.3d 207 (2d Cir. 2006)..........................................................................23

*Sims v. City of New York*,
   15 Civ. 2485 (AT), 2018 U.S. Dist. LEXIS 212966
   (S.D.N.Y. Dec. 17, 2018)...............................................................................11

*Singh v. City of New York*,
   19-CV-0632 (EK) (ST), 2022 U.S. Dist. LEXIS 114486
   (E.D.N.Y. June 28, 2022) ...............................................................................5

*Stephenson v. Doe*,
   332 F.3d 68 (2d Cir. 2003)............................................................................16

*Tardif v. City of New York*,
   991 F.3d 394 (2d Cir. 2021)..............................................................8, 10, 11

*Thomas v. Culberg*,
   741 F. Supp. 77 (S.D.N.Y. 1990) ..................................................................4

*Tieman v. City of Newburgh*,
   13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703,
   (S.D.N.Y. Mar. 26, 2015) ..............................................................................23

*Torres v. Bellevue S. Assocs. LLP*,
   16 Civ. 2362 (RA), 2020 U.S. Dist. LEXIS 33948
   (S.D.N.Y. Feb. 26, 2020),
   *report and recommendation adopted at* 2020 U.S. Dist. LEXIS 106953
   (S.D.N.Y. June 18, 2020)................................................................................7

*Tracy v. Freshwater*,
   623 F.3d 90 (2d Cir. 2010)..........................................................................8–9

*U.S. Women's Chamber Com. v. U.S. Small Bus. Admin.*,
   04-CV-01899, 2005 U.S. Dist.
   LEXIS 32497 (D.D.C. Nov. 30, 2005) ........................................................18

**Cases**                                                                 **Pages**

*United States v. Carreno-Arias,*
    02-CR-885 (WHP), 2002 U.S. Dist. LEXIS 24792,
    (S.D.N.Y. Dec. 27, 2002)....................................................................................8

*United States v. Sanchez,*
    635 F.2d 47 (2d Cir. 1980)..................................................................................8

*Vippolis v. Vill. of Haverstraw,*
    768 F.2d 40 (2d Cir. 1985)................................................................................20

*Walczyk v. Rio,*
    496 F.3d 139 (2d Cir. 2007)................................................................................5

*Walker v. City of New York,*
    12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272,
    (S.D.N.Y. Mar. 18, 2014) .................................................................................23

*Warth v. Seldin,*
    422 U.S. 490 (1975).........................................................................................16

*Weyant v. Okst,*
    101 F.3d 845 (2d Cir. 1996)..........................................................................3, 4

*White v. City of New York,*
    206 F. Supp. 3d 920 (S.D.N.Y. 2016).............................................................22

*White v. Pauly,*
    580 U.S. 73 (2017) (per curiam) .....................................................................15

*Women for Am. First v. De Blasio,*
    520 F. Supp. 3d 532 (S.D.N.Y. 2021)..............................................................17

*Wray v. City of New York,*
    490 F.3d 189 (2d Cir. 2007).............................................................................23

*Zalaski v. City of Hartford,*
    723 F.3d 382 (2d Cir. 2013).............................................................................15

**Statutes**

28 U.S.C. § 1367(c)(3)...........................................................................................25

42 U.S.C. § 1983...........................................................................1, 4, 8, 20, 24, 25

Fed. R. Civ. P. 12(b)(6)................................................................................1, 3, 14

**<u>Cases</u>**                                                                                    **<u>Pages</u>**

Fed. R. Civ. P. 23(b)(3)..............................................................................................3

N.Y.C. Admin. Code § 8-102 ....................................................................................13

N.Y.C. Admin. Code § 8-107(4)(a)(1)(a)..................................................................13

N.Y. Mental Hyg. Law § 9.41 ................................................1, 2, 4, 6, 7, 9, 11, 12, 13, 16, 20, 21

## PRELIMINARY STATEMENT

Plaintiffs bring a purported class action challenging law enforcement's role in enforcing New York State Mental Hyg. Law § 9.41.  In doing so, plaintiffs ask the Court to displace that policy of the State's elected officials with a sweeping new judicial regime, requiring private parties and civilian medical providers to be the sole responders to mental health crises presenting dangers to individual and public safety, all to be funded by taxpayers and subject to unelected oversight. (First Amended Complaint ("FAC"), Docket Entry No. 21, at pp. 66–67)  That claim, along with most of the plaintiffs' individual claims, is legally unfounded and should be dismissed.

Defendants City of New York ("City"), Bill de Blasio, Dermot Shea, Sergeant Nathan Mole, and Police Officers Krzysztof Wnorowski, Robert Sheron, Martin Haber, Carrku Gbain, Andre Dawkins, Tyrone Fisher, Devindra Ramayya, Julian Torres, Dylan McDowell, and Vikram Prasad (collectively "defendants") move to dismiss all claims in the FAC, except certain claims of one plaintiff,[1] pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  In the FAC, four individual plaintiffs Justin Baerga, Steven Greene, Giovanna Sanchez-Esquivel, and Sarah Arvio — bring claims under the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and the New York City Human Rights Law ("NYCHRL"), for alleged discrimination on the basis of a disability or perceived disability.  The individual plaintiffs also bring claims under claims under 42 U.S.C. § 1983 for unlawful seizure, excessive force, and municipal liability, and similar claims under New York state law for state constitutional violations, assault and battery, false imprisonment, and unreasonable detention.  Three organizational plaintiffs — Community Access, Inc. ("CAI"), National Alliance on Mental Illness of New York City, Inc. ("NAMI"); and Correct

---

[1] Defendants do not move to dismiss plaintiff Sarah Arvio's excessive force claim under § 1983, her battery claim under New York state law, or her *respondeat superior* claim.

Crisis Intervention Today–NYC ("CCIT") — bring claims under the same laws, presumably for the sweeping injunctive relief demanded in by the FAC.  (FAC at ¶¶ 226, 237, 252, 285, 297, 356)

The FAC should be dismissed with prejudice on the grounds that: (i) each individual plaintiff's seizure was supported by probable cause; (ii) three individual plaintiffs fail to state claims for excessive force; (iii) plaintiffs fail to state claims under the ADA, the Rehabilitation Act, or the NYCHRL; (iv) the organizational plaintiffs lack direct or associational standing; (v) plaintiffs' *Monell* claims are deficient; (vi) plaintiffs' state law claims fail as a matter of law; and (vi) the individual defendants are entitled to qualified immunity.

## STATEMENT OF FACTS[2]

Members of the NYPD responded to emergency calls stemming from alleged mental health crises experienced by each of the four individual plaintiffs.  (FAC at ¶¶ 120–121, 139–140, 162, 182)  Pursuant to N.Y. Mental Hyg. Law § 9.41 ("§ 9.41"), NYPD officers seized each individual plaintiff against their will and took them to a hospital for treatment.  (*Id.* at ¶¶ 132–134, 150–152, 156, 169–171, 189, 194)   Three non-profit organizations allege they were forced to expend additional resources to address mental health crises in the communities they serve and to engage in various forms of advocacy, thereby diverting resources from their other services and advocacy, because of the City's and NYPD's alleged inadequate response to mental health crises.  (*Id.* at ¶¶ 205–252)  Plaintiffs seek monetary damages and equitable relief on behalf of themselves and a putative class,[3] including not only an injunction preventing the NYPD from following current

---

[2] This statement of facts is based entirely on the allegations in the FAC and is not an admission of any such facts.  Should any claims discussed herein not be dismissed, defendants reserve the right to contest any fact alleged in the FAC.  For brevity in light of the Court's page limits, the specific facts relevant to each individual claim are addressed below.

[3] The four individual plaintiffs seek to represent a class "consisting of individuals who, because of their mental disability or perceived mental disability, have been, could have been, or will be seized,

policies for treating emotionally disturbed persons, but also a "remedial plan" directing "[i]mplementation of a new non-police mental health crisis response program operating independently of the NYPD." (*Id.* at pp. 66–67).

## STANDARD ON A MOTION TO DISMISS

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That tenet, however, is "inapplicable to legal conclusions." *Id.* Hence, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS FOR FALSE ARREST AND WARRANTLESS ENTRY SHOULD BE DISMISSED BECAUSE THERE WAS PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES FOR THE POLICE ACTIONS

**A.    Plaintiffs' Unlawful Seizure Claims Should be Dismissed Due to Probable Cause**

Plaintiffs' federal and state law claims for unlawful seizure are essentially false arrest claims. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest claims stem from "the

_____

detained and/or subjected to force with NYPD officers pursuant to NYPD Patrol Guide Procedure No. 221-13 or its equivalent and/or denied the appropriate response to mental health crises." (FAC at ¶ 253) Plaintiffs cannot prosecute a claim for such a class for numerous reasons, including, *inter alia,* the predominance of individualized issues arising in any potential claims of putative class members. *See* Fed. R. Civ. P. 23(b)(3). If the present motion to dismiss is granted, the putative class claims would be moot, and therefore defendants do not address plaintiffs' class allegations herein. Defendants reserve the right, should it be necessary, to oppose any motion for class certification, and oppose any class discovery.

Fourth Amendment right . . . to be free from unreasonable seizures, including arrest without probable cause").[4]  Probable cause is a complete defense to a false arrest claim under both § 1983 and state law.  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).  The probable cause inquiry turns on "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."  *Id.* at 153.  Under New York State law, a "police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others."  § 9.41.

Specifically, "for a mental health arrest, police officers must have reasonable grounds for believing that the person seized is dangerous to herself or others."  *Guan v. City of New York*, 37 F.4th 797, 805 (2d Cir. 2022) (quotations omitted).  "Courts have held that a showing of probable cause in the mental health seizure context requires only a probability or substantial chan[c]e of dangerous behavior, not an actual showing of such behavior."  *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015) (quotations omitted) (dismissing false arrest claim, holding defendant had probable cause to seize plaintiff pursuant to § 9.41, and granting defendant qualified immunity), *aff'd*, 665 F. App'x 49 (2d Cir. 2016); *accord Leon v. Town Bd. of the Town of Ramapo*, 22 Civ. 3965 (LTS), 2022 U.S. Dist. LEXIS 129670, at *9 (S.D.N.Y. July 18, 2022).

Thus, the "New York Mental Hygiene Law does not require that the threat of substantial harm to oneself or others be evidenced by overt act, attempts or threats."  *Thomas v. Culberg*, 741 F. Supp. 77, 81 n.1 (S.D.N.Y. 1990).  While an uncorroborated emergency call reporting a mentally ill person in distress is insufficient for probable cause to believe there is a medical exigency, *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir. 2001), the same is not true of "a complaint

---

[4] The law governing false arrest claims is the same under both federal and New York state law. *Weyant*, 101 F.3d at 852.

from an *identified* family member." *Batt v. Buccilli*, 725 F. App'x 23, 28 (2d Cir. 2018) (summary order) (emphasis in original) (affirming grant of qualified immunity to defendant officer who entered plaintiff's home without a warrant after plaintiff had "told him not to come inside, and declined to simply bring the allegedly endangered octogenarian outside (or to a window)").

"Whether a person seized pursuant to the NYMHL is later found to be mentally competent and released is irrelevant to the probable cause analysis." *Singh v. City of New York*, 19-CV-0632 (EK) (ST), 2022 U.S. Dist. LEXIS 114486, at *16 (E.D.N.Y. June 28, 2022).  In other words, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).  "In sum, probable cause does not demand any showing that a good-faith belief be correct or more likely true than false." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (quotation omitted).)

Here, in each incident, a 911 operator was informed that the respective plaintiff was having a mental health crisis.  (FAC at ¶¶ 120–121, 139–140, 162, 182)  The 911 operator was so informed — not by an anonymous caller — but by an identified individual who knew each plaintiff.  (*Id.* at ¶ 120) (alleging plaintiff Baerga's mother called 911); (*id.* at ¶ 144) (alleging plaintiff Greene's ex-girlfriend called 911)[5]; (*id.* at ¶ 162) (alleging plaintiff Sanchez-Esquivel's boyfriend called 911); (*see id.* at ¶¶ 175–182) (alleging facts from which the Court can infer that plaintiff Arvio's

---

[5] The FAC alleges an EMS employee told plaintiff Greene that an unidentified social worker had reported he was suicidal, although that was false and it was Greene's girlfriend who called..  (FAC ¶ 144)  But assuming that is so, and whatever the caller's motive,  Greene's ex-girlfriend is an identifiable person who knew him — not an anonymous caller — who conveyed facts to the authorities as alleged.

hepatologist's secretary had called 911).  Thus, each 911 call here was not anonymous; rather, each of the 911 calls was made by an identifiable individual who knew the relevant plaintiff.

Further, the facts available to the officers who responded to each scene provided objectively reasonable bases for plaintiffs' seizures pursuant to § 9.41:

- Plaintiff Baerga's mother reported to the 911 operator that her son was breaking things in their apartment, and officers arrived to find plaintiff Baerga had "locked himself in the apartment."  (*Id.* at ¶¶ 120, 123)  Baerga's mother also informed police officers and Emergency Medical Services personnel "that her son had mental issues."  (*Id.* at ¶ 126)

- The caller reporting plaintiff Greene's crisis stated that Greene was suicidal, and when police responded Greene "became increasingly anxious" and walked away from the officers.  (*Id.* at ¶¶ 144, 147, 149)

- Plaintiff Sanchez-Esquivel's boyfriend called 911 and reported that she "had been having a 'manic episode' for multiple days."  (*Id.* at ¶ 162)  Officers arrived shortly thereafter, and she repeatedly pled with them to leave for 30 to 40 minutes.  (*Id.* at ¶¶ 164–165, 168)

- Plaintiff Arvio told her hepatologist's secretary, in "an expression of frustration," that she felt "like jumping off the bridge."  (*Id.* at ¶¶ 175, 178)  When officers arrived at Arvio's home minutes later, they stated they had received a call about suicide.  (*Id.* at ¶¶ 179, 182)[6]

Given these allegations, based on the facts available to officers at the time, there was probable cause under § 9.41 to seize each plaintiff and transport them to a hospital for treatment. *See, e.g.*, *Arroyo v. City of New York*, 683 F. App'x 73, 74 (2d Cir. 2017) (probable cause existed to remove plaintiff to a hospital under § 9.41, where officers observed plaintiff "acting in an erratic

---

[6] When officers explained they were mandated to take her to a hospital, Arvio requested that they bring her to a specific hospital.  (*Id.* at ¶ 182)

and unresponsive manner"); *Matthews v. City of New York*, 15 Civ. 2311 (ALC), 2016 U.S. Dist. LEXIS 136907, at *16 (S.D.N.Y. Sep. 30, 2016) ("[A] report of a suicide threat does more to establish probable cause than a report of erratic behavior.  Suicide threats naturally call for more reliance on the informant and less independent evaluation than a report of strange behavior.").

**B.    Plaintiffs' Unlawful Entry Claims Fail Due to Exigent Circumstances**

Plaintiffs' unlawful entry claims fail because exigent circumstances justified defendants' entry into each plaintiff's home.  "The warrantless entry and subsequent search of a residence is presumed unlawful unless justified by 'exigent circumstances' like the need to 'render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'"  *McClarin v. City of New York*, 16-CV-6846 (FB), 2020 U.S. Dist. LEXIS 104180, at **7–8 (E.D.N.Y. June 15, 2020) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  To determine whether this "emergency aid exception" applies, "the dispositive question is simply whether there was *an objectively reasonable basis* for believing that medical assistance was needed, or persons were in danger."  *Batt*, 725 F. App'x at 25–26 (emphasis in original) (quotations omitted).  Where § 9.41 authorizes police officers to seize an individual, exigent circumstances may permit officers' warrantless entry to effect that seizure.  *See, e.g.*, *Torres v. Bellevue S. Assocs. LLP*, 16 Civ. 2362 (RA) (KNF), 2020 U.S. Dist. LEXIS 33948, at *40 (S.D.N.Y. Feb. 26, 2020) (officers' actions did not violate plaintiff's constitutional rights "because of the: (1) exigent circumstances under which they acted; and (2) relevant New York law which permitted the seizure," § 9.41), *report and recommendation adopted at* 2020 U.S. Dist. LEXIS 106953, at *8 (S.D.N.Y. June 18, 2020); *Cruz v. City of New Rochelle*, 13 Civ. 7432 (LMS), 2017 U.S. Dist. LEXIS 63832, at **40–49 (S.D.N.Y. Apr. 3, 2017) (officers' warrantless entry into plaintiff's apartment was objectively reasonable under both the emergency aid doctrine and § 9.41); *see also id.* at **56–59 (holding defendants

also entitled to qualified immunity for warrantless entry); *Keeney v. City of New London*, 196 F. Supp. 2d 190, 195–97 (D. Conn. 2002) (officers had a reasonable basis to believe plaintiff was a threat to himself or others, and exigent circumstances justified their warrantless entry).

Where, as here, an identified individual who knew each plaintiff called 911, reporting that the person was in danger and needed mental health care, *supra* at pp. 6–7, the emergency aid exception applies and each entry was lawful (or, at least, qualified immunity protects the officers). *See Batt*, F. App'x at 28 (distinguishing *Kerman*, 261 F.3d at 235–36) (granting qualified immunity for warrantless wellness check under emergency aid exception).[7]

### POINT II

### THREE INDIVIDUAL PLAINTIFFS FAIL TO STATE CLAIMS FOR EXCESSIVE FORCE

As explained above, based on the facts alleged, defendants had probable cause to believe that plaintiffs Baerga, Greene, and Sanchez-Esquivel posed danger to themselves or others. *Supra* at pp. 6–7. For the same reasons, no force used against these plaintiffs as alleged was excessive as a matter of law. Thus, their federal and state law excessive force claims[8] should be dismissed.

Determining whether an officer's use of force was reasonable is a fact-intensive inquiry in which the Court must consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v.*

---

[7] Further, as to plaintiff Arvio, the officers had implicit consent to enter the apartment, or at a minimum their entry is protected by qualified immunity, so her warrantless entry claim fails for that reason, as well. (FAC at ¶ 179) (Arvio "opened the door for" the officers); *see United States v. Sanchez*, 635 F.2d 47, 60 (2d Cir. 1980) (consent where the defendant's son opened the door and stood back in response to a request to enter).

[8] "The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'" *Tardif v. City of New York*, 991 F.3d  394, 410 (2d Cir. 2021).

*Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts must balance those factors from the perspective of a reasonable officer on the scene. *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). That a suspect resists arrest adds weight to the first factor, in favor of a finding that officers used reasonable force. *Tracy*, 623 F.3d at 98.

The allegations in the FAC, viewed, as they must be, from the perspective of a reasonable officer on the scene, show that the officers had reasonable grounds reason to believe that each plaintiff was experiencing a dangerous mental health crisis and was a danger to themselves or others, and that the responding officers used force reasonable incident to effectuating lawful seizures pursuant to § 9.41. (*See, e.g.*, FAC at ¶¶ 123, 127, 130, 132–133) (45 minutes after plaintiff Baerga had locked himself in in the apartment, he exited, whereupon officers pushed him against a wall, to the ground, held him down, punched his upper back, placed him in handcuffs, strapped him to a gurney, and placed him in an ambulance); (*id.* at ¶¶ 147–151) (after plaintiff Greene walked away from the officers, they handcuffed him, dragged him against his will out of his apartment, placed him on a gurney, strapped him in, and placed him inside an ambulance); (*id.* at ¶¶ 168–170) (as plaintiff Sanchez-Esquivel was not willing to go to the hospital, officers handcuffed her and carried her out of her apartment building's lobby "when she refused to leave").

Such force as is alleged — a punch of Baerga, holding or carrying the plaintiffs — is reasonable incident to an arrest or is *de minimis* and therefore not actionable. "Not every push or shove, even if it may later seem unnecessary in this peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. "One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009); *see also Kash v. Honey*, 38 F. App'x 73, 77 (2d Cir. 2002) (intentional elbowing that did not result in any injury did not amount

to a Fourteenth Amendment violation).  "[A] *de minimis* use of force will rarely suffice to state a

constitutional claim."  *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993); *see also Ferebee v.*

*City of New York*, 15 Civ. 1868 (PAC), 2017 U.S. Dist. LEXIS 104783, at *20 (S.D.N.Y. July 6,

2017) ("A successful excessive force claim requires sufficient evidence to establish that the alleged

use of force was serious or harmful enough to be actionable.").  Accordingly, plaintiffs Baerga,

Greene, and Sanchez-Esquivel's excessive force claims should be dismissed.

**POINT III**

**PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE ADA,**
**THE REHABILITATION ACT, OR THE NYCHRL**

Plaintiffs fail to allege facts to plausibly show that they were treated differently *because of*

their actual or perceived disability.  As such, their claims under the ADA, the Rehabilitation Act,

and the NYCHRL fail.

**A.      Plaintiffs' Claims under the ADA and the Rehabilitation Act Fail**

"Courts in this circuit analyze claims asserted pursuant to the ADA and the Rehabilitation

Act in tandem."  *McCollum v. City of New York*, 16-CV-5272 (LDH), 2020 U.S. Dist. LEXIS

221433, at **5–6 (E.D.N.Y. Nov. 25, 2020) (citing *Rodriguez v. City of New York*, 197 F.3d 611,

618 (2d Cir. 2003)).  To state a claim under Title II of the ADA, a plaintiff must show "(1) that

she is a qualified individual with a disability; (2) that she was excluded from participation in a

public entity's services, programs or activities or was otherwise discriminated against by a public

entity; and (3) that such exclusion or discrimination was due to her disability."  *Davis v. Shah*, 821

F.3d 231, 259 (2d Cir. 2016) (quotations omitted).  A plaintiff can proceed under three theories:

disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable

accommodation.  *Tardif*, 991 F.3d at 404 (affirming dismissal of ADA claim).

The Second Circuit's decision in *Tardif* is instructive: "At its core, the issue here is not whether [plaintiff] was denied medical services because she has a disability.  Instead, her claim relates solely to whether she received adequate medical treatment in police custody for her disability, and such a claim is not cognizable under the ADA."  *Id.* at 405.  In other words, where a plaintiff "merely asserts that his disability was not adequately treated, not that he was treated inadequately because of his disability," he fails to state claims under the ADA or the Rehabilitation Act.  *Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 15 Civ. 7065 (RA), 2019 U.S. Dist. LEXIS 137487, at **54–55 (S.D.N.Y. Aug. 14, 2019) (quotations omitted).

Here, plaintiffs' ADA and Rehabilitation Act claims fail for the same reasons those claims failed in *Tardif* and *Harrell*.  Plaintiffs allege "[t]he involvement of NYPD officers in interactions involving individuals with mental disabilities or perceived mental disabilities, the provision of mental health services, and responding to mental health crises, are programs and activities of the City of New York."  (FAC at ¶ 275)  Yet plaintiffs do not allege defendants' conduct deprived any one of them an accommodation due to their mental health problems.  Instead, they allege each was taken to a hospital *for* treatment for their disability.[9]  Thus, plaintiffs' challenge is to the *adequacy* of their treatment, which is not a cognizable claim under the ADA.  *See, e.g.*, *Sims v. City of New York*, 15 Civ. 2485 (AT) (SDA), 2018 U.S. Dist. LEXIS 212966, at *7 (S.D.N.Y. Dec. 17, 2018) ("Plaintiff contends not that he *was* treated differently because of his disability, but that he *should have been* treated differently."); *Maccharulo v. N.Y. State Dep't of Corr. Servs.*, 08 Civ. 301 (LTS), 2010 U.S. Dist. LEXIS 73312, at *10 (S.D.N.Y. July 21, 2010) ("[A] claim that challenges the

---

[9] In other words, if the City provided buses to transport the disabled, but the buses were driven negligently, that would not violate the ADA just because the service was intended to assist disabled persons.  Just so, the police "programs and activities" of implementing § 9.41 is a service for the benefit of the mentally ill, even if plaintiffs do not wish to receive the benefit or think it is conducted inadequately.

adequacy, or the substance, of services that are being provided to a disabled individual is not a valid claim under either the ADA or the Rehabilitation Act." (internal citations omitted)).

Plaintiffs also contend that defendants failed to accommodate them "by failing to provide non-police services to them knowing that such services are more appropriate for individuals with mental disabilities." (FAC at ¶¶ 282, 294, 350) Again, such allegations challenge the adequacy of plaintiffs' treatment and fail to show plaintiffs were treated less well *because* of their disabilities.

Moreover, the ADA was not intended to authorize courts to micro-manage law enforcement responses to public safety emergencies presenting a danger of physical harm, such as those at issue here. *See, e.g.*, *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 898–99 (8th Cir. 2014) ("'[W]e will not second guess [an officer's] judgments, where . . . an officer is presented with exigent or unexpected circumstances.'" (quoting *Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 784–85 (8th Cir. 2012))); *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) ("Title II [of the ADA] does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.").

In contending the City violates plaintiffs' rights by having police respond to mental health crises, plaintiffs implicitly contend § 9.41 is preempted by the ADA. But, as explained above, § 9.41 expressly authorizes police to take persons into custody if there is probable cause to believe that they are mentally ill and present a danger to themselves or others. *See* Point I.A, *supra*. No court has ever held that § 9.41 (or, to defendants' knowledge, any similar law) is preempted by the ADA or any federal law, and there is no plausible argument that it should be. *Cf. Disability Advocates, Inc. v McMahon*, 279 F. Supp. 2d 158, 163–69 (N.D.N.Y. 2003) (holding § 9.41 grants police legal authority to arrest and dismissing plaintiff's claims under the ADA, the Rehabilitation

Act, the Equal Protection Clause, and the Due Process Clause), *aff'd*, 124 F. App'x 674 (2d Cir. 2005). The ADA was not enacted to empower the Court to dictate public safety policies to State and local authorities, which necessarily entails the consideration of numerous competing goals and tradeoffs that the people elect their representatives to confront and resolve. Accordingly, the Court should dismiss plaintiffs' claims under the ADA and the Rehabilitation Act.

**B.    Plaintiffs' NYCHRL Claims Also Fail**

"NYCHRL claims are analyzed separately and under a more liberal standard than ADA or NYSHRL claims." *Camoia v. City of New York*, 09-CV-2545 (NGG) (LB), 2018 U.S. Dist. LEXIS 179355, at *22 (E.D.N.Y. Oct. 16, 2018) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)). The NYCHRL prohibits providers of public accommodation, including governmental bodies or agencies and their employees, from refusing, withholding, or denying to any person "the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" because of such person's actual or perceived disability. N.Y.C. Admin. Code §§ 8-102, 8-107(4)(a)(1)(a). "The proper inquiry under the NYCHRL is whether a plaintiff was treated less well because of her [perceived disability]." *Camoia*, 2018 U.S. Dist. LEXIS 179355, at **22–23. For the same reasons explained in Point III.A, *supra*, plaintiffs challenge only the adequacy of their treatment and otherwise fail to show they were treated less well because of their actual or perceived disability. Moreover, to the extent plaintiffs contend that police officers should not respond to mental health crises, they are in conflict with § 9.41. But City statutes cannot supersede New York State law. *DJL Rest. Corp. v. City of New York*, 749 N.E.2d 186, 189 (N.Y. 2001). Thus, plaintiffs' claims under the NYCHRL should be dismissed.

**POINT IV**

**THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

Even if the Court finds defendants used excessive force or lacked probable cause to seize any individual plaintiff, defendants are nonetheless entitled to qualified immunity from plaintiffs' state and federal law claims.[10]   Based on the allegations in the FAC, each seizure was supported by arguable probable cause, and the force used to effectuate three of those seizures was objectively reasonable.[11]   Qualified immunity provides immunity from suit rather than just a defense to liability.  *See, e.g.*, *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016).  That "benefit is effectively lost if a case is erroneously permitted to go to trial." *Id.*  Therefore, it is necessary that qualified immunity questions "be resolved at the earliest possible stage of litigation." *Id.* (quotation omitted).  The affirmative defense of qualified immunity sets a "high bar" for plaintiffs, as it is firmly established that "qualified immunity gives ample room for mistaken judgments and provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Brown v. City of New York*, 13 Civ. 1018 (KBF), 2016 U.S. Dist. LEXIS 53365, at *17 (S.D.N.Y. Apr. 20, 2016) (quotation omitted).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[10] Qualified immunity applies equally to state law as well as federal claims.  *See Concepcion v. City of New York*, 15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601, at *14 (E.D.N.Y. May 6, 2019) (applying qualified immunity to state and federal false arrest claims) (citing *Kass v. City of New York*, 864 F.3d 200, 206, 213-14 (2d Cir. 2017) (dismissing federal and state law false arrest claims)); *Al-Anesi v. City of New York*, 18 Civ. 8439 (LAK) (GWG), 2022 U.S. Dist. LEXIS 100196, at *29 (S.D.N.Y. June 6, 2022) (applying qualified immunity to state law excessive force claims), *report and recom. adopted at* 2022 U.S. Dist. LEXIS 140855 (S.D.N.Y. Aug. 8, 2022).

[11] Defendants do <u>not</u> concede that the force allegedly used to seize plaintiff Arvio was unreasonable, rather only that her excessive force claim would survive at the 12(b)(6) stage.

*Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation omitted).  The Supreme Court has emphasized that "clearly established law should not be defined at a high level of generality" but rather "must be particularized to the facts of the case."  *White v. Pauly*, 580 U.S. 73, 79 (2017).

### A.      Arguable Probable Cause Supported Each Individual Plaintiff's Seizure

An officer is immune from a false arrest claim if there was arguable probable cause. *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013).  Specifically, immunity attaches if "(a) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotations omited).  To determine whether an officer's conduct was objectively reasonable, courts "look to the information possessed by the officer at the time of arrest." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quotations omitted).

At the time of the alleged incidents, there was no Supreme Court or Second Circuit law holding that it would be constitutionally impermissible for police officers to seize an individual and transport them to a hospital for treatment based on: (1) an identified 911 caller's concerns about the individual's behavior and mental well-being; and (2) facts available to the officers at the scene supporting a reasonable inference that the individual was experiencing a mental health crisis and may be dangerous to herself or others.   At the least, officers of reasonable competence could disagree on whether the probable cause test was met.  As such, defendants are entitled to qualified immunity on plaintiffs' unlawful seizure claims.

### B.      Defendants Are Entitled to Qualified Immunity for their Use of Force to Seize Three of the Four Individual Plaintiffs

Defendants are also entitled to qualified immunity on plaintiffs Baerga, Greene, and Sachez-Esquivel's excessive force claims.  "The Second Circuit has held that 'the qualified immunity defense is generally available against excessive force claims [where] a reasonable

officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Quon v. Henry*, 14 Civ. 9909 (RJS), 2017 U.S. Dist. LEXIS 60444, at *35 (S.D.N.Y. Mar. 27, 2017) (quotation omitted); *see also Kash*, 38 F. App'x at 76 ("brief and minimal use of force" was objectively reasonable where officer reasonably but mistakenly believed suspect was likely to fight back). Moreover, "[e]ven officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force." *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003).

As of August 25, 2019, May 6, 2020, or November 7, 2020, there was no Supreme Court or Second Circuit law holding that it would violate the Fourth Amendment for police officers to use the amount of force necessary to effectuate the seizure of a non-compliant individual pursuant to § 9.41. At a minimum, assuming *arguendo* that defendants' alleged actions crossed "the sometimes hazy border between excessive and acceptable force," they are nonetheless entitled to qualified immunity because competent police officers could disagree about whether the force used was reasonable. *See, e.g.*, *Quon*, 2017 U.S. Dist. LEXIS 60444, at *35 (granting qualified immunity). As such, defendants are entitled to qualified immunity on plaintiffs Baerga, Greene, and Sanchez-Esquivel's excessive force claims.

## POINT V

### THE ORGANIZATIONAL PLAINTIFFS LACK DIRECT OR ASSOCIATIONAL STANDING

#### A.    The Organizational Plaintiffs Lack Direct Standing

An organization has "standing in its own right to seek judicial relief from injury to itself," *Warth v. Seldin*, 422 U.S. 490, 511 (1975), where the organization "meet[s] the same standing test that applies to individuals." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294

(2d Cir. 2012) (quotations omitted).  Hence, whether an organization or an individual, "a plaintiff must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Women for Am. First v. De Blasio*, 520 F. Supp. 3d 532, 541 (S.D.N.Y. 2021) (quotations omitted); *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 448 (2d Cir. 2021) (plaintiff organization lacked standing, as a plaintiff seeking injunctive relief cannot rely on past injury but instead must show a likelihood it will be injured in the future).  "[A]n organization may suffer the requisite injury when it 'diverts its resources away from its [other] current activities,' or otherwise incurs 'some perceptible opportunity cost.'" *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  Further, an organization can satisfy the injury prong if it shows that the challenged action did not merely harm its "abstract social interests" but "perceptibly impaired" its activities.  *Id.*

Here, the three plaintiff organizations lack direct standing.  Plaintiffs allege each organization has had to expend additional resources to care or advocate for individuals they allege were improperly and unlawfully seized by NYPD members due to actual or perceived mental illness.  (FAC at ¶¶ 208, 215–219, 229–235, 241–243, 245)  Each organization alleges it has had to divert resources away from certain programs or advocacy in favor of other programs or advocacy.  (*Id.* at ¶¶ 208, 216, 223, 225, 232, 235–236, 241–242, 245, 249–251)  Each organization "seeks injunctive relief . . . in order to remedy the harms it has experienced by trying to eliminate [or avoid] Defendants' discriminatory practices and to enable it to devote its resources to providing services" or "engage in broader mental health advocacy."  (FAC at ¶¶ 226, 237, 252)

However, the FAC is devoid of facts underlying specific instances in which any of the three organizations had to divert their resources, and this is fatal to their claims.  *See Conn. Citizens Def. League*, 6 F.4th at 448 (assertions that a plaintiff organization continues to expend and divert its

resources are conclusory, cannot support standing, and did not establish a likelihood of future injury).   Moreover, plaintiffs fail to allege what their resources have been diverted *from*.   Rather, it appears that the very purpose of the plaintiff organizations is to expend resources on the matters alleged.   A plaintiff doing what it is organized to do is not an injury, and it does not confer standing. *See, e.g.*, *U.S. Women's Chamber Com. v. U.S. Small Bus. Admin.*, 04-CV-01899, 2005 U.S. Dist. LEXIS 32497 at **25–26 (D.D.C. Nov. 30, 2005) (public interest group's decision to lobby against the law they challenge is their own budgetary choice, not a cognizable injury granting standing).

**B.    The Organizational Plaintiffs Also Lack Associational Standing**

The organizational plaintiffs, to maintain a claim under associational standing, must demonstrate: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Disability Rights N.Y. v. New York*, 17-CV-6965 (RRM) (SJB), 2019 U.S. Dist. LEXIS 102609, at *14 (E.D.N.Y. June 14, 2019) (quotations omitted).

The FAC fails to establish that any of the three organizational plaintiffs have members who would otherwise have standing to sue in their own right.   CAI manages housing units where some of the residents have mental disabilities and provides counseling and other services to such individuals.   (FAC at ¶¶ 209–210)   But the mere fact that CAI serves such residents is not enough to show they are its members.   *See, e.g.*, *N.J. Prot. & Advocacy, Inc. v. Davy*, 05-1784 (SRC), 2005 U.S. Dist. LEXIS 22749, at *9 (D.N.J. Sep. 30, 2005) (indicia of membership are found where "constituents remain involved in all levels of the organization" and "have the power to exert significant influence over the [its] priorities and activities").   The FAC alleges vaguely that CAI's

staff have been traumatized by police encounters (*id.* at ¶¶ 219–220) but the FAC offers no specifics about these alleged encounters or the role of staff in those encounters.[12]

Similarly, NAMI fails to establish that it has members that were injured. NAMI serves families and individuals affected by mental disabilities by providing information and various services. (*Id.* at ¶ 228)  Utterly absent from the FAC, however, are facts showing that NAMI has members or that its clients have indicia of membership, or allegations of injury to any member.

CCIT alleges its "members include nearly 80 New York nonprofit organizations, as well as individual members." (*Id.* at ¶ 238)  But the FAC fails to allege facts showing that those members have standing. The FAC is silent as to whether the alleged members suffered any injuries in fact for which CCIT now sues. (*See Id.* at ¶¶ 238–252)  CCIT makes the conclusory allegation that it has organizational members, including CAI and NAMI, that have experienced harm similar to CAI and NAMI. (*Id.* at ¶¶ 240–242)  But since CAI and NAMI lack standing, as explained above, the other member organizations that "experience similar harms" also lack standing.

## POINT VI

## PLAINTIFFS' *MONELL* CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

Plaintiffs fail to allege a viable claim against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), because the FAC fails allege facts showing both the existence of a municipal policy or custom and that such policy was the proximate cause of an alleged constitutional violation. *See Cash v. Cnty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011)

---

[12] Nor is there reason to believe that unidentified staff are 'members.' "Where an association is not a traditional voluntary membership organization, its constituents must nevertheless possess sufficient indicia of membership." *Mental Hygiene Legal Serv. v. Cuomo*, 609 F. App'x 693, 695 (2d Cir. 2015) (quotations omitted) (affirming dismissal as organizational plaintiff lacked associational standing). The FAC is devoid of allegations suggesting any unidentified organizational "staff" have indicia of membership. Thus, CAI lacks associational standing to sue.

("'[P]roximate cause,' although derived from tort law, fairly describes a plaintiff's causation burden with respect to a municipal liability claim under § 1983.").  The mere conclusory allegation that a municipality has such a custom or policy that caused a constitutional violation is insufficient in the absence of factual allegations tending to support a plausible inference that the conclusory allegation is true.  *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

"Plaintiff must *demonstrate* that the municipal "policy" at issue was the "moving force" behind her injuries.  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).   As the Supreme Court has made clear, "the identified deficiency . . . must be closely related to the ultimate injury."    *Id.*; *accord Anonymous v. City of Meriden*, 10-CV-37 (MPS), 2013 U.S. Dist. LEXIS 72678, at **14–16 (D. Conn. May 22, 2013).   "The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation.  There must at least be an affirmative link between the [policy] alleged, and the particular constitutional violation at issue."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.") (quotations and citations omitted)).

Plaintiffs purport to proceed on three theories of *Monell* liability: (1) the existence of a formal policy, (FAC at ¶¶ 10, 62–64) (locating a specific EDP Policy in NYPD Patrol Guide § 221-13 ("PG § 221-13"); (2) the existence of a "*de facto* policy or custom," (*id.* at ¶ 322); (3) and deliberate indifference.  (*Id.* at ¶¶ 323–327).  Each theory fails to support plaintiffs' claims.

A.     **The Patrol Guide Cannot Serve as Bases for Plaintiff's *Monell* Claim**

Although the FAC coyly avoids contending that any New York State law is unconstitutional, plaintiffs' theories require that the Court implicitly set aside New York State's § 9.411, which specifically calls upon *the police* to take into custody for treatment mentally ill

persons that are a danger to themselves or others. The FAC insists that the police should not be involved in the role that New York State law calls upon them to serve. (*See* FAC at ¶ 16) (mental health crises "are not matters of law enforcement but rather are health issues that require the services of health professionals"); (*id.* at ¶ 67) (demand for removal of police from responses to mental health crises and requiring non-governmental "first responder teams"). PG § 221-13, upon which plaintiffs rely for their *Monell* claim, mirrors the language codified in § 9.41. *Compare* PG § 221-13 (instructing that the stated procedures apply "[w]hen a uniformed member of the service reasonably believes that a person who is apparently mentally ill or emotionally disturbed, must be taken into protective custody because the person is conducting himself in a manner likely to result in a serious injury to himself or others") *with* § 9.41 (stating a "police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others").[13]

There is no doubt that § 9.41, and therefore the NYPD policy implementing it, is constitutional. The state "has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." *In re K.L.*, 1 N.Y.3d 362, 370 (2004) (quoting *Addington v Texas*, 441 U.S. 418, 426 (1979)). "Accordingly, where a patient presents a danger to self or others, the state may be warranted, in the exercise of its police power interest in preventing violence and maintaining order, in mandating treatment over the patient's objection."

---

[13] Plaintiffs suggest that the Patrol Guide's provisions regarding persons who are "not violent and willing to leave voluntarily" are unconstitutional or cause constitutional violations. (FAC at ¶ 63) But the Patrol Guide provides that if someone is "not violent, and willing to leave voluntarily," they should be escorted for medical treatment that is — by the policy's terms — *voluntary*, and prohibits the use of force that is not reasonably necessary. (FAC, *Exhibit A* at pp. 2, 5–6) Moreover, none of the plaintiffs allege that they agreed to go for medical treatment, but rather the opposite, so that portion of the Patrol Guide is causally and logically irrelevant to their claims.

*Id.* As the City policy simply implements a valid New York state law — the constitutionality of which plaintiffs do not and cannot challenge — that policy cannot form the basis of a *Monell* claim.

### B.      The Amended Complaint Fails to Establish a *De Facto* Policy or Practice

Plaintiffs also fails to establish a *de facto* policy or practice. Even numerous claims against a municipality are insufficient to state a plausible *Monell* claim unless they are coupled with findings of liability. *White v. City of New York,* 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (*Monell* claim failed to support existence of municipal policy where plaintiff cited 6 incidents over a 5-year period, and those "half dozen incidents describe a range of conduct" and "none ha[d] resulted in an admission or finding of liability"); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 96 (E.D.N.Y. 2016) (similar). Here, aside from their four experiences, plaintiffs allege facts concerning 23 incidents over a 17-year period.[14] (FAC at ¶¶ 69(b)–(x)) Fatal to plaintiffs' *Monell* claim is their failure to allege that any of the 23 incidents resulted in admissions or findings of liability. Moreover, none of the other 23 incidents are factually similar to plaintiffs'. *Compare id.* (alleging that in 22 of those 23 incidents, police officers killed an individual) *with id.* at ¶¶ 119, 139, 162, 175 (alleging each plaintiff was seized and brought to a hospital for treatment).

Even if the other incidents are factually similar to plaintiffs', and even if they resulted in a finding of misconduct, those incidents are too few to establish a *de facto* practice. Rather, all 28 incidents — culled from a 17 year period — comprise only a tiny fraction of the number of actual or apparent mental health crises to which NYPD police officers responded during that time. (*See* FAC at ¶ 83) ( "NYPD responds to approximately 200,000 'EDP' calls a year" but the true number "is likely much larger"). Even if all 28 incidents alleged in the FAC had occurred in a single year,

---

[14] Plaintiffs also allege facts about a 1984 incident. (FAC at ¶¶ 59, 69(a)) That incident is excluded from this total because it falls outside — by two decades — the more recent range during which all other alleged incidents occurred.

rather than over 17 years, they would constitute, at most, 0.014% of the mental health crisis calls to which NYPD officers responded.  Thus, these allegations fall far short of plausibly alleging "misconduct sufficiently persistent or widespread as to indicate a pattern acquir[ing] the force of law." *Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018) (quotations omitted) (affirming dismissal of *Monell* claims where plaintiff had cited 48 instances of prosecutorial misconduct over 23 years involving different conduct from that alleged by plaintiff).[15]

### C.    Plaintiffs Fail to Demonstrate Deliberate Indifference

Plaintiffs' *Monell* claim also fails under a deliberate indifference theory.  A "failure to train . . . employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train . . . led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick v. Thompson*, 563 U.S. 51, 68 (2011).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61; *accord Boddie v. City of New York*, 15 Civ. 4275 (GHW), 2016 U.S. Dist. LEXIS 50248, at *11 (S.D.N.Y. Apr. 13, 2016).  "A training

---

[15] *See also Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (16 lawsuits over 12 years in New York City were inadequate to plead a municipal custom); *Tieman v. City of Newburgh*, 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *50 (S.D.N.Y. Mar. 26, 2015) (13 allegations of thirteen instances "of excessive force during arrests over four years . . . during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate" a widespread practice); *Walker v. City of New York*, 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at **6–7 (S.D.N.Y. Mar. 18, 2014).

program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007); *Boddie*, 2016 U.S. Dist. LEXIS 50248, at \*13–14 ("A report recommending improvements to an existing training program . . . does not, without more, give rise to a plausible inference of deliberate indifference on the part of the City."). Here, the FAC offers a litany of policy rationales in support of their argument that the City's current training program is inadequate. (*See* FAC at ¶¶ 73–108) But those alleged theoretical inadequacies do not, without more, equate to deficiencies of a constitutional proportion.

Moreover, the City must be on notice that its training is resulting in constitutional violations. Given the relatively small number of alleged — and unproven, dissimilar — incidents that plaintiffs cite to as purported misconduct, their claim fails the notice requirement. *See Boddie*, 2016 U.S. Dist. LEXIS 50248, at \*13 (small number of dissimilar incidents alleged does not support deliberate indifference); *Pluma v. City of New York*, 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134, at \*\*35–36 (S.D.N.Y. Mar. 31, 2015) (a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations"); *Marom v. City of New York*, 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at \*77 (S.D.N.Y. Mar. 7, 2016) (study suggesting further investigation of prior alleged incidents of force was insufficient to state a failure-to-train claim). Thus, the FAC fails to state a deliberate-indifference *Monell* claim.

## POINT VII

### PLAINTIFFS' CLAIMS UNDER THE NEW YORK STATE CONSTITUTION *SHOULD* BE DISMISSED

"It is well-settled that no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of

parallel provisions of the U.S. Constitution." *Oliver v. City of New York*, 19 Civ. 11219 (PGG) (JLC), 2022 U.S. Dist. LEXIS 27053, at \*\*40–41 (S.D.N.Y. Feb. 15, 2022) (quotations omitted). That is so even if all of a plaintiff's § 1983 claims are dismissed. *See, e.g.*, *Allen v. Antal*, 12 Civ. 8024 (NSR), 2014 U.S. Dist. LEXIS 79031, at \*\*14–15, \*57 (dismissing all of plaintiff's § 1983 claims), *aff'd*, 665 F. App'x 9, 11 (2d Cir. 2016). Because all of the plaintiffs' New York State constitutional claims are duplicative of their Section 1983 claims, they should be dismissed. [16]

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the abovementioned claims in the amended complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      September 13, 2022

            HON. SYLVIA O. HINDS-RADIX
            Corporation Counsel of the City of New York
            *Attorney for Defendants City, de Blasio,*
              *Shea, Wnorowski, Sheron, Mole, Haber,*
              *Gbain, Dawkins, Fisher, Ramayya, Torres,*
              *Prasad, McDowell and Sanchez*
            100 Church Street, Rm. 377
            New York, New York 10007
            (212) 356-2344

            By:    *Alan H. Scheiner* /s/
                  Alan H. Scheiner
                  *Senior Counsel*

cc:     All Counsel (via ECF)

---

[16] Even if some state law claims survive, if a plaintiff's federal claims are dismissed the Court should decline to exercise supplemental jurisdiction over those plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). In addition, "[b]ecause the law governing claims under the NYCHRL is still developing, [plaintiffs'] NYCHRL claims present questions 'best left to the courts of the state of New York." *Farooq v. N.Y.C. Health & Hosps. Corp.*, 19 Civ. 6294 (JMF), 2020 U.S. Dist. LEXIS 153815, at \*\*34–35 (S.D.N.Y. Aug. 25, 2020) (quotations omitted).