Docket No.  21 Civ. 5762 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN BAERGA; STEVEN GREENE; GIOVANNA SANCHEZ-
ESQUIVEL; and SARAH ARVIO, individually and on behalf of all others
similarly situated, and COMMUNITY ACCESS, INC.; NATIONAL
ALLIANCE ON MENTAL ILLNESS OF NEW YORK CITY, INC.; and
CORRECT CRISIS INTERVENTION TODAY - NYC,

Plaintiffs,

- against -

CITY OF NEW YORK, BILL DE BLASIO; DERMOT F. SHEA; NYPD
POLICE OFFICER KRZYSZTOF WNOROWSKI; NYPD POLICE
OFFICER SHERON; NYPD POLICE OFFICER MCDOWELL; NYPD
POLICE SERGEANT NATHAN MOLE; NYPD POLICE OFFICER
MARTIN HABER; NYPD POLICE SERGEANT CARRKU GBAIN,
NYPD POLICE OFFICER VIKRAM PRASAD; NYPD POLICE
OFFICER ANDRE DAWKINS; NYPD POLICE OFFICER TYRONE
FISHER; NYPD POLICE OFFICER DEVINDRA RAMAYYA; NYPD
POLICE OFFICER JULIAN TORRES; NYPD OFFICER APRIL
SANCHEZ, and NYPD OFFICERS JOHN and JANE DOES # 1-40,

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN
THE AMENDED COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)**

***HON. SYLVIA. O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
  *Attorney for Defendants City, de Blasio, Shea, Wnorowski,*
  *Sheron, Mole, Haber, Gbain, Dawkins, Fisher, Ramayya,*
  *Torres, Prasad, McDowell, and Sanchez*
100 Church Street
New York, N.Y. 10007
*Of Counsel: Alan H. Scheiner*
        *Jeffrey F. Frank*
Tel: (212) 356-2344/3541

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT

    POINT I

        THE INDIVIDUAL PLAINTIFFS' § 1983 CLAIMS FAIL........................................................................................... 1

        A.  Plaintiffs Fail to Demonstrate there was not Probable Cause for their Seizures....................................... 1

        B.  Plaintiffs Fail to Demonstrate the Absence of Exigent Circumstances ...................................................... 2

        C.  Defendants are Entitled to Qualified Immunity................................... 3

    POINT II

        THE DISABILITY DISCRIMINATION CLAIMS FAIL UNDER ANY OF PLAINTIFFS' STATUTORY THEORIES ....................................................... 4

    POINT III

        PLAINTIFFS' *MONELL* CLAIMS FAIL AS THEY DISCLAIM ANY CHALLENGE TO § 9.41, A VALID STATE STATUTE THAT IS MIRRORED BY PG § 221-13........................................................................ 8

    POINT IV

        THE ORGANIZATIONAL PLAINTIFFS HAVE FAILED TO DEMONSTRATE STANDING ........................................ 10

CONCLUSION.................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

*Amnesty Am. v. Town of W. Hartford*,
361 F.3d 113 (2d Cir. 2004)................................................................................9

*Arroyo v. City of New York*,
14 Civ. 9953 (JPO), 2016 U.S. Dist. LEXIS 89274
(S.D.N.Y. July 8, 2016),
*aff'd* 683 F. App'x 73 (2d Cir. 2017).................................................................4

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004) ...............................................................................10

*Bd. of Managers v. 72 Berry St., LLC*,
801 F. Supp. 2d 30 (E.D.N.Y. 2011) ..................................................................10

*Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*,
955 F.3d 305 (2d Cir. 2020)...............................................................................7

*Disability Advocates, Inc. v. McMahon*,
124 F. App'x 674 (2d Cir. 2005) .........................................................................5

*Doe v. Pfrommer*,
148 F.3d 73 (2d Cir. 1998)..................................................................................7

*Dunkelberger v. Dunkelberger*,
14 Civ. 3877 (KMK), 2015 U.S. Dist. LEXIS 133814
(S.D.N.Y. Sep. 30, 2015) .....................................................................................3

*Felix v. City of New York*,
2020 U.S. Dist. LEXIS 189223
(S.D.N.Y. Oct. 13, 2020) .....................................................................................8

*Hazen Paper Co. v. Biggins*,
507 U.S. 604 (1993)..............................................................................................7

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011)...........................................................................2, 8

*Mercedes v. City of New York.*,
17 Civ. 7368 (AKH), 2019 U.S. Dist. LEXIS 243820
(S.D.N.Y. Oct. 4, 2019) .......................................................................................6

*Michigan v. Fisher*,
558 U.S. 45 (2009)................................................................................................3

**Cases**                                                                                        **Pages**

*NRA of Am. v. Vullo*,
    49 F.4th 700 (2d Cir. 2022) ......................................................................................3

*Rodriguez v. Winski*,
    444 F. Supp. 3d 488 (S.D.N.Y. 2020) ...................................................................10

*Spiro v. Healthport Techs., LLC*,
    73 F. Supp. 3d 259 (S.D.N.Y. 2014) .....................................................................10

*Sauer v. Town of Cornwall*,
    20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284
    (S.D.N.Y. Sep. 30, 2022) .........................................................................................9

*Sha v. N.Y.C. Police Dep't 20th Precinct, Detectives, Officers Doe*,
    03-CV-5273 (DAB), 2005 U.S. Dist. LEXIS 6505
    (S.D.N.Y. Apr. 18, 2005) .........................................................................................3

*Soller v. Boudreaux*,
    12-CV-0167 (SJF), 2015 U.S. Dist. LEXIS 14084
    (E.D.N.Y. Feb. 3, 2015) ...........................................................................................3

*United States v. Simmons*,
    560 F.3d 98 (2d Cir. 2009) .......................................................................................3

*Wood v. Moss*,
    572 U.S. 744 (2014) ..................................................................................................3

**Statutes**

42 U.S.C. § 1983 ....................................................................................................................1

N.Y. Mental Hyg. L. § 9.01 .................................................................................................3

N.Y. Mental Hyg. L. § 9.41 ..............................................................................1, 2, 4, 5, 6, 7, 8

PG § 221-13 ...............................................................................................................1, 5, 6, 8

## PRELIMINARY STATEMENT

Plaintiffs' opposition fails to show why defendants' motion should be denied, in part because plaintiffs fail to show that any constitutional rule or federal law prohibits the NYPD from enforcing the provisions of N.Y. Mental Hyg. L. § 9.41 ("§ 9.41") (A "police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others.")  The Court should grant defendants' motion to dismiss because, among other things, (i) the Disability Discrimination Claims[1] fail because the disability statutes were not intended, as plaintiffs presume, to authorize the judicial micromanaging of constitutionally valid law enforcement actions in emergency situations; and (ii) the *Monell* claims fail because plaintiffs' theory relies on challenging the NYPD Patrol Guide ("PG") § 221-13, which mirrors in all relevant parts § 9.41, a constitutionally upheld state statute that plaintiffs disclaim any intent to challenge.

## ARGUMENT

### POINT I

### THE INDIVIDUAL PLAINTIFFS' § 1983 CLAIMS FAIL

**A.    Plaintiffs Fail to Demonstrate there was not Probable Cause for their Seizures**

Plaintiffs' opposition to dismissal of their unlawful seizure claims contends only with straw-man arguments.  First, plaintiffs place undue emphasis on the 911 calls.  (Memorandum of Law in Opposition to Motion to Dismiss ("Opp."), Docket Entry ("DE") No. 103, at pp. 7–8)  Of course, "an uncorroborated emergency call reporting a mentally ill person in distress is insufficient for probable cause to believe there is a medical exigency."  (D. Mem. at p. 3)  But that is not what happened here; rather the 911 calls *were corroborated*: each call was made by an identifiable

---

[1] The "Disability Discrimination Claims" refers to the claims under the Americans with Disabilities Act, the Rehabilitation Act, and the New York City Human Rights Law.  Defendants adopt herein the same definitions used in their Memorandum of Law in Support of Defendants' Motion to Dismiss  (DE No. 102) ("D. Mem.").

individual who knew the relevant plaintiff, and the callers' reports were corroborated by the officers' personal observations.  (*Id.* at pp. 4–6)  Plaintiffs' argument ignores these crucial facts.

Second, plaintiffs point to "the parties' myriad factual disputes" (Opp. at p. 8), but defendants moved for dismissal, not summary judgment, and their motion, relies, as it must, on plaintiffs' well-pleaded factual allegations.  The Court need not accept as true any legal conclusions, nor draw any unreasonable inferences from the amended complaint ("AC").  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).  ("Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.").  Plaintiffs' attempt to raise factual disputes where none yet exist is unavailing.  (*See generally* Opp. at 8–9)

Third, plaintiffs argue their concocted disputes somehow render the affirmative defense of probable cause "inappropriate" at this stage.  (*Id.*at p. 8)  Of course, cases in this Circuit granting a motion to dismiss a false arrest claim based on the defense of probable cause are legion, and plaintiffs concede it is "possible."  (*Id.* at p. 9 n.1)  It is plainly plaintiffs' burden to plead sufficient factual matter to enable the Court to determine whether they stated plausible claims for unlawful seizure.  Thus, nothing here precludes the Court from reading the AC and concluding — as defendants have — that based only on the facts alleged, taken as true, there was probable cause to seize each plaintiff pursuant to § 9.41.

### B.    Plaintiffs Fail to Demonstrate the Absence of Exigent Circumstances

Plaintiffs overstate the showing required to invoke the emergency aid exception to the warrant requirement.  Plaintiffs argue they "were not *threatening* serious injury to themselves or others."  (Opp. at p. 10)  But threats are just one way a person could be conducting himself in a manner likely to result in serious harm.  A substantial risk of physical harm can be shown by "other

conduct demonstrating that the person is a danger to himself." N.Y. M.H.L. § 9.01. "Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception,' and the court must refrain from 'replacing the objective inquiry into appearances with a hindsight determination that there was in fact no emergency." *Soller v. Boudreaux*, 12-CV-0167 (SJF), 2015 U.S. Dist. LEXIS 14084, at *31 (E.D.N.Y. Feb. 3, 2015) (quoting *Michigan v. Fisher*, 558 U.S. 45, 49 (2009)) (quotations and brackets omitted).

Where a tip to 911 is not anonymous, that "points toward the existence of probable cause." *Dunkelberger v. Dunkelberger*, 14 Civ. 3877 (KMK), 2015 U.S. Dist. LEXIS 133814, at **26–27 (S.D.N.Y. Sep. 30, 2015); *see Sha v. N.Y.C. Police Dep't 20th Precinct, Detectives, Officers Doe*, 03-CV-5273 (DAB), 2005 U.S. Dist. LEXIS 6505, at *16 (S.D.N.Y. Apr. 18, 2005) (probable cause for warrantless entry, and noting "[t]he fact that [the complainant] was not an anonymous caller is a crucial point"). Moreover, even "an anonymous 911 call reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality." *United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009). The calls here — together with the officers' observations — made it objectively reasonable for officers to enter each plaintiff's home to effect a seizure under § 9.41.

## C.   Defendants are Entitled to Qualified Immunity

Plaintiffs argue it is too early to decide whether defendants are entitled to qualified immunity. Not so. "Although qualified immunity defenses are often decided on motions for summary judgment, in appropriate circumstances a district court may address qualified immunity at the pleadings stage." *NRA of Am. v. Vullo*, 49 F.4th 700 (2d Cir. 2022) (reversing denial of motion to dismiss on grounds that defendant entitled to qualified immunity). The Supreme Court has "repeatedly stressed the importance of deciding immunity questions at the earliest possible stage of the litigation." *Wood v. Moss*, 572 U.S. 744, 755 n.4 (2014) (quotation omitted).

To determine whether defendants are entitled to qualified immunity, "the question is not whether the Officers had probable cause to arrest [plaintiff] under MHL § 9.41. The question, instead, is whether a reasonable officer could have believed that there was probable cause." *Arroyo v. City of New York*, 14 Civ. 9953 (JPO), 2016 U.S. Dist. LEXIS 89274, at *12 (S.D.N.Y. July 8, 2016), *aff'd* 683 F. App'x 73 (2d Cir. 2017). For the reasons stated above and in defendants' moving papers, a reasonable officer could have believed there was probable cause to enter each plaintiff's home and seize each plaintiff pursuant to § 9.41. (*See* D. Mem. at Point IV) Further, plaintiffs Baerga, Greene, and Sanchez-Esquivel protested and/or resisted being taken to the hospital. (*Id.* at p. 9) (collecting relevant factual allegations). At a minimum, reasonable police officers could disagree about whether the force used to transport those plaintiffs for mental health treatment was reasonable. (*Id.* at Point IV.B) Accordingly, even if those plaintiffs have adequately pled excessive force claims, the officers are nonetheless entitled to qualified immunity.

## POINT II

### THE DISABILITY DISCRIMINATION CLAIMS FAIL UNDER ANY OF PLAINTIFFS' STATUTORY THEORIES

Plaintiffs' arguments for their Disability Discrimination Claims only underscore the faults of such claims. Plaintiffs maintain they "never allege that the medical treatment the NYPD provided for their disabilities was inadequate." (Opp. at p. 15) Instead, plaintiffs argue the "NYPD is the improper responder" to mental health emergencies. (*Id.* at p. 16) This runs contrary to § 9.41, which expressly authorizes police to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." § 9.41. Hence, the New York State legislature has determined that police *are* the proper responders to mental health emergencies. The only way to reach a contrary result is to challenge § 9.41 as unconstitutional or preempted by the ADA or Rehabilitation Act,

(D. Mem. at pp. 12–13), but plaintiffs expressly disclaim any such challenge.  (Opp. at p. 23)

Plaintiffs fail to state any basis upon which this Court may substitute plaintiffs' preferred policy

for that chosen by the democratically elected representatives of the people of New York.

Moreover, § 9.41 and PG § 221-13 are designed to accommodate "any person who appears

to be mentally ill" and is behaving "in a manner which is likely to result in serious harm to the

person or others."  *Compare* § 9.41 *with* PG § 221-13 (applicable to "a person who is apparently

mentally ill" and "conducting himself in a manner likely to result in serious injury to himself or

others").  The statute is clearly aimed to benefit and accommodate the mentally ill, not punish

them.  Section 9.41 provides that the person taken into custody shall be taken to a hospital or a

"comprehensive psychiatric emergency program," or, if that is not immediately feasible,

"temporarily detain[ed] . . . in another safe and  comfortable place," with notice to the relevant

public health authorities.  § 9.41.  Thus, plaintiffs' disability discrimination claims fail because §

9.41 is aimed at those with disabilities in order to accommodate them and provide them with

services.  *See Disability Advocates, Inc. v. McMahon*, 124 F. App'x 674, 676 (2d Cir. 2005)

(affirming dismissal of ADA and Rehabilitation Act claims against police officers "because New

York's *mental health pick-up program extends only to the disabled* or those who would likely be

regarded as disabled" (emphasis added)).

Plaintiffs do not challenge the statute,[2] but attempt to contrast § 9.41 with PG § 221-13,

focusing entirely on that part of PG § 221-13 stating that the police may remove an Emotionally

Disturbed Person (or "EDP") who is "unarmed, not violent, and willing to leave voluntarily,"

without taking other specifically mandated actions (*e.g.*, authorization of a supervisor or calling

---

[2] Although repeatedly disclaiming a challenge to § 9.41, plaintiffs rely on the New York City Charter for the idea that the police are not permitted to respond under § 9.41.  (Opp. at p. 16 n.7)  The City Charter says no such thing, but even if it did it cannot supersede state law.  Plaintiffs repeated challenge to police involvement in enforcing § 9.41 is contrary to the statute's plain terms, and underscores the illogic of their argument.

for an Emergency Services Unit).  (AC, Exhibit 1, at p. 4); (*see* D. Mem. at p. 22 n. 13)  Plaintiffs

contend this is a mandate that allows officers to seize any person who appears to be mentally ill,

"regardless of their behavior based on their disability or perceived disability alone."  (Opp. at p.

5)  Plaintiffs are wrong on the face of PG § 221-13.

PG § 221-13 applies, in its entirety, only to an "EDP," which it defines as "[a] person who

appears to be mentally ill or temporarily deranged *and* is conducting himself in a manner which a

police officer reasonably believes is likely to result in serious injury to himself or others."  (AC,

Exhibit 1, at p. 1) (emphasis added)  Thus, PG § 221-13 contains the same conjunction as § 9.41

— "and" — which plaintiffs hail as all-important.  (Opp. at p. 22)  The "Procedure" section further

explains that PG § 221-13 applies "[w]hen [an officer] reasonably believes that a person who is

apparently mentally ill or emotionally disturbed, must be taken into protective custody *because*

the person is conducting himself in a manner likely to result in a serious injury to himself or

others."  (*Id.* at 2) (italics added).  Contrary to plaintiffs' reading, PG § 221-13 is not a mandate

for officers to seize any person who appears to be mentally ill, "regardless of their behavior based

on their disability or perceived disability alone."  (Opp. at p. 5)  Rather, on its face it does *not*

apply to the mentally ill unless their behavior risks injury.

Plaintiffs' narrow focus on the language "unarmed, not violent, and willing to leave

voluntarily" conflates the words "armed" and "violent" with the statute's much different standard

of "conducting himself or herself in a manner which is likely to result in serious harm to the person

or others."  It is well settled the statute does not require a person to be armed or violent to be taken

into custody.  *See, e.g.*, *Mercedes v. City of New York.*, 17 Civ. 7368 (AKH), 2019 U.S. Dist.

LEXIS 243820, at **10–11 (S.D.N.Y. Oct. 4, 2019) (a person who is not violent and not armed

may be taken into custody under § 9.41).  Moreover, no plaintiff alleges they were willing to leave

voluntarily for treatment.  (D. Mem. at p. 21 n.13)  And if they, or any EDP, were willing to leave for treatment voluntarily, there could be no claim for their seizure under the Fourth Amendment.

Plaintiffs also argue that their Disability Discrimination Claims must proceed because defendants did not specifically address the theories of disparate treatment or disparate impact, notwithstanding that the AC did not assert those theories.  In any event, it is patently obvious that plaintiffs cannot recover under such theories.  "'Disparate treatment is the most easily understood type of discrimination.  The [defendant] simply treats some people less favorably than others because of their . . . protected characteristic[].  Proof of discriminatory motive is critical.'" *Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co.*, 955 F.3d 305, 311 (2d Cir. 2020) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993).  "'Claims that stress disparate impact by contrast involve . . . practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.  Proof of discriminatory motive is not required under a disparate-impact theory.'" *Id.* (quoting *Hazen Paper Co.*, 507 U.S. at 609).

Here, § 9.41 and the policy implementing it apply on their face *only* to disabled persons, and therefore, absent a challenge to the statute there can be no claim that the statute or its application are discriminatory.  As the Second Circuit has recognized, "where the handicapping condition is related to the benefit provided, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory.'" *Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998). In other words, only those who appear mentally ill are subject to § 9.41 — as plaintiffs concede — and therefore those rules discriminate, if at all, on their face.  But plaintiffs repeatedly disclaim any attempt to challenge that facially discriminatory nature of § 9.41.

As defendants previously established, the disability statutes do not govern emergency situations where officers must determine whether to take action under § 9.41.  (D. Mem. at 12)  Plaintiffs rely on *Felix v. City of New York*, 2020 U.S. Dist. LEXIS 189223, at *15 (S.D.N.Y. Oct. 13, 2020), for the proposition that the ADA governs police interactions with the mentally ill.  That may be true in some circumstances, but by no means all.  (D. Mem. at p. 12–13)  *Felix* is inapposite.  The claims in *Felix* arose after police engaged in the voluntary questioning of a mentally ill person, who was not in police custody, as part of a non-emergency criminal investigation.  *Id*. at *15.  Therefore, neither § 9.41 nor PG § 221-13 were invoked by the defendants, and plaintiffs claimed that City training was deficient in situations *not* covered by those provisions.[3]

## POINT III

### PLAINTIFFS' MONELL CLAIMS FAIL AS THEY DISCLAIM ANY CHALLENGE TO § 9.41

The *Monell* claims suffer from much of the same defects as the Disability Discrimination Claims.  (Point III.B, *supra*)  As explained above, plaintiffs strain to contrast § 9.41 with PG § 221-1, (Opp. at 5, 22–23), but can only point to a distinction without a difference.  (Point III. B, *supra*)  The Court need not credit plaintiffs' unreasonable inferences.  *L-7 Designs, Inc.*, 647 F.3d at 430. Since PG § 221-13 tracks § 9.41— a valid New York State statute that plaintiffs say they do not challenge — plaintiffs are left without a City policy to challenge on their *Monell* claim.[4]

---

[3] It is preposterous to construe the disability statutes — calling for the reasonable accommodations to disabled persons in non-emergency contexts — to mandate judicial micromanaging of the police where officers are called upon by statute to enforce the law in evolving and dangerous situations.  In fact, *none* of the cases on which plaintiffs rely apply the disability statutes to § 9.41 or similar circumstances.  (*See generally* Opp. at Point III)

[4] Plaintiffs expressly state that they do not claim that the City's training is deficient, but solely that PG § 221-13 is deficient.  (Opp. at p. 24) ("Plaintiffs do not make a failure to train allegation as the policy as a whole is deeply flawed and cannot be remedied by training.")

The AC also fails to state a plausible claim based on a *de facto* policy.[5]  "To demonstrate the existence of a *de facto* policy or custom through a widespread practice, a plaintiff must allege the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively sanctioning or approving the conduct."  *Sauer v. Town of Cornwall*, 20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284, at **15–16 (S.D.N.Y. Sep. 30, 2022) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).  Plaintiffs' allegations regarding a *de facto* policy appear in the AC at ¶¶ 59–117, (*see* Opp. at p. 23), but those allegations detail the City's efforts to consider and implement new policies surrounding mental health and law enforcement.  Such efforts and considerations hardly constitute deliberate indifference.

The AC asserts the City "sanctioned a *de facto* policy or custom of excessive force against those police identify as "EDP's," including by the use of standard police tactics which have the predictable result of escalating the risk of harm to persons undergoing mental health crises."  (AC at ¶ 322)  But, as defendants previously established, the AC fails to cite sufficient incidents similar to plaintiffs' to show this alleged practice is sufficiently widespread to constitute a policy.  (*See* D. Mem. at Point VI.B)  Plaintiffs further assert that defendants "were on notice through these 23 egregious incidents that their policy . . . resulted in avoidable and tragic outcomes . . . "  (Opp. at p. 24) (citing AC at ¶ 69)  But the AC does not state whether *any* of the other incidents alleged in ¶ 69 resulted in admissions or findings of liability, nor does it allege other facts of those incidents from which excessive force could be plausibly inferred.  And, as defendants previously established, these factually dissimilar incidents are a tiny fraction of the total number of mental health calls to which NYPD responded in those 17 years.  (D. Mem. at Point VI.B)

---

[5] It is unclear how plaintiffs conclude "Defendants do not appear to challenge that Plaintiffs have adequately pled the existence of a formal or *de facto* municipal policy."  (Opp. at p. 23)  Point VI.B of D. Mem. is directly addressed to a *de facto* theory.

## POINT IV

## THE ORGANIZATIONAL PLAINTIFFS HAVE
## FAILED TO DEMONSTRATE STANDING

Plaintiffs contend that they have standing because they "diverted" resources to voluntarily help individuals harmed by the City policy. But it is well settled that good Samaritans do not obtain standing by voluntarily helping victims who have been injured. *See, e.g.*, *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 268–69 (S.D.N.Y. 2014) ("Plaintiffs' theory that a discretionary decision after-the-fact to reimburse another party for a charge confers standing on the reimbursing entity would vastly broaden Article III standing."). Nor do the organizations have standing to seek damages for their members. "Because individual participation is almost invariably required for any claim seeking damages, courts have been reluctant to allow associational standing in cases that seek monetary relief." *Bd. of Managers v. 72 Berry St., LLC*, 801 F. Supp. 2d 30, 34–35 (E.D.N.Y. 2011).[6]

## CONCLUSION

For the foregoing reasons and those stated in their moving papers,[7] defendants respectfully request that the Court dismiss the abovementioned claims in the amended complaint, with prejudice, together with such other and further relief as the Court deems just and proper.

---

[6] *See also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). Moreover, the "organization lacks standing to assert claims of injunctive relief on behalf of its members where" as here, "the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof." *Id.* (quotation omitted). The organizational plaintiffs also fail to make the specific allegations required to establish standing. *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 494–95 (S.D.N.Y. 2020).

[7] For brevity, defendants do not respond to every point in plaintiffs' Opposition, but rely on their moving papers for the response to any matter not expressly addressed here.

Dated:        New York, New York[8]
              November 14, 2022

                                        HON. SYLVIA O. HINDS-RADIX
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendants City, de Blasio, Shea,*
                                            *Wnorowski, Sheron, Mole, Haber, Gbain,*
                                            *Dawkins, Fisher, Ramayya, Torres, Prasad,*
                                            *McDowell and Sanchez*
                                        100 Church Street, Rm. 377
                                        New York, New York 10007
                                        (212) 356-2344

                        By:        _____*Alan H. Scheiner* /s/_____
                                        Alan H. Scheiner
                                        *Senior Counsel*

cc:      All Counsel (via ECF)

---

[8] Defendants are mindful of the Court's 10-page limit for Reply briefs.  Plaintiffs' Opposition, however, without prior Court approval, placed their signature page on the 26th page, exceeding the Court's 25-page limit.  (Opp. at p. 26) Accordingly, defendants respectfully request that the Court grant them the same courtesy in not counting the signature page in the page limit, in light of the numerous issues raised by plaintiffs' amended complaint.