December 13, 2022

**VIA ECF**

The Hon. Paul A. Crotty
U.S. District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re: *Baerga et al. v. City of New York et al.*, No. 21-cv-5762-PAC (S.D.N.Y.)

Dear Judge Crotty:

  We represent Plaintiffs in the above-referenced putative class action and, pursuant to the Court's order of December 9, 2022 (Dkt. No. 115), write to submit our proposed schedule for expedited discovery and preliminary injunction briefing, as well as to respond to some questions raised by Your Honor at yesterday's conference.

  Unfortunately, the parties have been unable to come to an agreement on a proposed briefing schedule.[1] Since scheduling was not raised during the conference yesterday, Plaintiffs provide the Court with their proposal here:

    **Motion for Expedited Discovery**: Plaintiffs' brief due December 16, 2022; Defendants' opposition due January 9, 2023; Plaintiffs' reply due January 16, 2023.

    **Preliminary Injunction**: Plaintiffs' supplemental brief to be filed seven days following production of expedited discovery; Defendants' opposition due 14 days thereafter; Plaintiffs' reply due three days later.

  Plaintiffs also wish to respond to two issues raised during yesterday's conference. *First*, the City's attempt to frame the Involuntary Removal Policy as a mere continuation of the existing policy challenged by Plaintiffs in their complaint is belied by the available evidence. The Policy has been repeatedly touted by Mayor Adams and his team as a new policy. At Mayor Adams' press

---

[1] Plaintiffs reached out to the City multiple times today, but the City declined to provide Defendants' position on whether they stand by their proposed schedule.

The Hon. Paul A. Crotty
December 13, 2022
Page 2

conference, for example, he spoke of the "new directive," "new focus," "new training," and "launch" of the new policy, while the head of the Mayor's Office of Community Mental Health referred to "new protocols and trainings."[2] Second, the Mental Health Involuntary Removals directive explicitly directs several City agencies to update their policies, protocols, and trainings to be in line with this new policy (Dkt. No. 112-1), and Mayor Adams stated these new trainings have already begun, (Dkt. No. 112-2 at 2).

Even if the Involuntary Removal Policy grew out of existing law or policies, there is no denying that it is an aggressive new approach to involuntary detentions and that its entire purpose is to expand the net of individuals with purported mental health issues who will be forcibly subjected to mental health arrests and detentions. The standard for mental health arrests firmly established by the Second Circuit requires an officer to "believe there was a risk of serious physical harm to the individual or others," *Guan v. City of N.Y.*, 37 F.4th 79, 809 (2d Cir. 2022), and the City's new policy waters down this standard by advising officers to forcibly detain individuals who the officers deem to be unable to care for themselves.[3] The City has already indicated that the Patrol Guide provision that currently provides guidance on Mental Hygiene Law § 9.41 will now be revised to reflect the new policy. *See* Dkt. No. 112-1 at 4.

*Second*, Plaintiffs have standing to seek injunctive relief as individuals who face a real threat of suffering harm due to the new policy, and as organizations that have already been harmed

---

[2] *See, e.g.*, Dkt. No. 112-2 at 2, 7; "Mayor Adams Announces Plan to Provide Care for Individuals Suffering From Untreated Severe Mental Illness Across NYC," Nov. 29, 2022, https://tinyurl.com/4t5zesjw.
[3] It is important to note that the mental health arrest process can be a traumatizing, life-changing experience for many who are forcibly detained. Those involuntarily removed can be handcuffed, tightly strapped to a gurney, forced to a hospital where they can be sedated and otherwise medicated against their will, often without knowledge of their right to counsel. This is all before even considering the secondary, collateral consequences.

The Hon. Paul A. Crotty
December 13, 2022
Page 3

and whose members would have standing. Under the *Lyons* standard, a plaintiff needs to show that they face a "real and immediate" threat of imminent harm. *Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). "Imminent harm" includes "where there is a substantial risk that the harm will occur." *Choi's Beer Shop, LLC v. PNC Merch. Servs. Co., L.P.*, 855 F. App'x 20, 21 (2d Cir. 2021).

The Involuntary Removal Policy, which explicitly targets putative class members who "appear" to be mentally ill and incapable of meeting basic human needs and calls for an increase in involuntary detentions, clearly creates a substantial risk of harm for the putative class. *See Ligon v. City of N.Y.*, 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013) (noting it is well-established that a court may award a preliminary injunction prior to class certification and enjoining institution of new stop and frisk policy). Plaintiff Steven Greene, for example, has suffered at least three involuntary hospitalizations in the past, is terrified that he will be subjected to further involuntary detentions as a result of appearing mentally ill, and faces a high likelihood of being detained under the new policy. *See* Greene Decl. (Dkt. No. 110); *National Cong. for Puerto Rican Rights v. City of N.Y.*, 75 F. Supp. 2d 154, 161-62 (S.D.N.Y. 1999) (concluding that frequency of NYPD stops and plaintiffs' belonging to groups distinctly affected by NYPD stop practices gave plaintiffs standing to seek injunctive relief). The organizational Plaintiffs, which both have been harmed as organizations and have members with mental illnesses that face a substantial risk of harm, also have standing. *See* Guzman Decl. (Dkt. No. 111); *see Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021) (organization can show standing by showing it can sue on behalf of its members or that it was injured directly as an organization).

Plaintiffs will supplement the evidence presented concurrently with the briefing of the Preliminary Injunction. Plaintiffs appreciate the Court's continued attention to this pressing matter.

The Hon. Paul A. Crotty
December 13, 2022
Page 4

Respectfully Submitted,

_____
Luna Droubi

Jonathan C. Moore
Luna Droubi
Deema Azizi
Jeff Kinkle
Beldock Levine & Hoffman LLP
99 Park Avenue PH/26th Floor
New York, New York 10016
jmoore@blhny.com
ldroubi@blhny.com
dazizi@blhny.com
jkinkle@blhny.com
Telephone: (212) 277-5874
Fax: (212) 277-5880

Jenny Marashi
Marashi Legal
930 Grand Concourse, #1E
Bronx, New York 10451
marashi.legal@gmail.com
Telephone: (917) 703-1742
Fax: 718-585-3400

Marinda van Dalen
Ruth Lowenkron
New York Lawyers for the Public Interest
151 West 30th Street, 11th Floor
New York, New York, 10001-4017
mvandalen@nylpi.org
rlowenkron@nylpi.org
Telephone: (212) 244-4664
Fax: (212) 244-4570

Richard Schwed
Dennis Kitt
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York, 10022-606
rschwed@shearman.com
dennis.kitt@shearman.com
Telephone: (212) 848-4000
Fax: (212) 848-7179

cc:  All Counsel of Record (via ECF)