**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X

JUSTIN BAERGA; STEVEN GREENE; GIOVANNA SANCHEZ-ESQUIVEL;  and  SARAH  ARVIO, individually and on behalf of all others similarly situated, and COMMUNITY ACCESS, INC.; NATIONAL ALLIANCE ON MENTAL ILLNESS OF NEW YORK CITY, INC.; and CORRECT CRISIS INTERVENTION TODAY - NYC,

                                             Plaintiffs,


                              -against-


CITY OF NEW YORK; BILL DE BLASIO; DERMOT F. SHEA; NYPD POLICE OFFICER KRZYSZTOF WNOROWSKI; NYPD POLICE OFFICER SHERON; NYPD  POLICE  OFFICER  MCDOWELL;  NYPD POLICE  SERGEANT  NATHAN  MOLE;  NYPD POLICE OFFICER MARTIN HABER; NYPD POLICE SERGEANT  GBAIN;  NYPD  POLICE  OFFICER VIKRAM  PRASAD;  NYPD  POLICE  OFFICER ANDRE  DAWKINS;  NYPD  POLICE  OFFICER TYRONE  FISHER;  NYPD  POLICE  OFFICER DEVIENDRA RAMAYYA; NYPD POLICE OFFICER JULIAN TORRES; NYPD OFFICER SANCHEZ, and NYPD OFFICERS JOHN and JANE DOES # 1-40,
                                             Defendants.
------------------------------------------------------------------------ X

No. 21-cv-05762 (PAC)


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**EXPEDITED DISCOVERY**

## PRELIMINARY STATEMENT

Plaintiffs request expedited discovery of factual information central to core claims in this case, and have narrowly tailored the request to support the Court's adjudication of Plaintiffs' pending motion for a preliminary injunction. More specifically, Plaintiffs move for the expedited production of documents under Federal Rule of Civil Procedure ("FRCP") 34, expedited interrogatories under FRCP 33, and an expedited deposition of a representative of Defendant the City of New York (the "City") under FRCP 30.

On November 29, 2022, Mayor Adams announced that the City had begun implementing a new policy designed to aggressively increase the ability of the New York City Police Department ("NYPD") to detain individuals who appear to have mental illnesses and appear unable to care for themselves (hereafter the "Involuntary Removal Policy"). This new policy dangerously broadens an already unlawful City policy allowing the involuntary detentions of individuals who have or appear to have a mental disability, which is set forth in Defendant New York Police Department's Patrol Guide 221-13 entitled "Mentally Ill or Emotionally Disturbed Persons" (hereafter the "EDP" Policy), that Plaintiffs challenged in their class action complaint in this matter (Dkt. No. 21).[1] Notably, despite its clear relevance to this litigation and the putative class, the City did not give Plaintiffs or the Court advanced notice that this new policy would be announced or implemented.

The consequences of the Involuntary Removal Policy on the lives and families of individuals who will be subjected to increased a) mental health arrests, b) detentions, and c) forced

---

[1] The City has argued that the policy—despite having been announced at a press conference and having been accompanied by new directives issued to City agencies—is not in fact a new policy, but a mere re-articulation of the existing law. (*See, e.g.*, Dkt. No. 113 at 2). At a minimum, expedited discovery is required to demonstrate that this is inaccurate.

involuntary psychiatric hospital commitments will be immense, yet there is a paucity of public information on the policy. Other than public statements by the Mayor and his team, a policy directive issued on November 28, 2022 entitled "Mental Health Involuntary Removals" (Dkt. No. 112-2), and a "Finest Message" issued by the NYPD on December 6, 2022 and produced to Plaintiffs earlier this week (December 16, 2022 Declaration of Jonathan C. Moore ("Moore Decl."), Ex. 1), Plaintiffs have not been privy to any documents or other information explaining how and when this policy went into effect, how officers are being trained to recognize "when a person appears mentally ill and incapable of meeting basic human needs," whether such trainings have already begun,[2] whether officers might receive any support in making these determinations, how many individuals have been involuntarily removed, detained, or transported to a psychiatric hospital as a result of this new policy, and myriad other vital facts about the policy's implementation and consequences.

Since this core information regarding the Involuntary Removal Policy is also clearly important for the underlying litigation, after Plaintiffs learned about the policy from the news, Plaintiffs immediately sought limited and expedited informal discovery from the City regarding the policy on December 2, 2022, which the City refused to produce. (Moore Decl. ¶¶ 5-6). On December 8, 2022, Plaintiffs submitted formal expedited discovery requests, carefully tailored not to burden the City. (Dkt. No. 112-3). These expedited discovery requests have been revised slightly as more information about the policy has been reported and are included in Plaintiffs' motion papers. (Moore Decl. Ex. 2). Beyond these document requests and interrogatories, Plaintiffs only

---

[2] At the November 29, 2022 press conference, Mayor Adams stated that trainings had begun that day. (Dkt. No. 112-2 at 2).

seek a single Rule 30(b)(6) witness under the FRCP to testify regarding the Involuntary Removal Policy. (*See* Moore Decl. Ex. 3). Thus far, the City has only provided Plaintiffs with a single one-page document, the Finest Message, which provides NYPD officers with cursory instructions regarding the new policy.

Considering that they are narrowly directed at obtaining information that will evince whether the Involuntary Removal Policy, which was announced without warning and with immediate effect, and which has already substantially harmed both the individual and the organizational Plaintiffs, Plaintiffs' expedited discovery requests are eminently reasonable. Moreover, the City cannot plausibly claim that any of Plaintiffs' discovery requests are unduly burdensome or prejudicial under the circumstances, particularly as discovery in due course is likely to have already begun by the time this motion is decided.

There is good cause for expedited discovery, and Plaintiffs respectfully request that the Court order such discovery so that Plaintiffs may learn the details of the Involuntary Removal Policy, including how it has been and will be implemented.

## STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to the First Amended Complaint (Dkt. No. 21) and the Statement of Facts section in Plaintiffs' Opposition to Defendants' Partial Motion to Dismiss for the facts and allegations that form the basis of this action (Dkt. No. 103 at 2-4) and in Plaintiffs' Memorandum of Law in Support of Their Application for a Temporary Restraining Order and Preliminary Injunction (Dkt. Nos. 108-112) for the controversies over the Involuntary Removal Policy.

## **LEGAL ARGUMENT**

This Court has considerable flexibility in determining whether to grant Plaintiffs expedited discovery as the federal rules "give district courts broad discretion to manage the manner in which discovery proceeds." *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman*, 350 F.3d 65, 69 (2d Cir. 2003). A party may seek discovery prior to conferring as required by Rule 26(f) when authorized by court order. FRCP 26(d)(1).

When determining a request for expedited discovery, "courts in this Circuit examine the discovery request on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances. In doing so, courts utilize a flexible standard of reasonableness and good cause. Courts will also compare the potential prejudice which will be suffered by the defendant if discovery is permitted, and that which will be experienced by the plaintiff if denied the opportunity for discovery at this stage." *Doe v. Congregation of the Sacred Hearts of Jesus & Mary*, No. 21-CV-6865 (VSB), 2022 U.S. Dist. LEXIS 130614, at *4 (S.D.N.Y. July 22, 2022) (internal citations omitted, emphasis in original); *see also SingularDTV v. Doe*, No. 21-CV-06000-VEC, 2021 U.S. Dist. LEXIS 164866, at *2 (S.D.N.Y. Aug. 16, 2021) ("Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant such an order [for expedited discovery].").

In a context such as this, where a motion for preliminary injunction is pending, expedited discovery is particularly necessary. The 1993 Advisory Committee notes to FRCP 26 specifically reference cases involving requests for a preliminary injunction as a situation in which an early start to discovery is "particularly appropriate." *See, e.g.*, *Ellsworth Assocs. v. United States*, 917 F. Supp. 841, 844 (1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings"). Notably, expedited

4

discovery is of great utility to courts to rule on preliminary injunction motion. *See, e.g., Edudata Corp. v. Sci. Computs., Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984) ("Further development of the record before the preliminary injunction hearing will better enable the court to judge the parties' interests and respective chances for success on the merits." *See also SimplexGrinnell, L.P. v. Quality Communs. of Fla., Inc.*, No. 05-61309-CIV, 2005 U.S. Dist. LEXIS 51535, at *4 n.3 (S.D. Fla. Aug. 25, 2005) (noting expedited discovery is routinely permitted where it will assist the court in deciding a motion for preliminary injunction).

Plaintiffs are entitled to the underlying documents and information related to the Involuntary Removal Policy, including such documents and information that show how and when the City is implementing the Policy (including whether in phases) and how it intends to further implement and oversee it (data tracking, community input, etc.). These documents are directly relevant to Plaintiffs' claims in their pending motion for a preliminary injunction, and Plaintiffs' expedited discovery demands have been narrowly tailored for this purpose. A Rule 30(b)(6) deposition of a City representative knowledgeable about the Involuntary Removal Policy is also necessary for both Plaintiffs and the Court, as it will provide critical information beyond the requested documents and interrogatories about the City's goals, rationales, interpretations, plans, and intended consequences regarding the new policy and its implementation, as well as information about who and how many individuals have already been removed, detained, and transported to psychiatric hospitals under the new policy.

Plaintiffs' pending motion for a preliminary injunction explains in detail why Plaintiffs and putative class members will suffer irreparable harm if the Court does not enjoin the City from moving forward with its Involuntary Removal Policy. In essence, if the preliminary injunction is not granted, the lowered standard of the Involuntary Removal Policy will lead to a sizeable increase

5

in illegal removals and detentions, the transport of putative class members to hospitals that are unlikely to have the capacity to house or treat them, and involuntary hospitalizations where many will be forcibly sedated or otherwise drugged. Access to the underlying documents related to the implementation of the Involuntary Removal Policy and its consequences is necessary to allow Plaintiffs to put forward their strongest arguments and to allow the Court to fully understand the impact of the new policy. The Court can then determine whether to enjoin the new policy based on the full record. In this sense, expedited discovery should be welcomed by the City, as it will allow the Court to make its determination based on the actual policy documents, official statistics, and testimony of a City representative designated by Defendants, rather than merely based on the Mayor's statements to the press and less than a handful of other documents.

Any potential prejudice the City might suffer related to producing the documents and interrogatory responses requested by Plaintiffs, or preparing for and defending the deposition of a Rule 30(b)(6) witness, is far outweighed by the prejudice Plaintiffs would suffer if unable to build a factual basis for determining the extent to which the Involuntary Removal Policy is resulting in widespread violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, and the federal and state constitutional rights of the putative class members. The City cannot plausibly claim that these additional production demands present a legitimate burden, as the Court has already instructed the parties to start discovery, and the majority of the materials requested by Plaintiffs on an expedited basis would be responsive to Plaintiffs' discovery requests regardless.

## CONCLUSION

Plaintiffs respectfully request expedited discovery to learn the details of the Involuntary

Detention Policy, and how it is being and will be implemented, including the nature of the trainings that are being or will be undertaken.

Dated:  New York, New York
          December 16, 2022

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400


By: _____
     Jonathan C. Moore
     Luna Droubi
     Deema Azizi
     Jeffrey F. Kinkle

MARASHI LEGAL
930 Grand Concourse #1E
Bronx, NY 10451
(917) 703-1742


By: /s/
     P. Jenny Marashi


NEW YORK LAWYERS FOR THE
PUBLIC INTEREST, INC.
151 West 30th Street, 11th Floor
New York, New York 10001-4017
(212) 244-4664


By: _____
     Marinda van Dalen
     Ruth Lowenkron

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000


By: /s/ Richard Schwed
     Richard Schwed
     Dennis Kitt

7