**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

JUSTIN BAERGA; STEVEN GREENE; GIOVANNA SANCHEZ-ESQUIVEL; and SARAH ARVIO, individually and on behalf of all others similarly situated, and COMMUNITY ACCESS, INC.; NATIONAL ALLIANCE ON MENTAL ILLNESS OF NEW YORK CITY, INC.; and CORRECT CRISIS INTERVENTION TODAY - NYC,

                                        Plaintiffs,


                    -against-


CITY OF NEW YORK; BILL DE BLASIO; DERMOT F. SHEA; NYPD POLICE OFFICER KRZYSZTOF WNOROWSKI; NYPD POLICE OFFICER SHERON; NYPD POLICE OFFICER MCDOWELL; NYPD POLICE SERGEANT NATHAN MOLE; NYPD POLICE OFFICER MARTIN HABER; NYPD POLICE SERGEANT GBAIN; NYPD POLICE OFFICER VIKRAM PRASAD; NYPD POLICE OFFICER ANDRE DAWKINS; NYPD POLICE OFFICER TYRONE FISHER; NYPD POLICE OFFICER DEVIENDRA RAMAYYA; NYPD POLICE OFFICER JULIAN TORRES; NYPD OFFICER SANCHEZ, and NYPD OFFICERS JOHN and JANE DOES # 1-40,

                                        Defendants.
-------------------------------------------------------------------- X

No. 21-cv-05762 (PAC)


**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY**

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ....................................................................................................................... 3

    I. Expedited Discovery Is Necessary for the Resolution of Plaintiffs' Pending Motion for a Preliminary Injunction ........................................................................................... 4

    II. Plaintiffs' Expedited Requests Are Relevant to Both the Preliminary Injunction and Plaintiffs' Constitutional and Disability Law Claims ....................................................... 5

    III. The Burden, if Any, on Defendants to Respond to Plaintiffs' Narrowly Crafted Expedited Discovery Requests is Minimal ...................................................................... 7

CONCLUSION.................................................................................................................. 10

i

## Table of Authorities

**Cases**

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017) ................................................................................................................... 10

*Doe v. Congregation of the Sacred Hearts of Jesus & Mary*, 2022 U.S. Dist. LEXIS 130614 (S.D.N.Y. July 22, 2022) ........................................................................................... 3

*Edudata Corp. v. Sci. Computs., Inc.*, 599 F. Supp. 1084 (D. Minn. 1984) .................................. 4

*Herrera v. N.Y.C. Dep't of Educ.*, 2022 U.S. Dist. LEXIS 107107 (S.D.N.Y. June 15, 2022)...... 7

*Hyland v. Navient Corp.*, 48 F.4th 110 (2d Cir. 2022) .................................................. 8

*Milk Studios, LLC v. Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 38710 (S.D.N.Y. Mar. 25, 2015) ...................................................................................................................... 3

*Moya v. U.S. Dep't of Homeland Sec.,* 975 F.3d 120 (2d Cir. 2020) .......................................... 10

*N.Y. v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020)................................................ 10

*N.Y. v. U.S.D.O.C.*, 2018 U.S. Dist. LEXIS 186593 (S.D.N.Y. Aug. 17, 2018) ........................... 7

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman*, 350 F.3d 65 (2d Cir. 2003)........................................................................................................ 3

*Roe v. City of N.Y.*, 151 F. Supp. 2d 495 (S.D.N.Y. 2001)........................................................... 9

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) .............................................................. 9

*SimplexGrinnell, L.P. v. Quality Communs. of Fla., Inc.*, 2005 U.S. Dist. LEXIS 51535 (S.D. Fla. Aug. 25, 2005) ........................................................................................................ 4

*SingularDTV v. Doe*, 2021 U.S. Dist. LEXIS 164866 (S.D.N.Y. Aug. 16, 2021) ........................ 3

*U.S. v. Smith*, 2019 U.S. Dist. LEXIS 174843 (E.D.N.Y. Sep. 30, 2019).................................. 3, 4

*Weber v. McCormick*, 2007 U.S. Dist. LEXIS 107651 (D. Conn. Apr. 23, 2007)......................... 7

## PRELIMINARY STATEMENT

Plaintiffs have moved for expedited discovery of factual information central to core claims to support their Motion for a Preliminary Injunction. The standard for granting an expedited discovery motion in this Circuit is well-established: the request must be reasonable and supported by good cause. Yet the sprawling opposition brief submitted by Defendants fails to even mention this standard or acknowledge that expedited discovery is particularly appropriate in the context of a preliminary injunction. Plaintiffs' expedited discovery request is narrowly tailored[1] and the material sought will significantly support the Court's adjudication of Plaintiffs' pending motion.[2]

As detailed in Plaintiffs' opening brief, on November 29, 2022, Mayor Adams announced that Defendant City of New York ("the City") had already begun training police officers about a new policy that encourages Defendant New York City Police Department ("NYPD") to detain individuals who appear to have mental illnesses and appear unable to care for themselves ("Involuntary Removal Policy" or "Policy"). Plaintiffs, as well as multiple media outlets that covered the announcement, understood this to be a departure from, or at least a substantial modification of, the City and the NYPD's prior policies for a Mental Hygiene Law § 9.41 seizure and forced hospitalization of those whom the NYPD Patrol Guide ("PG") 221-13 refers to as "emotionally disturbed persons" ("EDP Policy").[3] Plaintiffs immediately contacted the City to

---

[1] Plaintiffs seek to depose a single Rule 30(b)(6) witness, Dkt. 123-3, and have submitted eight interrogatories and made twelve document demands, Dkt. 123-2. These modest requests are entirely focused on learning about the initiative announced by Mayor Adams on November 29, 2022.

[2] Plaintiffs' preliminary injunction application describes in greater detail the exigencies motivating Plaintiffs' need for expedited discovery, the irreparable harm that will ensue absent an injunction, as well as Plaintiffs' likelihood of success on the merits, the balance of hardships favoring Plaintiffs, and how an injunction is in the public interest. Dkt. 109 at 8-17.

[3] *See, e.g.*, *A new policy in New York City makes it easier for homeless people to be forcibly hospitalized*, *NPR.org*, Dec. 4, 2022, shorturl.at/FOQT1; *A hard look at New York's controversial new approach to the homeless*, *CNN*, Dec. 3, 2022, shorturl.at/kpxT3; *Can New York's Plan for Mentally Ill Homeless People Make a Difference? NY Times*, Dec. 15, 2022, shorturl.at/eloJR.

1

request that it provide Plaintiffs with information on the new policy. The City refused.[4]

While there was—and still is—a dearth of publicly available information about the Involuntary Removal Policy, what the City has revealed is extremely troubling. The Policy appears to lower the standard for the involuntary detention of individuals who appear to have mental disabilities below the existing standard detailed in the EDP Policy, which Plaintiffs are already challenging as illegal. Plaintiffs applied for a temporary restraining order to stop the Involuntary Removal Policy from being implemented, which this Court converted into a motion for a preliminary injunction on December 9, 2022. Dkt. 115.[5] That motion is currently pending, and the Court gave Plaintiffs permission to supplement the motion following the production of expedited discovery. Dkt. 119.

In their opposition brief, Defendants represent that the Involuntary Removal Policy is not a new policy, and that Mayor Adams organized a press conference to merely call upon "City officials to implement the relevant statutes in more of the circumstances where the law already permitted action." Dkt. 122 ("Opp. Br.") at 9. In fact, regardless of whether the Involuntary Removal Policy is conceived of as a new policy or simply a clarification and aggressive application of the powers available to Defendants under the EDP Policy, Plaintiffs have demonstrated the reasonableness of their request for expedited discovery and that good cause exists for it to be granted. The discovery sought is clearly relevant to both the motion for a preliminary injunction and the allegations in Plaintiffs' First Amended Class Action Complaint, Dkt. 21 ("Complaint").

---

[4] Defendants only produced the FINEST message dated Dec. 6, 2022. Dkt. 123-1 after Plaintiffs specifically requested the document referred to by the *New York Post* in a story about the Involuntary Removal Policy. *See NYPD moves ahead with Eric Adams' new mental illness policy, despite lack of* training, Craig McCarthy, Dec. 8, 2022, shorturl.at/uCRVW.

[5] Defendants inaccurately claim this Court denied Plaintiffs' application. Opp. Br. at 21.

Any burden on Defendants is minimal, particularly as normal course discovery will begin soon. It is essential that the details of the Policy are made known so that Plaintiffs may properly brief, and the Court may decide, Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

As demonstrated in Plaintiffs' opening brief, "[c]ourts in this District use a flexible standard of reasonableness and good cause when considering" whether to grant expedited discovery. *SingularDTV v. Doe*, 2021 U.S. Dist. LEXIS 164866, at *2 (S.D.N.Y. Aug. 16, 2021). Courts look at the "reasonableness of the request in light of all of the surrounding circumstances," and "also compare the potential prejudice which will be suffered by the defendant if discovery is permitted, and that which will be experienced by the plaintiff if denied the opportunity for discovery at this stage." *Doe v. Congregation of the Sacred Hearts of Jesus & Mary*, 2022 U.S. Dist. LEXIS 130614, at *4 (S.D.N.Y. July 22, 2022) (internal citations omitted).

A request for expedited discovery "meets the reasonableness standard where expedited discovery may lead to evidence of additional and continuing violations." *U.S. v. Smith*, 2019 U.S. Dist. LEXIS 174843, at *45 (E.D.N.Y. Sep. 30, 2019). This Court has stated that "[g]ood cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Milk Studios, LLC v. Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 38710, at *4-5 (S.D.N.Y. Mar. 25, 2015) (Crotty, J.). A flexible standard is appropriate, as the federal rules "give district courts broad discretion to manage the manner in which discovery proceeds." *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman*, 350 F.3d 65, 69 (2d Cir. 2003). Plaintiffs' narrowly drawn discovery requests more than meet this standard.

I.      **Expedited Discovery Is Necessary for the Resolution of Plaintiffs' Pending Motion for a Preliminary Injunction.**

Courts have "frequently observed that expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *U.S. v. Smith*, 2019 U.S. Dist. LEXIS 174843, at *46 (E.D.N.Y. Sep. 30, 2019). The 1993 Advisory Committee notes to Fed. R. Civ. P. 26 specifically reference cases involving requests for a preliminary injunction as a situation in which expedited discovery is "particularly appropriate." Fed. R. Civ. P. 26 Advisory Comm. Notes. As explained in Plaintiffs' opening brief, expedited discovery allows the record to be developed before a preliminary injunction hearing to better enable the court to consider the parties' interests and chances of success on the merits, *Edudata Corp. v. Sci. Computs., Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984), and courts "routinely permit expedited discovery in such situations," *SimplexGrinnell, L.P. v. Quality Communs. of Fla., Inc.*, 2005 U.S. Dist. LEXIS 51535, at *4 n.3 (S.D. Fla. Aug. 25, 2005). Dkt. 122 at 4-5.

To date, Defendants have produced nothing about the implementation of the Policy beyond the single one-page FINEST message that had been selectively disclosed to the *New York Post*. Dkt. 122 at 3; Dkt. 123-1. As such, while Plaintiffs have reason to believe that the Policy is illegal based on the statements of the Mayor's Office, a handful of publicly available documents, and the one-page NYPD FINEST message (Dkt. 123-1),[6] both Plaintiffs and the Court would benefit from the limited expedited discovery sought by Plaintiffs because it will allow the Court to better consider the parties' positions when deciding the pending preliminary injunction motion.

Defendants have used the concomitant uncertainty around the Policy as both sword and

---

[6] Plaintiffs are aware of a number of individuals who have been involuntary detained without probable cause by NYPD pursuant to MHL 9.41 since late November when the Policy went into effect. The expedited discovery sought will permit Plaintiffs to assess such supplemental evidence to support their motion for a preliminary injunction.

4

shield. Defendants frame the Involuntary Removal Policy as a novel policy entirely distinct from

"the pre-existing NYPD Patrol Guide" when seeking to claim that it is irrelevant to Plaintiffs'

allegation in the Complaint, when attacking Plaintiffs for not identifying any individuals detained

under the new Policy, and when claiming that Plaintiffs do not have standing to challenge it as

they have not yet been affected by it. *See, e.g.*, Opp. Br. at 4, 5, 15. Elsewhere, Defendants have

stressed that the Policy "is an application of existing law, rather than a departure from it." *See,*

*e.g.*, Dkt. 116 at 1. During the hearing before this Court on December 12, 2022, Defendants framed

the Policy as simply the publicization of old guidance to be incorporated into NYPD trainings.

Defendants represented that the core of the Policy "has always been there" and is "basically just a

supplement to existing training." Dkt. 125 at 7, 16. Yet, the City also represented that the Policy

had not yet gone into effect beyond some trainings, Dkt. 125 at 28, a claim the Court accepted in

its subsequent order. Dkt. 119 at 2 (noting that it had not been shown that the Policy "has been

enacted beyond basic training for superior officers").[7] However, the directive announcing the

Policy clearly states that the NYPD is obligated to "[u]pdate appropriate policies and procedures

and Training Guide [*sic*]." Dkt. 112-1. Expedited discovery is necessary to resolve these basic

factual issues before the Court hears Plaintiffs' motion for a preliminary injunction.[8]

## II.    Plaintiffs' Expedited Requests Are Relevant to Both the Preliminary Injunction and Plaintiffs' Constitutional and Disability Law Claims

Defendants do not challenge the fact that Plaintiffs' expedited discovery requests are

relevant to Plaintiffs' pending motion for a preliminary injunction; they only challenge the

---

[7] The *New York Post* has since reported that the NYPD "started training its rank-and-file cops" just prior to Christmas. *See NYPD starts training on Eric Adams' new NYC mental illness policy,* Craig McCarthy, December 21, 2022, shorturl.at/wERX9.

[8] If expedited discovery demonstrates conclusively that the Policy is indistinguishable from the policy challenged in the Complaint, Plaintiffs will withdraw their motion for a preliminary injunction.

requests' relevance to the underlying operative Complaint.[9] In fact, if, as Defendants claim, the Involuntary Removal Policy is merely a reframing of the old policy being challenged in this litigation, Plaintiffs' expedited discovery requests are also plainly relevant to Plaintiffs' constitutional and disability law claims made on behalf of the putative class in the Complaint.[10]

Defendants themselves characterize the Involuntary Removal Policy as entirely consistent with the Patrol Guide that is challenged in the Complaint.[11] The Policy is, therefore, at the very least, an associated policy to the Patrol Guide, particularly as it appears that the Patrol Guide will be updated to reflect its contours. Dkt 112-1. It is also clearly relevant to Plaintiffs' *Monell* claims. Defendants incorrectly posit that, because the City's EDP and Involuntary Removal policies are based on good law, Opp. Br. at 5-10, the policies themselves are lawful and therefore not ripe for *Monell* analysis. In fact the legality of both policies are at issue and discovery is thus clearly warranted.

Plaintiffs not only challenge the EDP Policy—which may be the most concise elucidation of the NYPD's policy for involuntarily detaining individuals deemed to be "EDPs"—but Plaintiffs also challenge Defendants' associated polices, practices, and customs. *See, e.g.*, Complaint ¶ 18. The putative class consists of "individuals who, because of their mental disability or perceived mental disability, have been, could have been, or will be seized, detained, and/or subjected to force in interactions with NYPD officers pursuant to NYPD Patrol Guide Procedure No. 221-13 *or its*

---

[9] Defendants' argument is detached from the context of the pending preliminary injunction motion, arguing instead that discovery itself is unnecessary based on the pending motion to dismiss, which Plaintiffs thoroughly rebutted in their opposition and incorporate here by reference. *See* Dkt. 103 at 13-25.

[10] If the Court finds that the Involuntary Removal Policy is not relevant to the claims in Plaintiffs' Complaint, Plaintiffs respectfully request leave to amend the Complaint to include allegations regarding the Policy.

[11] Plaintiffs argued in their opening brief that the discovery they are seeking on an expedited basis would almost entirely be responsive to Plaintiffs' general discovery requests, Dkt. 122 at 6, and Defendants have not claimed otherwise. As such, it is nonsensical to claim that they are irrelevant to Plaintiffs' claims in this litigation.

*equivalent* and/or denied the appropriate response to mental health crises." Complaint ¶ 253 (emphasis added).

It is undisputed that a central purpose of the Policy and the Mayor's announcement is to encourage NYPD officers to more aggressively involuntarily detain, and transport into psychiatric facilities, more New Yorkers who are perceived to have a mental illness and to be unable to care for their basic needs. Opp. Br. at 2. Defendants' characterization of the Policy demonstrates that it is, at the very least, a notable expansion of the NYPD's enforcement detailed in the Patrol Guide, and thus directly related to the claims set forth in the Complaint. Plaintiffs' expedited discovery requests are relevant to the underlying claims, as well as the preliminary injunction motion.

## III.   The Burden, if Any, on Defendants to Respond to Plaintiffs' Narrowly Crafted Expedited Discovery Requests is Minimal

Plaintiffs' expedited discovery requests are entirely reasonable, notwithstanding the City's hyperbolic claims of burden to the contrary.[12] Plaintiffs make merely twelve document demands, submit eight interrogatories, and request one Rule 30(b)(6) deposition. Courts in this Circuit have described a comparable number of discovery requests as "minimal." *See, e.g.*, *Weber v. McCormick*, 2007 U.S. Dist. LEXIS 107651, at *4 (D. Conn. Apr. 23, 2007) (Discovery sought determined "minimal" where plaintiff propounded nine interrogatories, twelve document requests, and one deposition request.).[13] If the Court identifies a problem with any of these requests, Plaintiffs would gladly and expeditiously revise them accordingly before serving them on

---

[12] The City claims, for example, that Plaintiffs' request for internal communications regarding the Policy would both "entail hundreds of hours of work" and "produce no documents relevant to plaintiffs' underlying claims." Opp. Br. at 23. This entirely misrepresents Plaintiffs' request.

[13] Moreover, this Court has found that producing one witness—even when it is the Mayor or the Attorney General—for one deposition is a "minimal" burden. *See, e.g.*, *Herrera v. N.Y.C. Dep't of Educ.*, 2022 U.S. Dist. LEXIS 107107, at *4 (S.D.N.Y. June 15, 2022); *N.Y. v. U.S.D.O.C.*, 2018 U.S. Dist. LEXIS 186593, at *26 (S.D.N.Y. Aug. 17, 2018).

Defendants. After they are served, Defendants will be permitted, of course, to make both general and specific objections to these requests, prior to conducting a search, preparing a witness, answering interrogatories, or making productions.

In objecting to Plaintiffs' request to conduct one routine Rule 30(b)(6) deposition, Defendants express particular outrage at Plaintiffs' desire to "interrogate City officials about their policy decisions." Opp. Br. at 1. But Plaintiffs are clearly entitled to request a single Rule 30(b)(6) witness to provide information about the implementation of, and training for, the Involuntary Removal Policy. These topics align with the City's directives dated November 28, 2022. Dkt 123-3. Plaintiffs of course defer to Defendants to determine the appropriate Rule 30(b)(6) witness. Defendants' claims of burden are thus exaggerated, at best.

## IV.   Plaintiffs have Standing to Seek to Enjoin the Implementation of the Policy

Based on Plaintiffs' limited access to information about the Policy, Plaintiffs have argued that it broadens an already unlawful City policy regarding the involuntary detention and forcible hospitalizations of New Yorkers who have or appear to have a mental disability.[14] In the context of a class action, of course, "only one named plaintiff need have standing with respect to each claim." *Hyland v. Navient Corp.*, 48 F.4th 110, 118 (2d Cir. 2022). At a minimum, both Plaintiffs Greene and CCIT-NYC, on behalf of its members and itself, have standing to challenge Policy.

Plaintiff Greene has been involuntarily hospitalized without the requisite probable cause on at least three occasions in the recent past by NYPD officers. Dkt. 110, Greene Aff. at ¶¶ 26-27. His mental disabilities have apparently already led NYPD officers to believe on multiple occasions

---

[14] Plaintiffs anticipate making supplemental submissions in support of their preliminary injunction motion, including affidavits from individuals who have been involuntarily detained pursuant to MHL § 9.41 without probable cause since the Policy was announced. If necessary, Plaintiffs will request leave to amend the Complaint to include the allegations of at least one such individual.

that he had or appeared to have a mental illness that presented a substantial risk of physical harm to himself or others. The Policy represents a lowering of the standard that was applied when Greene was previously detained, and the City has announced that it will enforce the Policy broadly and aggressively. Accordingly, Greene has stated much more than a "highly speculative fear that a highly attenuated chain of possibilities will come to pass." Opp. Br. at 18. A "plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004). Since Greene has already been forcibly detained by officers several times in the recent past under a policy that had a higher standard and, according to the Mayor, more lax enforcement than is the case with the Involuntary Removal Policy, Plaintiffs meet both *Shain* prongs.

CCIT-NYC also has standing—both representational and direct—to enjoin the Policy. CCIT-NYC is a membership organization in New York City made up of more than 80 civil rights and human service organizations, which represent innumerable individuals with lived experience of mental health crises, many of whom have been subjected to involuntary detentions and transports due to being characterized by NYPD officers under the Patrol Guide as "EDPs." Dkt. 111, Guzman Aff. at ¶¶ 2-6. Like Greene, many of these individuals have been characterized in the past by NYPD officers as appearing to have a mental illness and thereby to present a substantial risk of physical harm to themselves and others. CCIT-NYC's members face much more than a highly speculative risk of being detained without probable cause under the Policy, if the Policy is enforced as aggressively as the Mayor has promised. Dkt. 111 at ¶¶ 20-25. In other words, CCIT-NYC's members—and Greene—are "a group of individuals that claim[] to be consistently targeted by the NYPD by virtue of" their disabilities. *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 503 (S.D.N.Y. 2001).

While Defendants are correct that CCIT-NYC already advocates for non-police responses to mental health crises, this does not mean that the Policy has not affected the organization. CCIT-NYC's resources have been diverted to address concerns of member organizations, and to participate in over a dozen meetings and events to both understand and attempt to assuage the fears of both organizational and individual members. The Policy will broaden the exercise of police powers, directly expanding the limited crisis-response policy that CCIT-NYC has been advocating against. This expansion demands that CCIT-NYC spend even more resources to update its informational packages, advocacy goals, and operational strategies to account for the policy change. An organization shows injury-in-fact where "a policy has impeded, and will continue to impede, the organization's ability to carry out its responsibilities." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017). This includes "where an organization diverts its resources away from its current activities," which "has been repeatedly held to be independently sufficient to confer organizational standing." *Id.* at 111. CCIT-NYC has shown precisely such an injury-in-fact. Dkt. 111 at ¶ 18. The obstacles to CCIT-NYC's advocacy efforts caused by the Policy "constitute far more than simply a setback to [its] abstract social interests"—they represent a real "drain on [CCIT-NYC's] resources." *Moya v. U.S. Dep't of Homeland Sec.,* 975 F.3d 120, 129-30 (2d Cir. 2020); *see also N.Y. v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 61 (2d Cir. 2020) (finding standing as nonprofit organizations "diverted resources that would otherwise have been available for other programming").

Plaintiffs' standing to seek to enjoin the implementation of the Policy is undisputable.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the opportunity to proceed with the narrowly-tailored expedited discovery set forth in the pending Motion.

Dated: New York, New York
       January 20, 2023

BELDOCK LEVINE & HOFFMAN
LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400


By: _____

   Jonathan C. Moore
      Luna Droubi
      Deema Azizi
      Jeffrey F. Kinkle

MARASHI LEGAL
930 Grand Concourse #1E
Bronx, NY 10451
(917) 703-1742


By:_____
      P. Jenny Marashi


NEW YORK LAWYERS FOR THE
PUBLIC INTEREST, INC.
151 West 30th Street, 11th Floor
New York, New York 10001-4017
(212) 244-4664


By:_____

   Marinda van Dalen
   Ruth Lowenkron

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000



By: /s/ *Richard Schwed*_____

   Richard Schwed
   Dennis Kitt

11