UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUSTIN BAERGA, STEVEN GREENE,                          :
GIOVANNA SANCHEZ ESQUIVEL, and                         :
SARAH ARVIO, individually and on behalf of             :
all others similarly situated, and COMMUNITY           :
ACCESS, INC., NATIONAL ALLIANCE ON                     :
MENTAL ILLNESS OF NEW YORK CITY,                       :
INC., and CORRECT CRISIS INTERVENTION                  :
TODAY – NYC,                                           :
                         *Plaintiffs*,                 :
                                                       :          21-CV-05762 (PAC)
                                                       :
                                                       :          **OPINION & ORDER**
                 - against -                            :
                                                       :
CITY OF NEW YORK, BILL DE BLASIO;                      :
DERMOT F. SHEA; NYPD POLICE OFFICER                    :
RZYSZTOF WNOROWSKI; NYPD POLICE                        :
OFFICER SHERON; NYPD POLICE OFFICER                    :
MCDOWELL; NYPD POLICE SERGEANT                         :
NATHAN MOLE; NYPD POLICE OFFICER                       :
MARTIN HABER; NYPD POLICE SERGEANT                     :
CARRKU GBAIN, NYPD POLICE OFFICER                      :
VIKRAM PRASAD; NYPD POLICE OFFICER                     :
ANDRE DAWKINS; NYPD POLICE OFFICER                     :
TYRONE FISHER; NYPD POLICE OFFICER                     :
DEVINDRA RAMAYYA; NYPD POLICE                          :
OFFICER JULIAN TORRES; NYPD OFFICER                    :
APRIL SANCHEZ, and NYPD OFFICERS                       :
JOHN and JANE DOES # 1-40,                             :
                                                       :
                         *Defendants*.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

    Plaintiffs move for a preliminary injunction and for expedited discovery. ECF Nos. 108–

09, 121. Defendants oppose both motions and argue that Plaintiffs lack standing. The Court agrees

and accordingly **DENIES** Plaintiffs' motions for a preliminary injunction and expedited

discovery.[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 65, courts typically hold hearings on motions for
temporary restraining orders and preliminary injunctions. However, a Court may deny a motion
for a preliminary injunction without a hearing where no "essential facts are in dispute." *Consol.*

## BACKGROUND

Plaintiffs consist of two different groups: Individual Plaintiffs[2] and Organizational Plaintiffs,[3] (collectively, "Plaintiffs"). Individuals Plaintiffs are several New York residents who allege they were unconstitutionally detained by the New York City Police Department ("NYPD") while in mental health crises between 2019 and 2020. Organizational Plaintiffs are focused on mental health advocacy in New York City. Plaintiffs' First Amended Complaint seeks to certify a class of people who, "because of their mental disability or perceived mental disability, have been, could have been, or will be seized, detained, and/or subjected to force in interactions with NYPD officers . . . ." First Am. Compl. ("FAC") ¶ 253, ECF No. 21. Defendants are New York City ("the City") and numerous City employees sued in both their individual and official capacities.[4]

---

*Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.), *amended*, 890 F.2d 569 (2d Cir. 1989). Plaintiffs seek expedited discovery related to the merits of the case, where essential facts may still be in dispute. They do not, however, seek discovery related to their own standing to bring this action. The Court therefore relies solely on the factual record provided by Plaintiffs and accepts all facts as true.

[2] Justin Baerga, Steven Greene, Giovanna Sanchez Esquivel, and Sarah Arvio. Plaintiff Justin Baerga passed away on or about June 28, 2022. ECF No. 107.

[3] Community Access, Inc., National Alliance on Mental Illness of New York City, Inc., and Correct Crisis Intervention Today – NYC.

[4] Mayor Bill De Blasio; NYPD Police Commissioner Dermot F. Shea; NYPD Police Officer Rzysztof Wnorowski; NYPD Police Officer Sheron; NYPD Police Officer Mcdowell; NYPD Police Sergeant Nathan Mole; NYPD Police Officer Martin Haber; NYPD Police Sergeant Carrku Gbain; NYPD Police Officer Vikram Prasad; NYPD Police Officer Andre Dawkins; NYPD Police Officer Tyrone Fisher; NYPD Police Officer Devindra Ramayya; NYPD Police Officer Julian Torres; NYPD Police Officer April Sanchez, and NYPD Police Officers John and Jane Does # 1-40. Defendants Mayor De Blasio and Commissioner Shea are no longer in office. Thus, to the extent they are sued in their official capacity, the suit is brought against Mayor Adams and Commissioner Sewell respectively. *See* Fed. R. Civ. P. 25(d).

On July 5, 2021, Individual Plaintiff Justin Baerga commenced this action, alleging numerous claims under 42 U.S.C. § 1983, state common law, and both the United States and New York constitutions related to a mental health arrest that occurred August 19, 2019. ECF No. 1. On December 29, 2021, Plaintiff Baerga filed the First Amended Complaint, adding the rest of the Plaintiffs (both Individual and Organizational) and seeking certification of the claims against the City and its officers as a class action. *See generally* FAC. On September 13, 2022, Defendants collectively moved to dismiss the FAC. ECF No. 101. The motion to dismiss is pending.

On November 29, 2022, Mayor Eric Adams held a press conference to discuss the involuntary hospitalizations of mentally ill people in New York City. See Moore Decl., Ex. 2 ("Adams Conf."), ECF No. 112. He spoke at length about "[p]eople with severe and untreated mental illness who live out in the open, on the streets, in our subways, in danger and in need . . . [t]hese New Yorkers and hundreds of others like them are in urgent need of treatment, yet often refused it when offered. The very nature of their illnesses keeps them from realizing they need intervention and support." *Id.* at 2. After announcing an "11 point legislative agenda" to address the issue, Mayor Adams noted that he "issued a new directive" to the NYPD and several other municipal actors. *Id.* at 3. According to Mayor Adams,

> This directive lays out an expedited step by step process for involuntarily transporting a person experiencing a mental health crisis to a hospital for evaluation. It explicitly states that it is appropriate to use this process when a person refuses voluntary assistance and it appears that they are suffering from mental illness and are a danger to themselves due to an inability to meet their basic needs. We believe this is the first time that a mayoral administration has given this direction on the basic needs standard and official guidance. *Id.* at 2.

That same day, the City issued a directive titled "Mental Health Involuntary Removals" ("the Directive"). Moore Decl., Ex. 1, ECF No. 112. The Directive "clarifies" the roles and responsibilities of first responders to mental health crises under existing New York Mental

3

Hygiene law. *Id.* Specifically, it directs mental health providers and NYPD officers to act in accordance with New York Mental Hygiene Law §§ 9.41 and 9.58. *Id.* Plaintiffs challenge only the provisions instructing NYPD officers pursuant to Section 9.41.

Section 9.41 provides that a police officer "may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." N.Y. Mental Hyg. Law § 9.41. From this provision, officers derive their authority to involuntarily hospitalize individuals in mental health crisis. *See Surpris v. Montefiore Mount Vernon Hosp.*, No. 21-CV-7654 (LTS), 2021 WL 5853583, at *3 (S.D.N.Y. Dec. 7, 2021) ("In New York, involuntary hospitalizations are governed by the Mental Hygiene Law.").

The Directive states that section 9.41 "authorize[s] the removal of a person who appears to be mentally ill and displays an inability to meet basic living needs, even when no recent dangerous act has been observed." Directive at 2. It further notes that "if the circumstances support an objectively reasonable basis to conclude that the person appears to have a mental illness and cannot support their basic human needs to an extent that causes them harm, they may be removed for an evaluation." *Id.*

In response to Mayor Adams' press conference and to the Directive, Plaintiffs did not amend their pleadings, but instead filed an emergency application for a temporary restraining order, including a motion for a preliminary injunction and a motion for expedited discovery. ECF Nos. 108, 109. The Court converted the emergency application to a motion for a preliminary injunction alone and denied the application for a temporary restraining order. ECF Nos. 115, 119. The Court then solicited briefing on Plaintiffs' motion for expedited discovery. ECF No. 119. In opposition to expedited discovery, Defendants allege that Plaintiffs lack standing to seek a

preliminary injunction in the first place. Defs.' Opp. at 13–21, ECF No. 131. Plaintiffs' lack of standing necessarily implicates the Court's subject-matter jurisdiction, and the Court must consider the matter as a threshold issue. *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (denying injunctive relief where the plaintiff failed to properly allege standing); *Tilton v. S.E.C.*, No. 15-CV-2472 RA, 2015 WL 4006165, at *3 (S.D.N.Y. June 30, 2015), *aff'd sub nom. Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276 (2d Cir. 2016) ("The threshold issue in this case-and, ultimately, the dispositive one for purposes of the present motion-is whether subject matter jurisdiction exists for this Court to consider Plaintiffs' claims."). Thus, the Court must address the issue on this motion and determines that it cannot provide relief absent a sufficient showing of standing.

## DISCUSSION

### I. Legal Standard

When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing "will normally be no less than that required on a motion for summary judgment." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citations omitted). Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot "rest on such mere allegations, as would be appropriate at the pleading stage, but must set forth by affidavit or other evidence specific facts," which will be taken as true for the purposes of the motion. *Id.* (cleaned up).

"To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Medina v. City of New York*, No. 19-CV-9412 (AJN), 2020 WL 7028688, at *4 (S.D.N.Y. Nov. 30, 2020) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)). "For purposes of Article III standing, an

'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized[ ] and (b) actual or imminent, not conjectural or hypothetical.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.'" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). A plaintiff must personally have standing to represent a class. *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Only one named plaintiff needs to establish standing. *Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir. 2022).

Plaintiffs rely on two affidavits to establish standing: one for an individual Plaintiff, Steven Greene, and one for an organizational Plaintiff, the Steering Committee of Correct Crisis Intervention Today – NYC ("CCIT-NYC"). Greene Aff., ECF 110; Guzman Aff., ECF No. 111. The Court holds neither affidavit is sufficient to establish standing to enjoin the Directive.

## II. Individual Standing

First, the Court addresses Plaintiff Greene's standing to challenge the Directive. A plaintiff seeking injunctive relief in a civil rights action must establish standing through (1) the existence of an unconstitutional official policy or its equivalent and (2) a likelihood of future harm under that policy. *Shain*, 356 F.3d at 216. "[A] plaintiff's 'fears may support standing when the threat creating the fear is sufficiently imminent.'" *Tomsha v. Gen. Servs. Admin.*, No. 15-CV-7326 (AJN), 2016 WL 3538380, at *2 (S.D.N.Y. June 21, 2016) (quoting *Hedges v. Obama*, 724 F.3d 170, 195 (2d Cir. 2013)). When seeking injunctive or declaratory relief, a plaintiff cannot rely "on past injury to satisfy the injury requirement;" instead, the plaintiff must also "show a likelihood that he or she will be injured in the future." *Medina*, 2020 WL 7028688, at *4 (citation omitted).

The Court is governed by three cases that address the ability of a plaintiff to assert fear of

future detention to support standing.  The first is the Supreme Court's analysis in *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  In *Lyons*, the plaintiff alleged that Los Angeles police officers placed him in a chokehold without provocation, rendering him unconscious.  *Id.* at 97–98.  The plaintiff sought injunctive relief preventing the police department's use of control chokeholds.  *Id.* at 98.  The Supreme Court denied relief because the plaintiff's injury was too speculative to establish standing.  *Id.* at 108.  The Court held that the plaintiff had failed to allege that he would suffer a similarly illegal chokehold in the future, calling it "conjecture" to "suggest that in every instance of a traffic stop, arrest . . . the police will act unconstitutionally and inflict injury without provocation or legal excuse."  *Id.*  The Court continued that it was "no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold . . . ."  *Id.*

The Second Circuit later interpreted this holding in *Deshawn E. v. Safir*, 156 F.3d 340 (2d Cir.1998).  In *Deshawn*, plaintiffs were juveniles representing a class and alleging the NYPD's Family Court Detective Squad had a practice of illegally forcing confessions out of juveniles.  *Id.* at 343–44.  The court found the plaintiffs had standing to seek injunctive relief because (1) the pattern of forced confessions was a policy to which the plaintiffs had been subjected; (2) the class was certified and class members were, in total, likely to suffer harms; and (3) the exclusion of tainted statements could help plaintiffs in future proceedings, creating a live controversy with a concrete form of relief.  *Id.* at 344–45.

Finally, the Second Circuit found a plaintiff failed to establish standing to assert a claim in *Shain* where the plaintiff, after being arrested for a domestic dispute, was strip searched upon his arrival at a correctional center.  356 F.3d at 213.  The court distinguished the case from *Deshawn* by noting the plaintiff failed to establish "a likelihood of future harm."  *Id.* at 216.  Specifically,

7

the court rejected the plaintiff's argument that the *Deshawn* holding meant that "the existence of an official policy, on its own, is sufficient to confer standing to sue on *any individual who had previously been subjected to that policy*." *Id.* at 216 (emphasis added). Rather, the court held that "a plaintiff seeking injunctive relief must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent." *Id.* (emphasis in original).

Applying these principles, Plaintiff Greene lacks standing to challenge the Directive. Plaintiffs allege Greene's standing based on his prior involuntary hospitalizations on three separate occasions, which all occurred years prior to the enactment of the Directive.[5] Greene Aff. ¶¶ 27, 32; FAC ¶ 160. In certain circumstances, repeated offenses under a specific policy may be relevant to establish standing. *See, e.g., Aguilar v. Immigr. & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 827 (S.D.N.Y. 2011). But that is not the case here; none of the involuntary hospitalizations were "fairly traceable" to the challenged Directive, the subject of this preliminary injunction, because they all occurred prior to the enactment of the Directive in November 2022. *Cf. Yamen by Yamen v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 909 F. Supp. 207, 209–10 (S.D.N.Y. 1996) (finding no standing where the injury is not fairly traceable to the challenged Policy); *Lewis*, 518 U.S. at 357 ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."). Therefore, Greene is not an "individual who had previously been subjected" to the Directive, although he may be one as regards other alleged practices and policies related to the NYPD's treatment of the mentally

---

[5] Greene alleges that he suffered constitutional violations in only one mental health arrest, which occurred May 6, 2020. Of the other two arrests, Greene alleges only that he was involuntarily hospitalized, not that those involuntary hospitalizations were actually improper. Greene Aff. ¶ 27; FAC ¶¶ 138–60. However, construing the facts in the light most favorable to Plaintiffs, the Court assumes for the sake of this motion the hospitalizations were in violation of Greene's rights. *Consol. Gold Fields*, 871 F.2d at 256 (a court may only deny a preliminary injunction without a hearing where no essential facts are in dispute).

ill.[6]  *Shain*, 356 F.3d at 216.  Thus, Plaintiffs failed to establish that Greene's prior injuries are "fairly traceable to the allegedly illegal government conduct." *Informed Consent Action Network v. Becerra*, 595 F. Supp. 3d 70, 81 (S.D.N.Y. 2022) (citations omitted); *cf. Rapa v. City of New York*, No. 15-CV-1916 JMF, 2015 WL 5671987, at *3 (S.D.N.Y. Sept. 25, 2015) (finding no standing where Plaintiff does not have a "personal stake" in the preliminary injunction as to warrant his invocation).

Having never experienced a mental health arrest under the Directive, Greene's fear that it will "cause an NYPD officer to forcibly and violently detain" him *pursuant* to that Directive is purely speculative and premised on "conjecture" that he himself will "be involved in one of those unfortunate instances." Greene Aff. ¶ 30; *Lyons* 461 U.S. at 108. It therefore cannot confer standing on Plaintiff Greene or the other Individual Plaintiffs for the purposes of the requested preliminary injunction.

### III. Organizational Standing

CCIT-NYC also fails to establish that it has standing to challenge the Directive.  For an organization to have standing to pursue litigation, it must either allege associational standing—to sue on behalf of its members—or organizational standing—to sue on behalf of itself.  *Rodriguez v. Winski*, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020).

Regarding associational standing, CCIT-NYC must establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Here, much like with Plaintiff Greene, CCIT-NYC does not

---

[6] Indeed, those other practices and policies are the subject of the initial suit in this case. *See* FAC, ECF No. 21.

allege that any member has been detained pursuant to the Directive and therefore that any member has a fear of future harm that rises beyond conjecture. Guzman Aff. ¶¶ 20, 21. CCIT-NYC thus lacks associational standing for the same reasons that Greene lacks individual standing. *See Juv. Matters Trial Laws. Ass'n v. Jud. Dep't*, 363 F. Supp. 2d 239, 246 (D. Conn. 2005) (citations omitted) ("The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.").

Although it presents a closer question, the Court also finds CCIT-NYC lacks organizational standing. In this Circuit, "only a 'perceptible impairment' of an organization's activities [as a result of a defendant's actions] is necessary for there to be an 'injury in fact'" to the organization. *Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 229 (S.D.N.Y. 2019) (citations omitted). "Courts have distinguished between cases where a defendant's conduct forced a plaintiff to divert its resources and provide new services, therefore giving rise to organizational standing, and cases where a plaintiff was *already* providing the services at issue and therefore failed to allege any injury." *Make the Rd. New York v. Cuccinelli*, 419 F. Supp. 3d 647, 657 (S.D.N.Y. 2019), *aff'd as modified sub nom. New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020). "[A]n organization's decision to embark on categorically new activities in response to action by a putative defendant will not ordinarily suffice to show an injury for standing purposes, even if the organization's own clients request the change." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 174 (2d Cir. 2021). In *Russell-Tucker*, the Second Circuit highlighted the distinction between, for example, the "burden that is imposed on an organization when there is an increased demand for an organization's services," which may establish a perceptible impairment, and activities "incurred at the organization's own initiative," which do not. *Id.* The court found

the plaintiff's "community events, information sessions, bus tours, and other events" in response to a challenged policy were insufficient to show a perceptible impairment of the organization's activities. *Id.* at 171, 175.

Here, CCIT-NYC alleges that it has diverted resources towards "meeting with membership organizations" and "coordinating potential responses" in reaction to the Directive.  Guzman Aff. ¶ 18. These actions—similar as they are to those rejected by the court in *Russell-Tucker*—do not comprise a "perceptible impairment" of CCIT-NYC's activities.  CCIT-NYC describes itself as "a coalition of more than 80 civil rights and human service organizations, peers (people with lived mental health experience), family members, and other advocates, all of whom work together with a mission to transform the City's response to mental health crises by providing peer-driven supports to individuals with mental disabilities."  Guzman Aff. ¶¶ 4, 11.  Its self-stated mission is "to transform the City's response to mental health crises"; to "organize and enable its members to improve the mental health resources available to New Yorkers who experience mental health crises"; and "to create change that will prevent or reduce mental health crises in the first place." FAC ¶¶ 238–39.

Plaintiffs have not identified a single restriction on CCIT-NYC's core activities with respect to the Directive, nor any activity from which it diverted its resources; in fact, meeting with members and coordinating responses to City actions on mental health appear to be the epitome of CCIT-NYC's core activities.[7]  *See Apartment Owners Advisory Council v. Marks*, No. 21 CV 10175 (VB), 2022 WL 4357951, at *5 (S.D.N.Y. Sept. 20, 2022) (finding a lack of standing where

---

[7] In their opposition, Plaintiffs allege that the Directive "demands that CCIT-NYC spend even more resources to update its informational packages, advocacy goals, and operational strategies to account for the policy change."  Pls.' Reply at 10, ECF No. 137.  The Court finds this point unpersuasive because (1) Plaintiffs have not produced evidence of such changes and (2) even if they had, such activities also fit squarely within CCIT-NYC's mission of policy advocacy.

Plaintiffs "engaged in more of the same work as a result of [the challenged policies]"). Absent a showing from Plaintiffs that their core mission is frustrated by the Directive, CCIT-NYC lacks organizational standing. Without either associational or organizational standing, the Organization Plaintiffs cannot seek this preliminary injunction.

## CONCLUSION

Because this Court lacks standing over both the Individual and the Organizational Plaintiffs, it cannot decide the motion on the merits. *See Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016) (noting the Supreme Court could not make a determination on the merits unless the parties had standing). The motion for a preliminary injunction is thus **DENIED** without prejudice. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016) (a dismissal for lack of standing is a dismissal without prejudice). The motion for expedited discovery is **DENIED** without prejudice as there is no "good cause" absent an impending hearing for a preliminary injunction. *Mirza v. Doe #1*, No. 20CV9877, 2021 WL 2581421, at *2 (S.D.N.Y. June 23, 2021) (denying a motion to expedite discovery absent a showing of good cause). The Clerk of the Court is directed to terminate the motions at ECF Nos. 108, 122.

Dated: New York, New York
     January 30, 2023

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge