Docket No.  21 Civ. 5762 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN GREENE; GIOVANNA SANCHEZ-ESQUIVEL; SARAH ARVIO; LISA COLLINS; ORITSEWEYIMI OMOANUKHE AYU; and NEIL AMITABH, individually and on behalf of all others similarly situated, and COMMUNITY ACCESS, INC.; NATIONAL ALLIANCE ON MENTAL ILLNESS OF NEW YORK CITY, INC.; CORRECT CRISIS INTERVENTION TODAY – NYC; and VOICES OF COMMUNITY ACTIVISTS AND LEADERS NEW YORK,

Plaintiffs,

- against -

CITY OF NEW YORK; ERIC ADAMS; BILL DE BLASIO; KEECHANT L. SEWELL; DERMOT F. SHEA; NYPD POLICE OFFICER MARTIN HABER; NYPD POLICE SERGEANT CARRKU GBAIN, NYPD POLICE OFFICER VIKRAM PRASAD; NYPD POLICE OFFICER ANDRE DAWKINS; NYPD POLICE OFFICER TYRONE FISHER; NYPD POLICE OFFICER DEVIENDRA RAMAYYA; NYPD POLICE OFFICER JULIAN TORRES; NYPD OFFICER APRIL SANCHEZ; NYPD OFFICER GABRIELE MORRONE; and NYPD OFFICERS JOHN and JANE DOES # 1-40,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS CERTAIN CLAIMS IN THE SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

### HON. SYLVIA. O. HINDS-RADIX
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Adams, de Blasio, Sewell, Shea, Haber, Gbain, Prasad, Dawkins, Fisher, Ramayya, Torres, Sanchez, and Morrone*
100 Church Street
New York, N.Y. 10007
*Of Counsel: Alan H. Scheiner*
*Jeffrey F. Frank*
Tel: (212) 356-2344/3541

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... III

PRELIMINARY STATEMENT ..................................................................... 1

STATEMENT OF FACTS .......................................................................... 2

ARGUMENT

POINT I

PLAINTIFFS' CLAIMS FOR FALSE ARREST AND WARRANTLESS ENTRY SHOULD BE DISMISSED BECAUSE THERE WAS PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES FOR THE POLICE ACTIONS ......................................................................... 3

A.  Plaintiffs' Unlawful Seizure Claims Should be Dismissed Due to Probable Cause ....................................... 3

B.  Plaintiffs' Unlawful Entry Claims Fail Due to Exigent Circumstances ...................................................... 9

POINT II

FOUR INDIVIDUAL PLAINTIFFS FAIL TO STATE CLAIMS FOR EXCESSIVE FORCE ........................................ 10

POINT III

PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE ADA, THE REHABILITATION ACT, OR THE NYCHRL ......................................................................... 12

A.  Plaintiffs' Claims under the ADA and the Rehabilitation Act Fail ................................................... 13

B.  Plaintiffs' NYCHRL Claims Also Fail .............................. 14

POINT IV

THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........................................... 15

**Page**

    A.  Arguable Probable Cause Supported Each Individual Plaintiff's Seizure ............................................ 17

    B.  Defendants Are Entitled to Qualified Immunity for their Use of Force to Seize Four of the Individual Plaintiffs .......................................................... 18

POINT V

    THE FOUR PLAINTIFF ORGANIZATIONS LACK DIRECT OR ASSOCIATIONAL STANDING ...................................................................... 19

    A.  The Plaintiff Organizations Lack Direct Standing ............................................................... 19

    B.  The Plaintiff Organizations Also Lack Associational Standing ................................................ 21

POINT VI

    PLAINTIFFS' *MONELL* CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED ...................................... 23

    A.  The Patrol Guide Cannot Serve as a Basis for Plaintiff's *Monell* Claim .................................... 24

    B.  Plaintiffs Fail to Establish a *De Facto* Policy or Practice ................................................................ 26

    C.  Plaintiffs Fail to Demonstrate Deliberate Indifference .......................................................... 28

POINT VII

    PLAINTIFFS' PUTATIVE CLASS CANNOT BE CERTIFIED ........................................................... 29

POINT VIII

    PLAINTIFFS' CLAIMS UNDER THE NEW YORK STATE CONSTITUTION SHOULD BE DISMISSED ........................................................... 31

CONCLUSION ....................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

*Addington v. Texas*,
   441 U.S. 418 (1979)..................................................................................5, 9, 25

*Allen v. Antal*,
   12 Civ. 8024 (NSR), 2014 U.S. Dist. LEXIS 79031,
   *aff'd*, 665 F. App'x 9 (2d Cir. 2016)..............................................................31, 32

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004)..........................................................................26

*Anderson v. Creighton*,
   483 U.S. 635 (1987)......................................................................................16

*Anonymous v. City of Meriden*,
   10-CV-37 (MPS), 2013 U.S. Dist. LEXIS 72678
   (D. Conn. May 22, 2013)..............................................................................24

*Arroyo v. City of New York*,
   683 F. App'x 73 (2d Cir. 2017) ....................................................................5

*Ashcroft v. al-Kidd*,
   563 U.S. 73 (2011)........................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................3

*Batt v. Buccilli*,
   725 F. App'x 23 (2d Cir. 2018) ................................................................6, 9, 10

*Bayne v. Provost*,
   04-CV-44, 2005 U.S. Dist. LEXIS 40889 (N.D.N.Y. Aug. 4, 2005) ....................5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................3

*Boddie v. City of New York*,
   15 Civ. 4275 (GHW), 2016 U.S. Dist. LEXIS 50248
   (S.D.N.Y. Apr. 13, 2016)..............................................................................28, 29

*Boggs v. Health Hosps. Corp.*,
   523 N.Y.S.2d 71 (App. Div. 1st Dep't 1987)....................................................4, 5, 9

*Brigham City v. Stuart*,
   547 U.S. 398 (2006)......................................................................................9

**Cases**                                                                                                                **Pages**

*Brosseau v. Haugen*,
    543 U.S. 194 (U.S. 2004)..................................................................................16

*Brown v. City of New York*,
    13 Civ. 1018 (KBF), 2016 U.S. Dist. LEXIS 53365
    (S.D.N.Y. Apr. 20, 2016)................................................................................17

*Calderon v. City of New York*,
    138 F. Supp. 3d 593 (S.D.N.Y. 2015).............................................................28

*Camoia v. City of New York*,
    09-CV-2545 (NGG) (LB), 2018 U.S. Dist. LEXIS 179355
    (E.D.N.Y. Oct. 16, 2018)...........................................................................14, 15

*Caridad v. Metro-North Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999),
    *cert. denied sub nom. Metro-North Commuter R.R. v. Norris*,
    529 U.S. 1107 .................................................................................................30

*In re Carl C.*,
    511 N.Y.S.2d 144 (App. Div. 2d Dep't 1987).................................................5, 9

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)........................................................................................32

*Cash v. Cnty. of Erie*,
    654 F.3d 324 (2d Cir. 2011)............................................................................23

*City of Canton v. Harris*,
    489 U.S. 378 (1989)...................................................................................24, 26

*Concepcion v. City of New York*,
    15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601
    (E.D.N.Y. May 6, 2019) .................................................................................15

*Conn. Citizens Def. League, Inc. v. Lamont*,
    6 F.4th 439 (2d Cir. 2021) ........................................................................19, 20

*Conn. Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021) ........................................................................19, 20

*Connick v. Thompson*,
    563 U.S. 51 (2011).........................................................................................28

*Cruz v. City of New Rochelle*,
    13 Civ. 7432 (LMS), 2017 U.S. Dist. LEXIS 63832 (S.D.N.Y. Apr. 3, 2017)......10

**Cases**                                                                          **Pages**

*Curley v. Village of Suffern*,
    268 F.3d 65 (2d Cir. 2001) .......................................................................6

*De Boise v. Taser Int'l, Inc.*,
    760 F.3d 892 (8th Cir. 2014) ................................................................14

*Disability Advocates, Inc. v. McMahon*,
    124 F. App'x 674 (2d Cir. 2005) .....................................................13, 14

*Disability Rights N.Y. v. New York*,
    17-CV-6965 (RRM) (SJB), 2019 U.S. Dist. LEXIS
    102609 (E.D.N.Y. June 14, 2019) .........................................................21

*DJL Rest. Corp. v. City of New York*,
    749 N.E.2d 186 (N.Y. 2001) .................................................................15

*Dwares v. City of New York*,
    985 F.2d 94 (2d Cir. 1993) ....................................................................24

*Env't Working Grp. v. U.S. Food & Drug Admin.*,
    301 F. Supp. 3d 165 (D.D.C. 2018) ......................................................21

*Farooq v. N.Y.C. Health & Hosps. Corp.*,
    19 Civ. 6294 (JMF), 2020 U.S. Dist. LEXIS
    153815 (S.D.N.Y. Aug. 25, 2020) ........................................................32

*Ferebee v. City of New York*,
    15 Civ. 1868 (PAC), 2017 U.S. Dist. LEXIS 104783
    (S.D.N.Y. July 6, 2017) .........................................................................12

*Husbands ex rel. Forde v. City of New York*,
    335 F. App'x 124 (2d Cir. 2009) ...........................................................12

*Garcia de León v. N.Y.U.*,
    21 Civ. 5005, 2022 U.S. Dist. LEXIS 110787
    (S.D.N.Y., June 22, 2022) .....................................................................30

*Garcia v. Does*,
    779 F.3d 84 (2d Cir. 2015) ....................................................................17

*Gill v. Dawkins*,
    16-CV-1398 (LDH) (SB), 2020 U.S. Dist. LEXIS 223421
    (E.D.N.Y. Nov. 30, 2020) .......................................................................9

*Graham v. Connor*,
    490 U.S. 386 (1989) .........................................................................11, 12

**Cases**                                                                  **Pages**

*Guan v. City of New York*,
    37 F.4th 797 (2d Cir. 2022) ...................................................................4

*Hainze v. Richards*,
    207 F.3d 795 (5th Cir. 2000) ...............................................................14

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)...............................................................................16

*Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    15 Civ. 7065 (RA), 2019 U.S. Dist.
    LEXIS 137487 (S.D.N.Y. Aug. 14, 2019)............................................13

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)...............................................................................19

*Heller v. Bedford Cent. Sch. Dist.*,
    144 F. Supp. 3d 596 (S.D.N.Y. 2015),
    *aff'd*, 665 F. App'x 49 (2d Cir. 2016).....................................................4

*Jacob v. Bon Secours Charity Health Sys.*,
    02 CV 1398, 2011 U.S. Dist. LEXIS 15256
    (S.D.N.Y. Feb. 11, 2011).......................................................................14

*Jaegly v. Couch*,
    439 F.3d 149 (2d Cir. 2006)....................................................................4

*In re K.L.*,
    1 N.Y.3d 362 (2004) .............................................................................25

*Kash v. Honey*,
    38 F. App'x 73 (2d Cir. 2002) .........................................................12, 18

*Kass v. City of New York*,
    864 F.3d 200 (2d Cir. 2017)..................................................................15

*Keeney v. City of New London*,
    196 F. Supp. 2d 190 (D. Conn. 2002)....................................................10

*Kerman v. City of New York*,
    261 F.3d 229 (2d Cir. 2001)................................................................6, 10

*Leon v. Town Bd. of the Town of Ramapo*,
    22 Civ. 3965 (LTS), 2022 U.S. Dist. LEXIS
    129670 (S.D.N.Y. July 18, 2022) ...........................................................4

**Cases**                                                                 **Pages**

*Lynch v. Ackley*,
    811 F.3d 569 (2d Cir. 2016) .............................................................................17

*Maccharulo v. N.Y. State Dep't of Corr. Servs.*,
    08 Civ. 301 (LTS), 2010 U.S. Dist. LEXIS
    73312 (S.D.N.Y. July 21, 2010) ....................................................................13

*Marom v. City of New York*,
    15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466
    (S.D.N.Y. Mar. 7, 2016) ................................................................................29

*Matthews v. City of New York*,
    15 Civ. 2311 (ALC), 2016 U.S. Dist. LEXIS 136907
    (S.D.N.Y. Sep. 30, 2016) .............................................................................5, 8

*McClarin v. City of New York*,
    16-CV-6846 (FB), 2020 U.S. Dist. LEXIS 104180
    (E.D.N.Y. June 15, 2020) ...............................................................................9

*McCollum v. City of New York*,
    16-CV-5272 (LDH), 2020 U.S. Dist. LEXIS 221433
    (E.D.N.Y. Nov. 25, 2020) .............................................................................13

*McGugan v. Aldana-Bernier*,
    752 F.3d 224 (2d Cir. 2014) ....................................................................13-14

*McLennon v. City of New York*,
    171 F. Supp. 3d 69 (E.D.N.Y. 2016) ............................................................27

*Mental Hygiene Legal Serv. v. Cuomo*,
    609 F. App'x 693 (2d Cir. 2015) ..................................................................22

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013) ....................................................................14-15

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.)*,
    471 F.3d 24 (2d Cir. 2006) ...........................................................................30

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978) ..............................................2, 23, 24, 25, 26, 27, 28, 29

*Mullenix v. Luna*,
    577 U.S. 7 (2015) (per curiam) ....................................................................16

**Cases**                                                                                                            **Pages**

*N.J. Prot. & Advocacy, Inc. v. Davy*,
    05-1784 (SRC), 2005 U.S. Dist. LEXIS 22749
    (D.N.J. Sep. 30, 2005)....................................................................................................22

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012)...........................................................................................19

*Nunez v. City of New York*,
    735 F. App'x 756 (2d Cir. 2018) ....................................................................................27

*Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985)..................................................................................................24, 26

*Oliver v. City of New York*,
    19 Civ. 11219 (PGG) (JLC), 2022 U.S. Dist. LEXIS 27053
    (S.D.N.Y. Feb. 15, 2022)................................................................................................31

*Packard v. City of New York*,
    2020 U.S. Dist. LEXIS 54003
    (S.D.N.Y. Mar. 25, 2020) ..............................................................................................31

*Papineau v. Parmley*,
    465 F.3d 46 (2d Cir. 2006)..............................................................................................11

*Pearson v. Callahan*,
    555 U.S. 223 (2009).........................................................................................................16

*In re Petrobras Sec. Litig,*
    862 F.3d 250 (2d Cir. 2017)............................................................................................30

*Pluma v. City of New York*,
    13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134
    (S.D.N.Y. Mar. 31, 2015) ..............................................................................................29

*Quon v. Henry*,
    14 Civ. 9909 (RJS), 2017 U.S. Dist. LEXIS 60444
    (S.D.N.Y. Mar. 27, 2017) ..............................................................................................18

*Reynolds v. Giuliani*,
    506 F.3d 183 (2d Cir. 2007)...........................................................................................28

*Roberts v. City of New York*,
    16 Civ. 5409 (BMC), 2017 U.S. Dist. LEXIS 160979
    (E.D.N.Y. Sep. 29, 2017)...............................................................................................16

**Cases**                                                                    **Pages**

*Romano v. Howarth*,
   998 F.2d 101 (2d Cir. 1993)............................................................12

*Sauer v. Town of Cornwall*,
   20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284
   (S.D.N.Y. Sep. 30, 2022)............................................................26

*Schoolcraft v. City of New York*,
   103 F. Supp. 3d 465 (S.D.N.Y. 2015)........................................5, 9

*Segal v. City of New York*,
   459 F.3d 207 (2d Cir. 2006)......................................................28

*Sierra Club v. Morton*,
   405 U.S. 727 (1972)..................................................................21

*Singh v. City of New York*,
   19-CV-0632 (EK) (ST), 2022 U.S. Dist. LEXIS 114486
   (E.D.N.Y. June 28, 2022) ...........................................................6

*Stephenson v. Doe*,
   332 F.3d 68 (2d Cir. 2003)........................................................18

*Tardif v. City of New York*,
   991 F.3d 394 (2d Cir. 2021)................................................11, 13

*Taylor v. Bernanke*,
   No. 13-CV-1013, 2013 U.S. Dist. LEXIS 128533
   (E.D.N.Y. Sep. 9, 2013).............................................................21

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   546 F.3d 196 (2d Cir. 2008)......................................................30

*Thomas v. Culberg*,
   741 F. Supp. 77 (S.D.N.Y. 1990) ...............................................4

*Tieman v. City of Newburgh*,
   13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703
   (S.D.N.Y. Mar. 26, 2015) ..........................................................28

*Torres v. Bellevue S. Assocs. LLP*,
   16 Civ. 2362 (RA), 2020 U.S. Dist. LEXIS 33948
   (S.D.N.Y. Feb. 26, 2020),
   *report and recommendation adopted at* 2020 U.S. Dist. LEXIS
   106953 (S.D.N.Y. June 18, 2020)..........................................9-10

**Cases**                                                                                                                    **Pages**

*Tracy v. Freshwater*,
    623 F.3d 90 (2d Cir. 2010)...............................................................................11, 31

*U.S. Women's Chamber Com. v. U.S. Small Bus. Admin.*,
    04-CV-01899, 2005 U.S. Dist.
    LEXIS 32497 (D.D.C. Nov. 30, 2005) ...................................................20

*United States v. Sanchez*,
    635 F.2d 47 (2d Cir. 1980)..................................................................10

*United States v. Univ. Hosp.*,
    729 F.2d 144 (2d Cir. 1984)................................................................14

*Vippolis v. Vill. of Haverstraw*,
    768 F.2d 40 (2d Cir. 1985)..............................................................24, 26

*Walczyk v. Rio*,
    496 F.3d 139 (2d Cir. 2007).................................................................6

*Walker v. City of New York*,
    12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. Mar. 18, 2014) ....................28

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................19

*Weyant v. Okst*,
    101 F.3d 845 (2d Cir. 1996)..............................................................3, 4

*White v. City of New York*,
    206 F. Supp. 3d 920 (S.D.N.Y. 2016)...................................................27

*White v. Pauly*,
    580 U.S. 73 (2017) (per curiam) .........................................................16

*Women for Am. First v. De Blasio*,
    520 F. Supp. 3d 532 (S.D.N.Y. 2021)...................................................19

*Wray v. City of New York*,
    490 F.3d 189 (2d Cir. 2007)................................................................28

*Young Advocs. for Fair Educ. v. Cuomo*,
    359 F. Supp. 3d 215 (E.D.N.Y. 2019) ..................................................21

*Zalaski v. City of Hartford*,
    723 F.3d 382 (2d Cir. 2013)................................................................17

**Statutes**                                                                                          **Pages**

28 U.S.C. § 1367(c)(3)................................................................................................32

42 U.S.C. § 1983...............................................................................1, 4, 11, 23, 31, 32

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 3, 16

Fed. R. Civ. P. 23...................................................................................................30

Fed. R. Civ. P. 23(a) ..........................................................................................29, 30

Fed. R. Civ. P. 23(b)(3).........................................................................................30

N.Y.C. Admin. Code § 8-102 ................................................................................15

N.Y.C. Admin. Code § 8-107(4)(a)(1)(a) ..............................................................15

N.Y. Mental Hyg. L. § 9.39 ..............................................................................4-5

N.Y. Mental Hyg. L. § 9.41 ...............................1, 2, 4, 5, 7, 8, 9, 10, 11, 14, 15, 18, 24, 25, 26, 31

NYPD Patrol Guide § 221-13 ............................................................................24, 25

## PRELIMINARY STATEMENT

Plaintiffs bring a purported class action challenging law enforcement's role in enforcing New York State Mental Hygiene Law § 9.41. In doing so, plaintiffs ask the Court to displace that policy of the State's elected officials with a sweeping new judicial regime, requiring private parties and civilian medical providers to be the sole responders to mental health crises presenting dangers to individual and public safety, all to be funded by taxpayers and subject to unelected oversight. Second Amended Complaint ("SAC"), ECF No. 155 ("¶" or "¶¶"), at 87–88. That claim, along with most of the plaintiffs' individual claims, is legally unfounded and should be dismissed.

Defendants City of New York ("City"), Eric Adams, Bill de Blasio, Keechant Sewell, Dermot Shea, P.O. Martin Haber, P.O. Carrku Gbain, P.O. Vikram Prasad, P.O. Andre Dawkins, P.O. Tyrone Fisher, P.O. Devindra Ramayya, P.O. Julian Torres, P.O. April Sanchez, and P.O. Gabriele Morrone (collectively "defendants") move to dismiss all claims in the SAC, except certain claims of two plaintiffs,[1] pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). In the SAC, six individual plaintiffs—Steven Greene, Giovanna Sanchez-Esquivel, Sarah Arvio, Lisa Collins, Oritseweyimi Omoanukhe Ayu, and Neil Amitabh—bring claims under the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and the New York City Human Rights Law ("NYCHRL"), for alleged discrimination on the basis of a disability or perceived disability. The individual plaintiffs also bring claims under claims under 42 U.S.C. § 1983 for unlawful seizure, excessive force, and municipal liability, and similar claims under New York state law for state constitutional violations, assault and battery, false imprisonment, and unreasonable detention. Four plaintiff organizations—Community Access, Inc. ("CAI"), National Alliance on

---

[1] Defendants do not move to dismiss plaintiff Sarah Arvio's excessive force claim under § 1983, her battery claim under New York state law, or her *respondeat superior* claim.

Mental Illness of New York City, Inc. ("NAMI"), Correct Crisis Intervention Today–NYC ("CCIT"), and Voices of Community Activists and Leaders New York ("VOCAL")—bring claims under the same laws, presumably for the sweeping injunctive relief demanded in by the SAC.  ¶¶ 339, 359, 379, 395, 430, 442, 501.

The SAC should be dismissed with prejudice on the grounds that: (i) each individual plaintiff's seizure was supported by probable cause; (ii) four individual plaintiffs fail to state claims for excessive force; (iii) the individual defendants are entitled to qualified immunity; (iv) plaintiffs fail to state claims under the ADA, the Rehabilitation Act, or the NYCHRL; (v) the plaintiff organizations lack direct or associational standing; (vi) plaintiffs' *Monell* claims are deficient; (vii) plaintiffs cannot certify a class based on their claims; and (viii) plaintiffs' state law claims fail as a matter of law.

## STATEMENT OF FACTS[2]

Members of the NYPD responded to apparent mental health crises experienced by each of the six individual plaintiffs.  ¶¶ 147–148 (Greene); ¶ 173 (Sanchez-Esquivel); ¶¶ 189, 194 (Arvio); ¶ 228 (Collins); ¶¶ 250, 268–270 (Ayu); ¶¶ 281–284, 298–300, 306 (Amitabh).  Pursuant to N.Y. Mental Hyg. Law § 9.41 ("§ 9.41"), NYPD officers seized each individual plaintiff against their will and took them to a hospital for treatment.  ¶¶ 158–160, 164 (Greene); ¶¶ 179–182 (Sanchez-Esquivel); ¶¶ 201, 206, (Arvio); ¶¶ 233–234, 236 (Collins); ¶¶ 246, 253, 271–272 (Ayu); ¶¶ 287, 290–291, 296, 301–302, 304, 308–309 (Amitabh).  Four non-profit organizations allege they were forced to expend additional resources to address mental health crises in the communities they serve and to engage in various forms of advocacy, thereby diverting resources from their other services

---

[2] This statement of facts is based entirely on the allegations in the SAC and is not an admission of any such facts.  Should any claims discussed herein not be dismissed, defendants reserve the right to contest any fact alleged in the SAC.

and advocacy, because of the City's and NYPD's alleged inadequate response to mental health crises. ¶¶ 316–395. Plaintiffs seek monetary damages and equitable relief on behalf of themselves and a putative class, including not only an injunction preventing the NYPD from following current policies for treating emotionally disturbed persons, but also a "remedial plan" directing "[i]mplementation of a new non-police mental health crisis response program operating independently of the NYPD." *Id.* at pp. 87–88.

## STANDARD ON A MOTION TO DISMISS

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That tenet, however, is "inapplicable to legal conclusions." *Id.* Hence, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS FOR FALSE ARREST AND WARRANTLESS ENTRY SHOULD BE DISMISSED BECAUSE THERE WAS PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES FOR THE POLICE ACTIONS

**A.    Plaintiffs' Unlawful Seizure Claims Should be Dismissed Due to Probable Cause**

Plaintiffs' federal and state law claims for unlawful seizure are essentially false arrest claims. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest claims stem from "the Fourth Amendment right . . . to be free from unreasonable seizures, including arrest without

probable cause").[3]  Probable cause is a complete defense to a false arrest claim under both § 1983

and state law.  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).  The probable cause inquiry

turns on "whether the facts known by the arresting officer at the time of the arrest objectively

provided probable cause to arrest."  *Id.* at 153.  Under New York State law, a "police officer . . .

may take into custody any person who appears to be mentally ill and is conducting himself or

herself in a manner which is likely to result in serious harm to the person or others."  § 9.41.

Specifically, "for a mental health arrest, police officers must have reasonable grounds for

believing that the person seized is dangerous to herself or others."  *Guan v. City of New York*, 37

F.4th 797, 805 (2d Cir. 2022) (quotations omitted).  "Courts have held that a showing of probable

cause in the mental health seizure context requires only a probability or substantial chan[c]e of

dangerous behavior, not an actual showing of such behavior."  *Heller v. Bedford Cent. Sch. Dist.*,

144 F. Supp. 3d 596, 622 (S.D.N.Y. 2015) (quotations omitted) (dismissing false arrest claim,

holding defendant had probable cause to seize plaintiff pursuant to § 9.41, and granting defendant

qualified immunity), *aff'd*, 665 F. App'x 49 (2d Cir. 2016); *accord Leon v. Town Bd. of the Town

of Ramapo*, 22 Civ. 3965 (LTS), 2022 U.S. Dist. LEXIS 129670, at *9 (S.D.N.Y. July 18, 2022).

Thus, the "New York Mental Hygiene Law does not require that the threat of substantial

harm to oneself or others be evidenced by overt act, attempts or threats."  *Thomas v. Culberg*, 741

F. Supp. 77, 81 n.1 (S.D.N.Y. 1990).  In fact, New York State courts have long held that § 9.41

lawfully permits the involuntary mental health treatment of persons whose actions create a danger of

serious harm to themselves or others, even in the absence of immediate violence.  *See Boggs v. Health

Hosps. Corp.*, 523 N.Y.S.2d 71, 84 (App. Div. 1st Dep't 1987) (applying N.Y. Mental Hyg. Law §

---

[3] The law governing false arrest claims is the same under both federal and New York state law.
*Weyant*, 101 F.3d at 852.

9.39 and explaining "[i]t is well established in this State that a person may be involuntarily confined for care and treatment, where his or her mental illness manifests itself in neglect or refusal to care for themselves to such an extent that there is presented 'serious harm' to their own well-being."); *In re Carl C.*, 511 N.Y.S.2d 144, 145 (App. Div. 2d Dep't 1987) (for involuntary commitment the "substantial threat of physical harm" can "result from a refusal or inability to meet his essential needs for food, clothing or shelter"); *see also Addington v. Texas*, 441 U.S. 418, 426 (1979) ("The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves . . . ."); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 505 (S.D.N.Y. 2015) ("Likelihood of serious harm can be evidenced by overt acts, attempts or threats of harm, or by 'other conduct' such as neglect or refusal to care for oneself.") (quoting *Boggs*, 523 N.Y.S.2d at 89).

Of course, no two emergencies are the same. Where an officers' observations of an individual's erratic behavior plainly give rise to probable cause for a seizure pursuant to § 9.41, *see, e.g.*, *Arroyo v. City of New York*, 683 F. App'x 73, 74 (2d Cir. 2017) (probable cause existed to remove plaintiff to a hospital under § 9.41, where officers observed plaintiff "acting in an erratic and unresponsive manner"), other emergencies like reports of suicidal ideation require more reliance on the reporter, *see, e.g.*, *Matthews v. City of New York*, 15 Civ. 2311 (ALC), 2016 U.S. Dist. LEXIS 136907, at *16 (S.D.N.Y. Sep. 30, 2016) ("[A] report of a suicide threat does more to establish probable cause than a report of erratic behavior. Suicide threats naturally call for more reliance on the informant and less independent evaluation than a report of strange behavior."); *Bayne v. Provost*, 04-CV-44, 2005 U.S. Dist. LEXIS 40889, at **24–25 (N.D.N.Y. Aug. 4, 2005) ("[A] police officer is justified in relying upon a citizen's warning that another person has threatened suicide even if it is later determined by mental health professionals that the person presents no such risk."). While an uncorroborated emergency call reporting a mentally ill person

in distress is generally insufficient for probable cause to believe there is a medical exigency, *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir. 2001), the same is not true of "a complaint from an *identified* family member." *Batt v. Buccilli*, 725 F. App'x 23, 28 (2d Cir. 2018) (summary order) (emphasis in original) (affirming grant of qualified immunity to defendant officer who entered plaintiff's home without a warrant after plaintiff had "told him not to come inside, and declined to simply bring the allegedly endangered octogenarian outside (or to a window)").

Further, "[w]hether a person seized pursuant to the NYMHL is later found to be mentally competent and released is irrelevant to the probable cause analysis." *Singh v. City of New York*, 19-CV-0632 (EK) (ST), 2022 U.S. Dist. LEXIS 114486, at *16 (E.D.N.Y. June 28, 2022). In other words, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (quotation omitted); *Bayne*, 2005 U.S. Dist. LEXIS 40889, at *25 ("By logical extension of the criminal law false arrest jurisprudence, when an officer receives a credible threat that an individual have [sic] threatened suicide, the officer need not explore every 'theoretically plausible' defense to an arrest before taking the person into custody." (quoting *Ricciuti*, 124 F.3d at 128)). "In sum, probable cause does not demand any showing that a good-faith belief be correct or more likely true than false." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (quotation omitted).

Here, in three of the incidents in the SAC, a 911 operator was informed that the respective plaintiff was having a mental health crisis. ¶¶ 147–148, 173, 194. The 911 operator was so informed by an identified individual who knew each plaintiff. ¶ 152 (alleging Greene's social worker called 911); ¶ 173 (alleging Sanchez-Esquivel's boyfriend called 911); *see* ¶¶ 186–194

(alleging facts from which the Court can infer that plaintiff Arvio's hepatologist's secretary had called 911). Thus, each of those 911 calls was *not* anonymous.

Further, as to all individual plaintiffs, the facts available to the officers who responded to each scene provided objectively reasonable bases for each plaintiff's seizure pursuant to § 9.41:[4]

- The caller reporting plaintiff Greene's crisis stated that Greene was suicidal, and when police responded Greene "became increasingly anxious" and walked away from the officers. ¶¶ 152, 155, 157.

- Plaintiff Sanchez-Esquivel's boyfriend called 911 and reported that she "had been having a 'manic episode' for multiple days." ¶ 173. Officers arrived shortly thereafter, and she repeatedly pled with them to leave for 30 to 40 minutes. ¶¶ 175–176, 179.

- Plaintiff Arvio told her hepatologist's secretary, in "an expression of frustration," that she felt "like jumping off the bridge." ¶¶ 186, 189. When officers arrived at Arvio's home minutes later, they stated they had received a call about suicide. ¶¶ 190, 194.[5]

- Plaintiff Collins was staying at a hotel, the manager of which called the police to report a threat of suicide based on information from an employee who had spoken with Collins for half an hour. ¶ 222, 228. When speaking with police officers and EMS workers, Collins was incredulous at being asked if she was okay or had thoughts of self-harm. ¶¶ 226–228.

- Plaintiff Ayu, "who has been diagnosed with bi-polar and schizoaffective disorder," was frustrated and "began to bang on the door" of a psychiatrist's office at a shelter where he was

---

[4] The Court should not accept as true plaintiffs' conclusory allegations that each plaintiff did nothing to suggest they were having mental health crises, or did nothing to suggest they presented a danger to themselves or others. *See* ¶¶ 151, 175, 193.

[5] When officers explained they were mandated to take her to a hospital, Arvio requested that they bring her to a specific hospital. ¶ 194.

staying.  ¶¶ 245, 247, 248–250.  When officers arrived, Ayu "resisted" being handcuffed.  ¶ 253.  On another occasion, a 911 caller reported that Ayu had threatened someone, after which officers found Ayu speaking "emotional[ly] and loud[ly] in the lobby of a mental health clinic. ¶¶ 267–270.  When officers asked him to go to the hospital, Ayu refused.  ¶¶ 271–272.

- Plaintiff Amitabh was homeless and had fallen asleep in a subway station with his belongings. ¶¶ 281, 295.  He awoke to an argument between his girlfriend and two police officers and intervened.  ¶¶ 282–283.  When officers asked Amitabh to leave, he refused.  ¶¶ 283–284.  On another occasion, Amitabh had hung his laundry on the railing in front of a building where he did not live.  ¶ 298.  The building manager called 911 and reported Amitabh "was off his medications."  ¶ 300 (alleging "he did take medications").

Given these allegations, based on the facts available to officers at the time, there was probable cause under § 9.41 to seize each plaintiff and transport them to a hospital for treatment. As to plaintiffs Greene, Arvio, and Collins, officers were entitled to rely on the callers' reports that these plaintiffs had voiced suicidal ideation, even if those reports were later determined to be overstated or completely inaccurate.  Requiring police officers to *disprove* a report that someone is at risk of harming themselves would impede the very purpose of § 9.41—transporting at-risk individuals to a hospital for possibly life-saving medical treatment.  *Cf. Matthews* 2016 U.S. Dist. LEXIS 136907, at *16 (S.D.N.Y. Sep. 30, 2016) (reasoning that "a report of a suicide threat does more to establish probable cause than a report of erratic behavior" and "naturally call[s] for more reliance on the informant and less independent evaluation").  As to plaintiffs Sanchez-Esquivel and Ayu, the officers' firsthand observations of their conduct gave rise to the objectively reasonable belief that each was experiencing a mental health crisis.  And as to plaintiff Amitabh, he displayed an "inability to meet his essential needs," which made it reasonable for police officers

to transport him for mental health treatment.  *See, e.g.*, *In re Carl C.*, 511 N.Y.S.2d at 145; *Boggs*, 523 N.Y.S.2d at 84; *Addington*, 441 U.S. at 426; *Schoolcraft*, 103 F. Supp. 3d at 505.  Accordingly, there was probable cause to seize each plaintiff pursuant to § 9.41.

## B.    Plaintiffs' Unlawful Entry Claims Fail Due to Exigent Circumstances

Plaintiffs' unlawful entry claims fail because exigent circumstances justified defendants' entry into each plaintiff's home.[6]  "The warrantless entry and subsequent search of a residence is presumed unlawful unless justified by 'exigent circumstances' like the need to 'render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'"  *McClarin v. City of New York*, 16-CV-6846 (FB), 2020 U.S. Dist. LEXIS 104180, at **7–8 (E.D.N.Y. June 15, 2020) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  To determine whether this "emergency aid exception" applies, "the dispositive question is simply whether there was *an objectively reasonable basis* for believing that medical assistance was needed, or persons were in danger."  *Batt*, 725 F. App'x at 25–26 (emphasis in original) (quotations omitted).  Where § 9.41 authorizes police officers to seize an individual, exigent circumstances may permit officers' warrantless entry to effect that seizure.  *See, e.g.*, *Torres v. Bellevue S. Assocs. LLP*, 16 Civ. 2362 (RA) (KNF), 2020 U.S. Dist. LEXIS 33948, at *40 (S.D.N.Y. Feb. 26, 2020) (officers' actions did not violate plaintiff's constitutional rights "because of the: (1) exigent circumstances under which they acted; and (2) relevant New York law which permitted the seizure," § 9.41), *report and*

---

[6] "It is well-settled that a plaintiff must possess a reasonable expectation of privacy in the places or items being entered or searched in order to invoke the Fourth Amendment."  *Gill v. Dawkins*, 16-CV-1398 (LDH) (SB), 2020 U.S. Dist. LEXIS 223421, at *7 (E.D.N.Y. Nov. 30, 2020).  Here, plaintiffs Collins, Ayu, and Amitabh allege they were seized in public places, ¶¶ 218 (Collins - the Four Seasons Hotel), 248, 261, 267 (Ayu - outside the office of a psychiatrist, in a hospital, and in a mental health clinic), 281, 298, 304 (Amitabh - in a subway station, at a building where he did not live, and "at the encampment near Fordham Road").  None of these three plaintiffs can maintain a Fourth Amendment claim for unlawful entry.

*recommendation adopted at* 2020 U.S. Dist. LEXIS 106953, at *8 (S.D.N.Y. June 18, 2020); *Cruz v. City of New Rochelle*, 13 Civ. 7432 (LMS), 2017 U.S. Dist. LEXIS 63832, at **40–49 (S.D.N.Y. Apr. 3, 2017) (officers' warrantless entry into plaintiff's apartment was objectively reasonable under both the emergency aid doctrine and § 9.41); *see also id.* at **56–59 (holding defendants also entitled to qualified immunity for warrantless entry); *Keeney v. City of New London*, 196 F. Supp. 2d 190, 195–97 (D. Conn. 2002) (officers had a reasonable basis to believe plaintiff was a threat to himself or others, and exigent circumstances justified their warrantless entry).

Where, as here, an identified individual who knew each plaintiff called 911, reporting that the person was in danger and needed mental health care, *supra* at pp. 6–7, then each entry was lawful (or, at least, qualified immunity protects the officers).   *See Batt*, F. App'x at 28 (distinguishing *Kerman*, 261 F.3d at 235–36) (granting qualified immunity for warrantless wellness check under emergency aid exception).[7]

## POINT II

### FOUR INDIVIDUAL PLAINTIFFS FAIL TO STATE CLAIMS FOR EXCESSIVE FORCE

Based on the facts alleged, defendants had probable cause to believe that plaintiffs Greene, Sanchez-Esquivel, Ayu, and Amitabh posed a danger to themselves or others.[8]  *Supra* at Point I.A.

---

[7] As to plaintiff Arvio, the officers had implicit consent to enter the apartment, or at a minimum qualified immunity, so her warrantless entry claim fails for that reason, as well.   ¶ 190 (Arvio "opened the door for" the officers); *see United States v. Sanchez*, 635 F.2d 47, 60 (2d Cir. 1980) (consent where defendant's son opened the door and stood back in response to a request to enter).

[8] Plaintiff Collins does not allege an excessive force claim.  SAC at 83 (fourth cause of action).

For the same reasons, no force used against these plaintiffs as alleged was excessive as a matter of law.  Thus, their federal and state law excessive force claims[9] should be dismissed.

Determining whether an officer's use of force was reasonable is a fact-intensive inquiry in which the Court must consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Courts must balance those factors from the perspective of a reasonable officer on the scene.  *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006).  That a suspect resists arrest adds weight to the first factor, in favor of a finding that officers used reasonable force.  *Tracy*, 623 F.3d at 98.

The allegations in the SAC, viewed, as they must be, from the perspective of a reasonable officer on the scene, show that the officers had reasonable grounds reason to believe that each plaintiff was experiencing a dangerous mental health crisis and was a danger to themselves or others, and that the responding officers used force reasonable incident to effectuating lawful seizures pursuant to § 9.41.  *See, e.g.*, ¶¶ 155–160 (after Greene walked away from the officers, they handcuffed him, dragged him against his will out of his apartment, placed him on a gurney, strapped him in, and placed him inside an ambulance); ¶¶ 179–181 (as Sanchez-Esquivel was not willing to go to the hospital, officers handcuffed her and carried her out of her apartment building's lobby "when she refused to leave"); ¶¶ 250–252 (Ayu was banging on an office door and "resisted" arrest), ¶¶ 262–265 (Ayu refused the officers' requests that he leave the emergency room lobby, struggled with the officers, and was restrained); ¶¶ 282–286, 294 (after Ayu had intervened in an

---

[9] "The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'"  *Tardif v. City of New York*, 991 F.3d  394, 410 (2d Cir. 2021).

argument between his girlfriend and two officers and refused to leave the subway station, officers "slammed" him into the wall and handcuffed him, injuring his hip in some unspecified manner).

Such force as is alleged—holding or carrying the plaintiffs or bringing them to the ground or against a wall to restrain them—is reasonable incident to an arrest or is *de minimis* and therefore not actionable. "Not every push or shove, even if it may later seem unnecessary in this peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. "One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009); *see also Kash v. Honey*, 38 F. App'x 73, 77 (2d Cir. 2002) (intentional elbowing that did not result in any injury did not amount to a Fourteenth Amendment violation). "[A] *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993); *see also Ferebee v. City of New York*, 15 Civ. 1868 (PAC), 2017 U.S. Dist. LEXIS 104783, at *20 (S.D.N.Y. July 6, 2017) (force must be ":serious or harmful enough to be actionable."). Accordingly, plaintiffs Greene, Sanchez-Esquivel, Ayu, and Amitabh's excessive force claims should be dismissed.

## POINT III

### PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE ADA, THE REHABILITATION ACT, OR THE NYCHRL

Plaintiffs fail to allege facts to plausibly show that they were treated differently *because of* their actual or perceived disability. As such, their claims under the ADA, the Rehabilitation Act, and the NYCHRL fail.

A.    **Plaintiffs' Claims under the ADA and the Rehabilitation Act Fail**[10]

Where, as here, a plaintiff's claim "relates solely to whether she received adequate medical treatment in police custody for her disability, [then] such a claim is not cognizable under the ADA." *Tardif*, 991 F.3d at 405. In other words, where a plaintiff "merely asserts that his disability was not adequately treated, not that he was treated inadequately because of his disability," they fail to state claims under the ADA or the Rehabilitation Act. *Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 15 Civ. 7065 (RA), 2019 U.S. Dist. LEXIS 137487, at **54–55 (S.D.N.Y. Aug. 14, 2019) (quotations omitted). Here, plaintiffs' disability claims fail for the same reasons: each plaintiff was taken to a hospital *for* treatment for their disability. Thus, plaintiffs' challenge is to the *adequacy* of their treatment, which is not a cognizable claim under the ADA. *See, e.g.*, *See Disability Advocates, Inc. v. McMahon*, 124 F. App'x 674, 676 (2d Cir. 2005) (affirming dismissal of ADA and Rehabilitation Act claims against police officers "because New York's *mental health pick-up program extends only to the disabled* or those who would likely be regarded as disabled" (emphasis added)); *Maccharulo v. N.Y. State Dep't of Corr. Servs.*, 08 Civ. 301 (LTS), 2010 U.S. Dist. LEXIS 73312, at *10 (S.D.N.Y. July 21, 2010) (A "claim that challenges the adequacy, or the substance, of services that are being provided to a disabled individual" is no" valid).[11]

Nor may plaintiffs successfully contend that they are being discriminated against by being subjected to a statute or program to provide an involuntary mental health evaluation. *See McGugan v.*

---

[10] "Courts in this circuit analyze claims asserted pursuant to the ADA and the Rehabilitation Act in tandem." *McCollum v. City of New York*, 16-CV-5272 (LDH), 2020 U.S. Dist. LEXIS 221433, at **5–6 (E.D.N.Y. Nov. 25, 2020).

[11] Plaintiffs contend that defendants failed to accommodate them "by failing to provide non-police services to them knowing that such services are more appropriate for individuals with mental disabilities." ¶¶ 427, 439, 495. Such allegations challenge the adequacy of plaintiffs' treatment and fail to show plaintiffs were treated less well because of their disabilities.

*Aldana-Bernier*, 752 F.3d 224, 233 (2d Cir. 2014) (plaintiff could not contend that her mental health was an "improper consideration[], unrelated to determining whether she had a mental illness likely to result in serious harm to herself or others."); *Jacob v. Bon Secours Charity Health Sys.,* 02 CV 1398 (BSJ) (RLE), 2011 U.S. Dist. LEXIS 15256, at \*\*7–8 (S.D.N.Y. Feb. 11, 2011) (plaintiff may not base disability claim on the contention that she was involuntarily committed because she is mentally ill); see also *United States v. Univ. Hosp.*, 729 F.2d 144, 156 (2d Cir. 1984) ("[The Rehabilitation Act] prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to . . . the services in question.").[12]

Plaintiffs' claim implicitly contends that § 9.41 is preempted by the ADA.  No court has ever held that § 9.41 (or, to defendants' knowledge, any similar law) is preempted by the ADA or any federal law, and there is no plausible argument that it should be.  *Cf. Disability Advocates, Inc. v McMahon*, 279 F. Supp. 2d 158, 163–69 (N.D.N.Y. 2003) (§ 9.41 grants police legal authority to arrest and dismissing plaintiff's claims under the ADA, the Rehabilitation Act, the Equal Protection Clause, and the Due Process Clause), *aff'd*, 124 F. App'x 674 (2d Cir. 2005).

## B.    Plaintiffs' NYCHRL Claims Also Fail

"NYCHRL claims are analyzed separately and under a more liberal standard than ADA or NYSHRL claims." *Camoia v. City of New York*, 09-CV-2545 (NGG) (LB), 2018 U.S. Dist. LEXIS 179355, at \*22 (E.D.N.Y. Oct. 16, 2018) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am.,*

---

[12] Moreover, the ADA does not authorize courts to micro-manage law enforcement responses to public safety emergencies presenting a danger of physical harm, such as those at issue here.  *See, e.g.*, *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 898–99 (8th Cir. 2014) ("'[W]e will not second guess [an officer's] judgments, where . . . an officer is presented with exigent or unexpected circumstances."); *Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) ("Title II [of the ADA] does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.").

*Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).    The NYCHRL prohibits providers of public accommodation, including governmental bodies or agencies and their employees, from refusing, withholding, or denying to any person "the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" because of such person's actual or perceived disability. N.Y.C. Admin. Code §§ 8-102, 8-107(4)(a)(1)(a).  "The proper inquiry under the NYCHRL is whether a plaintiff was treated less well because of her [perceived disability]." *Camoia*, 2018 U.S. Dist. LEXIS 179355, at **22–23.  For the same reasons explained in Point III.A, *supra*, plaintiffs challenge only the adequacy of their treatment and otherwise fail to show they were treated less well *because of* their actual or perceived disability.  Moreover, to the extent plaintiffs contend that police officers should not respond to mental health crises, they are in conflict with § 9.41.  But City statutes cannot supersede New York State law.  *DJL Rest. Corp. v. City of New York*, 749 N.E.2d 186, 189 (N.Y. 2001).  Thus, plaintiffs' claims under the NYCHRL should be dismissed.

## POINT IV

## THE   INDIVIDUAL   DEFENDANTS   ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the Court finds defendants used excessive force or lacked probable cause to seize any individual plaintiff, defendants are nonetheless entitled to qualified immunity from plaintiffs' state and federal law claims.[13]  Based on the allegations in the SAC, each seizure was supported by arguable probable cause, and the force used to effectuate three of those seizures was objectively

---

[13] Qualified immunity applies equally to state law as well as federal claims.  *See Concepcion v. City of New York*, 15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601, at *14 (E.D.N.Y. May 6, 2019) (applying qualified immunity to state and federal false arrest claims) (citing *Kass v. City of New York*, 864 F.3d 200, 206, 213-14 (2d Cir. 2017) (dismissing federal and state law false arrest claims)).

reasonable.[14]  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is clearly established only when a plaintiff can point either to "cases of controlling authority in [the] jurisdiction at the time of the incident" or to a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful."  *Ashcroft v. al-Kidd*, 563 U.S. 73, 735 (2011) (quotation omitted).  Clearly established law should not be defined "as a high level of generality," *al-Kidd*, 563 U.S. at 742, but instead must be "'particularized' to the facts of the case.'"  *White v. Pauly*, 580 U.S. 73, 78 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quotation omitted).  "In practice, this means that [o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Roberts v. City of New York*, 16 Civ. 5409 (BMC), 2017 U.S. Dist. LEXIS 160979, at *18 (E.D.N.Y. Sep. 29, 2017) (quotation omitted).  Because qualified immunity requires that the officer had fair notice that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004).  "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  *Id.*

---

[14]  Defendants do <u>not</u> concede that the force allegedly used to seize plaintiff Arvio was unreasonable, rather only that her excessive force claim would survive at the 12(b)(6) stage.

Critically, qualified immunity provides immunity from suit rather than just a defense to liability. *See, e.g.*, *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016). That "benefit is effectively lost if a case is erroneously permitted to go to trial." *Id.* Therefore, it is necessary that qualified immunity questions "be resolved at the earliest possible stage of litigation." *Id.* (quotation omitted). The affirmative defense of qualified immunity sets a "high bar" for plaintiffs, as it is firmly established that "qualified immunity gives ample room for mistaken judgments and provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Brown v. City of New York*, 13 Civ. 1018 (KBF), 2016 U.S. Dist. LEXIS 53365, at *17 (S.D.N.Y. Apr. 20, 2016) (quotation omitted).

## A.    Arguable Probable Cause Supported Each Individual Plaintiff's Seizure

An officer is immune from a false arrest claim if there was arguable probable cause. *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). Specifically, immunity attaches if "(a) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotations omitted). To determine whether an officer's conduct was objectively reasonable, courts "look to the information possessed by the officer at the time of arrest." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quotations omitted).

At the time of the alleged incidents, there was no Supreme Court or Second Circuit law holding that it would be constitutionally impermissible for police officers to seize an individual and transport them to a hospital for treatment based on: (1) an identified 911 caller's concerns about the individual's behavior and mental well-being; and (2) facts available to the officers at the scene supporting a reasonable inference that the individual was experiencing a mental health crisis and may be dangerous to themselves or others. At an absolute minimum, officers of reasonable

competence could disagree on whether the probable cause test was met.  As such, defendants are entitled to qualified immunity on plaintiffs' unlawful seizure claims.

**B.**      **Defendants Are Entitled to Qualified Immunity for their Use of Force to Seize Four of the Individual Plaintiffs**

Defendants are also entitled to qualified immunity on plaintiffs Greene, Sachez-Esquivel, Ayu, and Amitabh's excessive force claims.  "The Second Circuit has held that 'the qualified immunity defense is generally available against excessive force claims [where] a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances."  *Quon v. Henry*, 14 Civ. 9909 (RJS), 2017 U.S. Dist. LEXIS 60444, at *35 (S.D.N.Y. Mar. 27, 2017) (quotation omitted); *see also Kash*, 38 F. App'x at 76 ("brief and minimal use of force" was objectively reasonable where officer reasonably but mistakenly believed suspect was likely to fight back).  Moreover, "[e]ven officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force."  *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003).

At the time of the alleged incidents, there was no Supreme Court or Second Circuit law holding that it would violate the Fourth Amendment for police officers to use the amount of force necessary to effectuate the seizure of a non-compliant individual pursuant to § 9.41.  At a minimum, assuming *arguendo* that defendants' alleged actions crossed "the sometimes hazy border between excessive and acceptable force," they are nonetheless entitled to qualified immunity because competent police officers could disagree about whether the force used was reasonable. *See, e.g.*, *Quon*, 2017 U.S. Dist. LEXIS 60444, at *35 (granting qualified immunity). As such, defendants are entitled to qualified immunity on plaintiffs Greene, Sanchez-Esquivel, Ayu, and Amitabh's excessive force claims.

**POINT V**

**THE FOUR PLAINTIFF ORGANIZATIONS
LACK DIRECT OR ASSOCIATIONAL
STANDING**

**A.     The Plaintiff Organizations Lack Direct Standing**

An organization has "standing in its own right to seek judicial relief from injury to itself,"
*Warth v. Seldin*, 422 U.S. 490, 511 (1975), where the organization "meet[s] the same standing test
that applies to individuals." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294
(2d Cir. 2012) (quotations omitted).  Hence, whether an organization or an individual, "a plaintiff
must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a
favorable decision." *Women for Am. First v. De Blasio*, 520 F. Supp. 3d 532, 541 (S.D.N.Y. 2021)
(quotations omitted); *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 448 (2d Cir. 2021)
(plaintiff seeking injunctive relief cannot rely on past injury but instead must show a likelihood it
will be injured in the future).  "[A]n organization may suffer the requisite injury when it 'diverts
its resources away from its [other] current activities,' or otherwise incurs 'some perceptible
opportunity cost.'"  *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021)
(quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  Further, an organization
can satisfy the injury prong if it shows that the challenged action did not merely harm its "abstract
social interests" but "perceptibly impaired" its activities. *Id.*

As this Court has explained, there is a distinction "between cases where a defendant's
conduct forced a plaintiff to divert its resources and provide new services, therefore giving rise to
organizational standing, and cases where a plaintiff was *already* providing the services at issue
and therefore failed to allege any injury."  January 30, 2023 Opinion & Order, ECF No. 142 at 10
(quotation omitted).  Further, "'an organization's decision to embark on categorically new
activities in response to action by a putative defendant will not ordinarily suffice to show an injury

19

for standing purposes, even if the organization's own clients request the change.'" *Id.* (quoting *Conn. Parents Union*, 8 F.4th at 174).

Here, the four plaintiff organizations lack direct standing. Plaintiffs allege each organization has had to expend additional resources to care or advocate for individuals they allege were improperly and unlawfully seized by NYPD members due to actual or perceived mental illness. ¶¶ 319, 326–330, 342–338, 363–365, 368, 388–390. Each organization alleges it has had to divert resources away from certain programs or advocacy in favor of other programs or advocacy. ¶¶ 319, 327, 336, 338, 345, 348, 355, 358, 363–364, 368, 372–374, 388, 392. Each organization "seeks injunctive relief . . . in order to remedy the harms it has experienced by trying to eliminate [or avoid] Defendants' discriminatory practices and to enable it to devote its resources to providing services" or "engage in broader mental health advocacy." ¶¶ 339, 359, 379, 395.

However, the SAC is devoid of facts underlying specific instances in which any of the four organizations had to divert their resources, and this is fatal to their claims. *See Conn. Citizens Def. League*, 6 F.4th at 448 (assertions that a plaintiff organization continues to expend and divert its resources are conclusory, cannot support standing, and did not establish a likelihood of future injury). Moreover, plaintiffs fail to allege what their resources have been diverted *from*. Rather, it appears that the very purpose of the plaintiff organizations is to expend resources on the matters alleged. A plaintiff doing what it is organized to do is not an injury, and it does not confer standing. *See, e.g.*, *U.S. Women's Chamber Com. v. U.S. Small Bus. Admin.*, 04-CV-01899, 2005 U.S. Dist. LEXIS 32497 at **25–26 (D.D.C. Nov. 30, 2005) (public interest group's decision to lobby against the law they challenge is their own budgetary choice, not a cognizable injury granting standing).

While each organization plaintiff is certainly free to pursue its mental health policy goals through elections and free expression, purported "injuries to an organization's government lobbying and issue advocacy programs cannot be used to manufacture standing, because that would allow

20

lobbyists on either side of virtually any issue to take the Government to court." *Env't Working Grp. v. U.S. Food & Drug Admin.*, 301 F. Supp. 3d 165, 172 (D.D.C. 2018); *Sierra Club v. Morton*, 405 U.S. 727, 739–40 (1972) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' . . . . "); *Young Advocs. for Fair Educ. v. Cuomo*, 359 F. Supp. 3d 215, 234–36 (E.D.N.Y. 2019) ("[A]n organization whose primary endeavor is to change or enforce the law, whether by communicating directly with government officials, community leaders, or the public, occupies no position different from that of a concerned citizen."); *Taylor v. Bernanke*, No. 13-CV-1013, 2013 U.S. Dist. LEXIS 128533, at **38–41 (E.D.N.Y. Sep. 9, 2013) (denying standing because although plaintiffs may be forced to "engage in . . . advocacy different from what they otherwise would, there is no indication that" the advocacy directly conflicts with OSEC's mission to "advocate[] for regulatory reforms in the banking and financial system"). Accordingly, CAI, NAMI, VOCAL, and CCIT each lack organizational standing.

## B.    The Plaintiff Organizations Also Lack Associational Standing

The plaintiff organizations, to maintain a claim under associational standing, must demonstrate: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit." *Disability Rights N.Y. v. New York*, 17-CV-6965 (RRM) (SJB), 2019 U.S. Dist. LEXIS 102609, at *14 (E.D.N.Y. June 14, 2019) (quotations omitted).

The SAC fails to establish that any of the four plaintiff organizations have members who would otherwise have standing to sue in their own right. CAI manages housing units where some of the residents have mental disabilities and provides counseling and other services to such individuals. ¶¶ 320–321. But the mere fact that CAI serves such residents is not enough to show

they are its members.  *See, e.g.*, *N.J. Prot. & Advocacy, Inc. v. Davy*, 05-1784 (SRC), 2005 U.S. Dist. LEXIS 22749, at *9 (D.N.J. Sep. 30, 2005) (indicia of membership are found where "constituents remain involved in all levels of the organization" and "have the power to exert significant influence over the [its] priorities and activities").  The SAC alleges vaguely that CAI's staff have been traumatized by police encounters, ¶¶ 330–331, but the SAC offers no specifics about these alleged encounters or the role of staff in those encounters.[15]

Similarly, NAMI fails to establish that it has members that were injured.  NAMI serves families and individuals affected by mental disabilities by providing information and various services.  ¶ 341.  Utterly absent from the SAC, however, are facts showing that NAMI has members or that its clients have indicia of membership, or allegations of injury to any member.[16]

Nor can VOCAL establish associational standing.  Unlike CAI and NAMI, VOCAL does allege it has members: low-income people affected by mental disabilities, homelessness, and other difficult conditions or situations.  ¶¶ 381, 383–385.  Plaintiff Ayu is one such member.  ¶ 391.  But since his claims fail, Points I–III, *supra*, VOCAL cannot derive its standing from him.  Beyond Ayu, the SAC offers only a single, vague allegation that its members "have been detained and taken to hospitals against their will by NYPD officers for appearing to have a mental disability." ¶ 386.  This conclusory allegation about unspecified incidents cannot confer standing.

---

[15] "Where an association is not a traditional voluntary membership organization, its constituents must nevertheless possess sufficient indicia of membership."  *Mental Hygiene Legal Serv. v. Cuomo*, 609 F. App'x 693, 695 (2d Cir. 2015) (quotations omitted) (affirming dismissal as plaintiff organization lacked associational standing).  The SAC provides no facts to support its conclusory allegations about individual 'members,' whether staff or members of the public.

[16] Though the SAC adds several allegations regarding its *advocacy* efforts following the Mayor's announcement of the initiative on November 29, 2022, none support an inference that NAMI has members or that those members would have standing to sue.

CCIT alleges its "members include nearly 80 New York nonprofit organizations, as well as individual members, including individuals with mental disabilities." ¶ 360. But the SAC fails to allege facts showing that those members have standing. The SAC is silent as to whether the alleged members suffered any injuries in fact for which CCIT now sues. *See* ¶¶ 360–379. CCIT makes the conclusory allegation that it has organizational members, including CAI, NAMI, and VOCAL that have experienced harm similar to CAI, NAMI, and VOCAL. ¶¶ 362–364, 387. But since CAI, NAMI, and VOCAL lack standing, as explained above, the other member organizations that "experience similar harms" also lack standing. To be sure, the SAC adds new allegations regarding CCIT's individual members, but these are utterly conclusory. For instance, plaintiffs allege some "individual members have also been detained by the police and forcibly brought to psychiatric hospitals, despite not presenting a risk of serious harm to themselves or others." ¶ 366. But the SAC provides *no* facts from which the Court can plausibly reach a legal conclusion that those seizures were unlawful. Nor is an alleged "danger of being forcibly detained" under the initiative that Mayor Adams announced November 29, 2022 (the "Initiative"), ¶ 377, sufficient to confer associational standing. *See* ECF No. 142 at 9–10.

### POINT VI

### PLAINTIFFS' *MONELL* CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

Plaintiffs fail to allege a viable claim against the City under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), because the SAC fails allege facts showing both the existence of a municipal policy or custom and that such policy was the proximate cause of an alleged constitutional violation. *See Cash v. Cnty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) ("'[P]roximate cause,' although derived from tort law, fairly describes a plaintiff's causation burden with respect to a municipal liability claim under § 1983."). The mere conclusory allegation

that a municipality has such a custom or policy that caused a constitutional violation is insufficient in the absence of factual allegations tending to support a plausible inference that the conclusory allegation is true. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

"Plaintiff must *demonstrate* that the municipal "policy" at issue was the "moving force" behind her injuries. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). As the Supreme Court has made clear, "the identified deficiency . . . must be closely related to the ultimate injury." *Id.*; *accord Anonymous v. City of Meriden*, 10-CV-37 (MPS), 2013 U.S. Dist. LEXIS 72678, at **14–16 (D. Conn. May 22, 2013). "The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between the [policy] alleged, and the particular constitutional violation at issue." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights.") (quotations and citations omitted)).

Plaintiffs purport to proceed on three theories of *Monell* liability: (1) the existence of a formal policy, ¶¶ 12, 74–76 (locating a specific EDP Policy in NYPD Patrol Guide § 221-13 ("PG § 221-13"); (2) the existence of a "*de facto* policy or custom," ¶ 467; (3) and deliberate indifference. ¶¶ 468–472. Each theory fails to support plaintiffs' claims.

## A.    The Patrol Guide Cannot Serve as a Basis for Plaintiff's *Monell* Claim

Although the SAC coyly avoids contending that any New York State law is unconstitutional, plaintiffs' theories require that the Court implicitly set aside New York State's § 9.41, which specifically calls upon *the police* to take into custody for treatment mentally ill persons that are a danger to themselves or others. The SAC insists that the police should not be involved in the role that New York State law calls upon them to serve. *See* ¶ 19 (mental health crises "are

not matters of law enforcement but rather are health issues that require the services of health professionals"); *id.* at p. 92 (demand for removal of police from responses to mental health crises and requiring non-governmental "first responder teams").  PG § 221-13, upon which plaintiffs rely for their *Monell* claim, mirrors the language codified in § 9.41.  *Compare* PG § 221-13 (instructing that the stated procedures apply "[w]hen a uniformed member of the service reasonably believes that a person who is apparently mentally ill or emotionally disturbed, must be taken into protective custody because the person is conducting himself in a manner likely to result in a serious injury to himself or others") *with* § 9.41 (stating a "police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others").[17]

There is no doubt that § 9.41, and therefore the NYPD policy implementing it, is constitutional.  The state "has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." *In re K.L.*, 1 N.Y.3d 362, 370 (2004) (quoting *Addington*, 441 U.S. at 426).  "Accordingly, where a patient presents a danger to self or others, the state may be warranted, in the exercise of its police power interest in preventing violence and maintaining order, in mandating treatment over the patient's objection." *Id.*  As the City policy simply implements a valid New York state law—the constitutionality of which plaintiffs do not challenge—that policy cannot form the basis of a *Monell* claim.

----

[17] Plaintiffs suggest that the Patrol Guide's provisions regarding persons who are "not violent and willing to leave voluntarily" are unconstitutional or cause constitutional violations. ¶ 75.  But the Patrol Guide provides that if someone is "not violent, and willing to leave voluntarily," they should be escorted for medical treatment that is—by the policy's terms—*voluntary*, and prohibits the use of force that is not reasonably necessary. ¶ 422.  Moreover, none of the plaintiffs allege that they agreed to go for medical treatment, but rather the opposite, so that portion of the Patrol Guide is causally and logically irrelevant to their claims.

Allegations regarding the Initiative, ¶¶ 131–145, do not change this analysis because it is merely a directive to apply existing law.  As explained in defendants' prior briefing, the Initiative correctly sets forth the legal standard for a mental health seizure under § 9.41.  ECF No. 131 at 2–3.  Thus, plaintiff's allegation that the Initiative "lowers the standard" such that an officer can seize an individual for treatment "without any indication that they present a danger to themselves," ¶ 132, is simply incorrect.  Moreover, plaintiffs fail to allege facts from which the Court can infer that the Initiative was the moving force behind the § 9.41 seizure of any individual plaintiff.[18]  On that basis alone, plaintiffs lack standing to challenge the Initiative under *Monell*.  *City of Canton*, 489 U.S. at 389; *Oklahoma City*, 471 U.S. at 823 n.8; *Vippolis*, 768 F.3d at 44.

## B.    Plaintiffs Fail to Establish a *De Facto* Policy or Practice

Plaintiffs also fails to establish a *de facto* policy or practice.  "To demonstrate the existence of a *de facto* policy or custom through a widespread practice, a plaintiff must allege the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively sanctioning or approving the conduct."  *Sauer v. Town of Cornwall*, 20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284, at **15–16 (S.D.N.Y. Sep. 30, 2022) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).  Plaintiffs' allegations regarding a *de facto* policy appear in the SAC at ¶¶ 71–130, but those allegations detail the City's efforts to consider and implement new policies surrounding mental health and law enforcement.  Such efforts and considerations hardly constitute deliberate indifference.  *See infra* at Point VI.C.

---

[18] The mere fact that plaintiffs Collins and Ayu's § 9.41 seizures occurred in 2023 is certainly insufficient to show that the Initiative proximately caused their seizures.  ¶¶ 29, 281 (alleging 2023 seizures); *but see* ¶ 218 (alleging Collins was seized in 2022).  The Court should not accept plaintiffs' conclusory allegations of causation as true.  *See, e.g.*, ¶ 137 (implying a vague connection between Collins' experience and the Initiative).  Nor is fear of a future seizure sufficient to confer standing.  *Compare* ¶¶ 169, 278 *with* ECF No. 142 at 9 (holding such fear is "purely speculative" and premised on conjecture).

Even numerous claims against a municipality are insufficient to state a plausible *Monell* claim unless they are coupled with findings of liability. *White v. City of New York,* 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (plaintiff cited 6 incidents over a 5-year period, and those "half dozen incidents describe a range of conduct" and "none ha[d] resulted in an admission or finding of liability"); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 96 (E.D.N.Y. 2016) (similar). Here, aside from their six experiences, plaintiffs allege facts concerning 23 incidents over a 17-year period.[19] ¶¶ 82(b)–(x). Fatal to plaintiffs' *Monell* claim is their failure to allege that any of the 23 incidents resulted in admissions or findings of liability. Moreover, none of the other 23 incidents are factually similar to plaintiffs'. *Compare id.* (alleging that in 22 of those 23 incidents, police officers killed an individual) *with* ¶¶ 164, 182, 206, 239, 255, 265, 275, 291, 302, 309 (alleging each plaintiff was seized and brought to a hospital).

Even if the other incidents are factually similar to plaintiffs', and even if they resulted in a finding of misconduct, those incidents are too few to establish a *de facto* practice. Rather, all 28 incidents—culled from a 17-year period—comprise only a tiny fraction of the number of actual or apparent mental health crises to which NYPD officers responded during that time. *See* ¶ 96 ("NYPD responds to approximately 200,000 'EDP' calls a year" but the true number "is likely much larger"). Even if all 28 incidents alleged in the SAC had occurred in a single year, rather than over 17 years, they would constitute, *at most*, 0.014% of the mental health crisis calls to which NYPD officers responded. Thus, these allegations fall far short of plausibly alleging "misconduct sufficiently persistent or widespread as to indicate a pattern acquir[ing] the force of law." *Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018) (quotations omitted) (affirming

---

[19] Plaintiffs also allege facts about a 1984 incident. ¶¶ 71, 82(a). That incident is excluded from this total because it falls outside—by two decades—the more recent range during which all other alleged incidents occurred.

dismissal of *Monell* claims where plaintiff had cited 48 instances of prosecutorial misconduct over 23 years involving different conduct from that alleged by plaintiff).[20]

## C.    Plaintiffs Fail to Demonstrate Deliberate Indifference

Plaintiffs' *Monell* claim also fails under a deliberate indifference theory.  A "failure to train . . . employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train . . . led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability."  *Connick v. Thompson*, 563 U.S. 51, 68 (2011).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick*, 563 U.S. at 61; *accord Boddie v. City of New York*, 15 Civ. 4275 (GHW), 2016 U.S. Dist. LEXIS 50248, at *11 (S.D.N.Y. Apr. 13, 2016).  "A training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing."  *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007); *Boddie*, 2016 U.S. Dist. LEXIS 50248, at *13–14 ("A report recommending improvements to an existing training program

---

[20] *See also Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015) (16 lawsuits over 12 years in New York City were inadequate to plead a municipal custom); *Tieman v. City of Newburgh*, 13 Civ. 4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *50 (S.D.N.Y. Mar. 26, 2015) (13 allegations of thirteen instances "of excessive force during arrests over four years . . . during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate" a widespread practice); *Walker v. City of New York*, 12 Civ. 5902 (PAC), 2014 U.S. Dist. LEXIS 42272, at **6–7 (S.D.N.Y. Mar. 18, 2014).

. . . does not, without more, give rise to a plausible inference of deliberate indifference on the part of the City.").  Here, the SAC offers a litany of policy rationales in support of their argument that the City's current training program is inadequate.  *See* ¶¶ 86–130.  But those alleged theoretical inadequacies do not, without more, equate to deficiencies of a constitutional proportion.

Moreover, the City must be on notice that its training is resulting in constitutional violations.    Given the relatively small number of alleged—and unproven, dissimilar—incidents that plaintiffs cite to as purported misconduct, their claim fails the notice requirement.  *See Boddie*, 2016 U.S. Dist. LEXIS 50248, at *13 (small number of dissimilar incidents alleged does not support deliberate indifference); *Pluma v. City of New York*, 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134, at **35–36 (S.D.N.Y. Mar. 31, 2015) (a "handful of dissimilar incidents occurring over the course of more than a decade is too sparse to put the City on notice that the NYPD's training program produces officers who are likely to commit constitutional violations"); *Marom v. City of New York*, 15 Civ. 2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *77 (S.D.N.Y. Mar. 7, 2016) (study suggesting further investigation of prior alleged incidents of force was insufficient to state a failure-to-train claim).  Thus, the SAC fails to state a deliberate-indifference *Monell* claim.

### POINT VII

### PLAINTIFFS' PUTATIVE CLASS CANNOT BE CERTIFIED

Rule 23(a) s sets forth certain prerequisites to a class action lawsuit:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a).  Before certifying a class, a district court must be persuaded, "after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (2d Cir. 1999), *cert. denied sub nom. Metro-North Commuter R.R. v. Norris,* 529 U.S. 1107.  The class proponent bears the burden of showing that each of the above four requirements has been satisfied by a preponderance of the evidence. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 201–03 (2d Cir. 2008).  Further, the Court must "resolve[] factual disputes relevant to each Rule 23 requirement" and find that "whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *Miles v. Merrill Lynch & Co., (In re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 41 (2d Cir. 2006).  "The test is conjunctive; if one element is not met, then the claim cannot be certified for class treatment." *Garcia de León v. N.Y.U.*, 21  Civ. 5005, 2022 U.S. Dist. LEXIS 110787 at *22 (S.D.N.Y., June 22, 2022).  "These four requirements . . . effectively limit the class claims to those fairly encompassed by the named plaintiff[s]' claims." *Id.* at **22–23 (quotations omitted).

Although not expressly required by Rule 23, the Second Circuit has also recognized an implied requirement of ascertain ability, which requires that the description of the proposed class be sufficiently definite using objective criteria.  *In re Petrobras Sec. Litig,* 862 F.3d 250, 260 (2d Cir. 2017).  In addition to the Rule 23(a) requirements, in order to bring a class claim for damages, under Rule 23(b)(3), plaintiffs must demonstrate that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Rule 23(b)(3).

Here, the plaintiffs seek to represent a class "consisting of individuals who, because of their mental disability or perceived mental disability, have been, could have been, or will be seized,

detained and/or subjected to force with NYPD officers pursuant to NYPD Patrol Guide Procedure No. 221-13 or its equivalent and/or denied the appropriate response to mental health crises." ¶ 396. As an initial matter, the class allegations are not limited to any specific time period, ¶¶ 396–411, and thus the class is not ascertainable.

Moreover, damages class could never be certified here because individualized issues necessarily predominate over any that the putative class members may have in common. The lawfulness of any putative class member's § 9.41 seizure depends on a probable cause analysis—a highly particularized inquiry for which class treatment is obviously inappropriate. *See supra* at 4. "Such an intensive, individualized inquiry into the existence of probable cause for each Plaintiff means that the proposed certification fails to meaningfully further efficient issue resolution, as the Court would be unable to resolve the question of the City's liability without individualized inquiry." *Packard v. City of New York*, 2020 U.S. Dist. LEXIS 54003, at *8 (S.D.N.Y. Mar. 25, 2020). The same is true of the underlying excessive force claims, which similarly depend on a "necessarily case and fact specific" inquiry. *Tracy*, 623 F.3d at 96. Accordingly, the Court should dismiss plaintiffs' class action claims.

## POINT VIII

### PLAINTIFFS' CLAIMS UNDER THE NEW YORK STATE CONSTITUTION SHOULD BE DISMISSED

"It is well-settled that no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution." *Oliver v. City of New York*, 19 Civ. 11219 (PGG) (JLC), 2022 U.S. Dist. LEXIS 27053, at **40–41 (S.D.N.Y. Feb. 15, 2022) (quotations omitted). That is so even if all of a plaintiff's § 1983 claims are dismissed. *See, e.g.*, *Allen v. Antal*, 12 Civ. 8024 (NSR), 2014 U.S. Dist. LEXIS 79031, at **14–15, *57 (dismissing all of plaintiff's § 1983

claims), *aff'd*, 665 F. App'x 9, 11 (2d Cir. 2016).  Because all of the plaintiffs' New York State

constitutional claims are duplicative of their Section 1983 claims, they should be dismissed.[21]

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court dismiss the

abovementioned claims in the second amended complaint, with prejudice, together with such other

and further relief as the Court deems just and proper.

Dated:　　　New York, New York
　　　　　　June 16, 2023

> HON. SYLVIA O. HINDS-RADIX
> Corporation Counsel of the City of New York
> *Attorney for Defendants City, Adams, de*
> *Blasio, Sewell, Shea, Haber, Gbain,*
> *Prasad, Dawkins, Fisher, Ramayya,*
> *Torres, Sanchez, and Morrone*
> 100 Church Street, Rm. 378
> New York, New York 10007
> (212) 356-3541

> By:　　　　*Alan H. Scheiner*
> 　　　　　Alan H. Scheiner
> 　　　　　*Senior Counsel*
> 　　　　　Jeffrey Frank
> 　　　　　*Assistant Corporation Counsel*
> 　　　　　Special Federal Litigation Division

cc:　　All Counsel (via ECF)

---

[21] If a plaintiff's federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over those plaintiffs' remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  In addition, "[b]ecause the law governing claims under the NYCHRL is still developing, [plaintiffs'] NYCHRL claims present questions best left to the courts of the state of New York."  *Farooq v. N.Y.C. Health & Hosps. Corp.*, 19 Civ. 6294 (JMF), 2020 U.S. Dist. LEXIS 153815, at **34–35 (S.D.N.Y. Aug. 25, 2020) (quotations omitted).