Docket No.  21 Civ. 5762 (PAC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN GREENE; GIOVANNA SANCHEZ-ESQUIVEL; SARAH ARVIO; LISA COLLINS; ORITSEWEYIMI OMOANUKHE AYU; and NEIL AMITABH, individually and on behalf of all others similarly situated, and COMMUNITY ACCESS, INC.; NATIONAL ALLIANCE ON MENTAL ILLNESS OF NEW YORK CITY, INC.; CORRECT CRISIS INTERVENTION TODAY – NYC; and VOICES OF COMMUNITY ACTIVISTS AND LEADERS NEW YORK,

Plaintiffs,

- against -

CITY OF NEW YORK; ERIC ADAMS; BILL DE BLASIO; EDWARD A.  CABAN; KEECHANT L. SEWELL; DERMOT F. SHEA, NYPD POLICE OFFICER MARTIN HABER, NYPD POLICE SERGEANT CARRKU GBAIN, NYPD POLICE OFFICER VIKRAM PRASAD, NYPD POLICE OFFICER ANDRE DAWKIN, NYPD POLICE OFFICER TYRONE FISHER, OFFICER DEVIENDRA RAMAYYA; NYPD POLICE OFFICER JULIAN TORRES; NYPD OFFICER APRIL SANCHEZ; NYPD POLICE OFFICER GABRIELE MORRONE; NYPD OFFICER JOHN FERRARA; NYPD POLICE OFFICER MARYCATHERINE NASHLENAS; and NYPD OFFICERS JOHN and JANE DOES # 1-40,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS CERTAIN CLAIMS IN THE THIRD AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND TO STRIKE THE CLASS ACTION DEMAND PURSUANT TO RULE 12(f)**

*MURIEL GOODE-TRUFANT*
*Acting Corporation Counsel of the City of New York*
*Attorney for Defendants City, Adams, de Blasio, Caban, Sewell, Shea, Haber, Gbain, Prasad, Dawkins, Fisher, Ramayya, Torres, Sanchez, Morrone, Ferrara, and Nashlenas*
100 Church Street  New York, N.Y. 10007
*Of Counsel: Alan H. Scheiner*
Tel: (212) 356-2344

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

STANDARDS OF REVIEW ................................................................................... 4

ARGUMENT

    POINT I

        PLAINTIFFS' *MONELL* CLAIMS ARE
        DEFICIENT AND SHOULD BE DISMISSED ........................................ 5

        A.  The Patrol Guide Cannot Serve as a Basis for
            Plaintiff's *Monell* Claim ................................................................ 6

        B.  Plaintiffs Fail to Establish a *De Facto* Policy or
            Practice ........................................................................................... 9

        C.  Plaintiffs Fail to Demonstrate Deliberate
            Indifference .................................................................................... 12

    POINT II

        THE CLAIMS AGAINST THE EXECITIVE
        DEFENDANTS SHOULD BE DISMISSED FOR
        LACK OF PERSONAL INVOLVEMENT,
        BECAUSE THEY ARE DUPLICATIVE, AND
        ARE BARRED BY ABSOLUTE AND
        QUALIFIED IMMUNITY ....................................................................... 13

        A.  The Claims Against Mayor Adams, Former
            Mayor de Blasio, NYPD Commissioner Caban,
            former NYPD Commissioner Sewell, and
            Former NYPD Commissioner Shea Should Be
            Dismissed for Lack of Personal Involvement .................................. 13

        B.  The Claims Against the Executive Defendants
            Should be Dismissed as Redundant. ............................................... 15

        C.  Absolute Immunity Bars Claims Against the
            Mayoral Defendants ....................................................................... 16

**Page**

    D.  All Executive Defendants Are Entitled to Qualified Immunity. .......................................................... 17

POINT III

    PLAINTIFF AYU'S CLAIM FOR UNCONSTITIONAL SEIZURE FOR HIS APRIL AND MAY 2022 INCIDENTS SHOULD BE DISMISSED. ........................................................... 18

POINT IV

    PLAINTIFF COLLINS, AYU, AND AMITABH'S CLAIMS FOR WARRANTLESS ENTRY SHOULD BE DISMISSED ..................................... 19

POINT V

    PLAINTIFFS' DISABILITY CLAIMS UNDER FEDERAL AND STATE LAW SHOULD BE DISMISSED ............................................................ 19

POINT VI

    PLAINTIFFS CLASS ACTION ALLEGATION SHOULD BE STRIKEN BECAUSE THE CLAIMS IN THE TAC COULD NOT BE CERTIFIED UNDER RULE 23. ................................................... 22

    A.  Plaintiffs' Claims Cannot Meet the Requirements of Rule 23(a) ............................................. 23

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Anderson v. Creighton*,
    483 U.S. 635 (1987)..................................................................................18

*Ashcroft v. al-Kidd*,
    563 U.S. 73 (2011)...................................................................................18

*Ass'n of Jewish Camp Operators v. Cuomo*,
    470 F. Supp. 3d 197 (N.D.N.Y. 2020).....................................................17

*Atkins v. Cnty. of Orange*,
    251 F. Supp. 2d 1225 (S.D.N.Y. 2003)....................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................5

*Bey v. Adams*,
    22-cv-2593 (PAE) (RWL), 2022 U.S. Dist. LEXIS 202762
    (S.D.N.Y. Nov. 4, 2022) ....................................................................14, 15

*Bogan v. Scott-Harris*,
    523 U.S. 44 (1998)..............................................................................16, 17

*Borgese v. Baby Brezza Enters. LLC*,
    2021 U.S. Dist. LEXIS 30216 (S.D.N.Y. Feb. 18, 2021).......................23

*Brandon v. Kinter*,
    938 F.3d 21 (2d Cir. 2019).......................................................................13

*Brennan v. City of New York*,
    2023 U.S. Dist. LEXIS 155576 (E.D.N.Y. Sept. 1, 2023).......................25

*Brosseau v. Haugen*,
    543 U.S. 194 (U.S. 2004).........................................................................18

*Brown v. Kelly*,

*Bryant v. Steele*,
    25 F. Supp. 3d 233 (E.D.N.Y. 2014) .......................................................20

*Buari v. City of New York*,
    530 F. Supp. 3d 356 (S.D.N.Y. 2021)......................................................10

*Butchino v. City of Plattsburg*,
    No. 8:20-cv-796, 2022 U.S. Dist. LEXIS 7995 (N.D.N.Y. Jan. 14, 2022) ...........................22

**<u>Cases</u>**                                                                                                      **<u>Pages</u>**

*Calderon v. City of New York*,
  138 F. Supp. 3d 593 (S.D.N.Y. 2015)..................................................................10

*Camacho v. City of New York, et. al.*,
  19 Civ. 11096 (DLC), 2020 U.S. Dist. LEXIS 125801
  (S.D.N.Y. July 16, 2020) ....................................................................................23

*Cash v. Cnty. of Erie*,
  654 F.3d 324 (2d Cir. 2011)..................................................................................5

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................................5

*City of Canton v. Harris*,
  489 U.S. 378 (1989)..........................................................................................6, 7

*Concepcion v. City of New York*,
  15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601
  (E.D.N.Y. May 6, 2019) ......................................................................................17

*Connick v. Thompson*,
  563 U.S. 51 (2011)........................................................................................12, 13

*Davis v. Stratton*,
  360 F. App'x 182 (2d Cir. 2010) ..........................................................................15

*DiFolco v. MSNBC Cable LLC*,
  622 F.3d 104 (2d Cir. 2010)..................................................................................5

*Doe v. Pfrommer*,
  148 F.3d 73 (2d Cir. 1998)..................................................................................20

*Dove v. Fordham University*,
  56 F.Supp.2d 330 (S.D.N.Y. 1999) .................................................................14, 15

*Dwares v. City of New York*,
  985 F.2d 94 (2d Cir. 1993)....................................................................................5

*Enriquez v. Cherry Hill Mkt. Corp.*,
  993 F. Supp. 2d 229 (E.D.N.Y. Sept. 30, 2013) ..................................................27

*Garcia v. Execu/Search Grp., LLC*,
  17 Civ. 9401 (WHP), 2019 U.S. Dist. LEXIS 68904 (S.D.N.Y. Feb. 19, 2019)..................23

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982)......................................................................................23, 24

**Cases**                                                                                               **Pages**

*Gohier v. Enright*,
    186 F.3d 1216 (10th Cir. 1999) ........................................................................22

*Grinblat v. Michell Wolf LLC*,
    338 F.R.D. 15 (E.D.N.Y. 2021) ......................................................................25

*Grinblat v. Nulife of Brooklyn, LLC*.
    20-CV-5854 (PKC) (PK), 2021 U.S. Dist. LEXIS 60534
    (E.D.N.Y. Mar. 30, 2021) ................................................................................25

*Haberle v. Troxell*,
    885 F.3d 171 (3d Cir. 2018)............................................................................22

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)........................................................................................17

*Harrell v. New York State Dep't of Corr. & Cmty. Supervision*,
    No. 15 Civ. 7065, 2019 WL 3821229 (S.D.N.Y. Aug. 14, 2019) .........................20

*Haus v. City of New York*,
    03 Civ. 4915 (RWS) (MHD), 2011 U.S. Dist. LEXIS 155735
    (S.D.N.Y. Aug. 31, 2011) ................................................................................24

*In re K.L.*,
    1 N.Y.3d 362 (2004) .........................................................................................7

*Kass v. City of New York*,
    864 F.3d 200 (2d Cir. 2017)............................................................................17

*McCoy v. Goord*,
    255 F. Supp. 2d 233 (S.D.N.Y. 2003)............................................................14

*Monell v. Department of Social Services of the City of New York*,
    436 U.S. 658 (1978)..............................................................1, 2, 5, 6, 10, 12, 13, 15

*Mothersell v. City of Syracuse*,
    289 F.R.D. 389 (N.D.N.Y. 2013) ...................................................................24

*Nunez v. City of New York*,
    735 F. App'x 756 (2d Cir. 2018) ....................................................................10

*Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985).........................................................................................6, 7

*Olma v. Collins*,
    499 Fed. Appx. 98 (2d Cir. 2012) ..................................................................16

**Cases**                                                                                      **Pages**

*Packard v. City of New York*,
   2020 U.S. Dist. LEXIS 54003 (S.D.N.Y. Mar. 25, 2020) .......................................24

*Pearson v. Callahan*,
   555 U.S. 223 (2009)...........................................................................................17

*Provost v. City of Newburgh*,
   262 F.3d 146 (2d Cir. 2001)..............................................................................14

*Reyes v. Town of Thomaston*,
   No. 3:18-cv-831 (JBA), 2020 U.S. Dist. LEXIS 181331
   (D. Conn. Sep. 30, 2020) ..................................................................................22

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).............................................................................24

*Sauer v. Town of Cornwall*,
   20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284 (S.D.N.Y. Sep. 30, 2022)....................9

*Segal v. City of New York*,
   459 F.3d 207 (2d Cir. 2006)..............................................................................12

*Smiley v. Holm*,
   285 U.S. 355 (1932)...........................................................................................17

*Spallone v. United States*,
   493 U.S. 265 (1990)...........................................................................................16

*State Emples. Bargaining Agent Coal. v. Rowland*,
   494 F.3d 71 (2d Cir. 2007)................................................................................17

*Sup. Ct. Va.* v. *Consumers Union of U.S., Inc.*,
   446 U.S. 719 (1980)...........................................................................................16

*Tardif v. City of New York.*
   91 F.3d 394 (2d Cir. 2021)...........................................................................20, 21

*Tenney v. Brandhove*,
   341 U.S. 367 (1951)...........................................................................................16

*Universal Calvary Church v. City of New York*,
   177 F.R.D. 181 (S.D.N.Y 1988) .......................................................................25

*In re: Visa*,
   280 F.3d at 133 .................................................................................................26

**Cases**                                                                                                                    **Pages**

*Wal-mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................................23, 24

*White v. Pauly*,
    580 U.S. 73 (2017) (per curiam).........................................................................18

*Wray v. City of New York*,
    490 F.3d 189 (2d Cir. 2007)................................................................................12

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994).............................................................................13, 14

**Statutes**

29 U.S.C. § 794 ...................................................................................................1

42 U.S.C. § 1983 ...............................................................1, 5, 13, 14, 15, 16, 27

42 U.S.C. § 12131 ...............................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................2, 4, 5

Fed. R. Civ. P. 12(f)......................................................................................2, 23, 24

Fed. R. Civ. P. 23(a) .....................................................................................23, 24

Fed. R. Civ. P. 23(b) ...........................................................................................23

Fed. R. Civ. P. 23(b)(2) .................................................................................24-25

Fed. R. Civ. P. 23(b)(3) .................................................................................24, 25

N.Y.C. Admin. Code § 8-101 *et seq*. ...................................................................1

N.Y. Crim. P. Law §§ 2.10, 2.20 .........................................................................9

N.Y. Crim. P. Law § 140.10 ...............................................................................21

State Mental Hygiene Law § 9.41...............................1, 2, 3, 4, 6, 7, 17, 20, 21, 22

## PRELIMINARY STATEMENT

Plaintiffs bring a purported class action challenging law enforcement's role in enforcing New York State Mental Hygiene Law § 9.41 ("MHL 9.41"). In doing so, plaintiffs continue to ask the Court to displace a policy that was crafted by state and city elected officials with a sweeping new judicial regime, mandating the City to use civilian mental health providers as the exclusive first responders to all mental health crises. *See* Third Amended Complaint ("TAC"), ECF No. 210, ¶ 9. Such a regime would be contrary to constitutional and statutory law, and would expose responders, persons in need of emergency mental health evaluation, and the public, to unnecessary and significant enhanced risks of harm.

Defendants moved to dismiss in part the Second Amended Complaint. *See* Def. First Mem.[1] The Court granted that motion in part, dismissing without prejudice the following claims:

- The claims under the Americans with Disabilities Act, 42 U.S.C. § 12131 ( ADA"), and the Rehabilitation Act, 29 U.S.C. § 794, (the "Rehabilitation Act") for plaintiffs Arvio, Collins, and Amitabh (not dismissing Greene, Sanchez- Esquivel, and Ayu's claims under the same statutes).

- All plaintiffs' claims under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

- All plaintiffs' claims under 42 U.S.C. § 1983 for municipal liability against the City pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

---

[1] Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Second Amended Complaint (ECF No. 175) is referred to as "Def. First Mem."

- Plaintiff Ayu's claims for false arrest arising from his April and May 2022 arrests under federal and state law; and

- Plaintiffs' Collins, Ayu, and Amitabh's warrantless entry claims under federal and state law.

Opinion and Order, March 26, 2024 (ECF No. 193) ("Order") at 41.

In the TAC, plaintiffs attempt to replead all of their dismissed claims. Although plaintiffs add 34 paragraphs to their pleading, they add nothing that calls for a different result. Defendants[2] move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the following claims in the TAC: (1) the *Monell* claim; (2) disabilities claims under state and federal law; (3) Ayu's claim for false arrest arising from his alleged April and May 2022 arrest under federal and state law; and (4) Collins, Ayu, and Amitabh's warrantless entry claims under federal and state law. In addition, defendants move pursuant to Fed. R. Civ. P. 12(f) to strike plaintiffs' demand for class-wide relief.

## STATEMENT OF FACTS[3]

Members of the New York City Police Department ("NYPD") responded to apparent mental health crises experienced by each of the six individual plaintiffs, and pursuant to N.Y. Mental Hyg. Law § 9.41 ("MHL 9.41"), placed the plaintiffs in custody for transport by ambulance

---

[2] Defendants collectively refer to the following: the City of New York ("the City"), Mayor Eric Adams, former Mayor Bill de Blasio, Edward A. Caban, Keechant L. Sewell, Dermot F. Shea, NYPD Officer Martin Haber, NYPD Sergeant Carrku Gbain, NYPD Officer Vikram Prasad, NYPD Officer Andre Dawkins, NYPD Officer Tyrone Fisher, NYPD Officer Deviendra Ramayya, NYPD Police Julian Torres, NYPD Officer April Sanchez, NYPD Officer Gabriele Morrone, NYPD Officer John Ferrara, and NYPD Officer Marycatherine Nashlenas.

[3] This statement of facts is based entirely on the allegations in the TAC and is not an admission of any such facts. Should any claims discussed herein not be dismissed, defendants reserve the right to contest any fact alleged in the TAC.

to a hospital for psychiatric evaluation.[4] *See* TAC, ¶ 9.[5]  In addition to the individual Plaintiffs, four organizational plaintiffs join the present action, although it is unclear which claims they bring on their own behalf.  *See id.*, ¶ 14.[6]

The TAC alleges in conclusory fashion that there is a "long history of the City discriminating against people with mental disabilities[.]" *Id.*, ¶ 56. Further, plaintiffs allege that the City's emergency response program concerning those with mental disabilities do not provide the same benefits and services as those with physical health emergencies. *See id.* at ¶ 66.  Plaintiffs allege that the NYPD's policy for "Emotionally Disturbed Persons," Patrol Guide § 221-13 ("PG 221-13"), and the City's Involuntary Removal Policy, discriminate against the mentally ill by authorizing mentally ill persons to be taken into custody for psychiatric evaluation, as authorized by N.Y. Mental Hygiene Law, § 9.41 ("MHL 9.41").  As in their SAC, plaintiffs maintain that the NYPD should not handle 911 calls for assistance to people experiencing mental health emergencies, which should only be handled by civilian professionals who are members of or acceptable to the organizational plaintiffs.  *See* Complaint, at 100-d, ¶¶ 3, 61, 66, 70, 122-23.

Plaintiffs incorrectly allege that the PG 221-13 directs the police to take into custody anyone who is ""mentally ill" *or 'conducting themselves in a way that likely presents serious harm to persons or others'"* ¶ 132.[7]  In fact, PG 221-13, attached as Exhibit A to the TAC, contains no

---

[4] Each individual Plaintiffs' experience within the TAC is as follows: ¶¶ 149–76 (Greene); ¶ 177–91 (Sanchez-Esquivel); ¶¶ 192–225 (Arvio); ¶¶ 226–55 (Collins); ¶¶ 256–90 (Ayu); ¶¶ 291–331 (Amitabh).

[5] For brevity, citations to paragraphs in the TAC are generally indicated solely by the symbol "¶."

[6] The organizational plaintiffs are Community Access, Inc. ("Community Access"), the National Alliance on Mental Illness of New York City, Inc. ("NAMI-NYC"), Correct Crisis Intervention Today-NYC ("CCIT-NYC"), and Voices of Community Activist and Leaders New York ("VOCAL-NY")

[7] Section 9.41 states that a "police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." § 9.41.

such language.  It states, congruent with MHL 9.41, that the police may take into custody an "EDP," who is defined as "[a] person who appears to be mentally ill or temporarily deranged *and is* conducting himself in a manner which a police officer reasonably believes is likely to result in serious injury to himself or others." Exhibit A at 1 (emphasis added).  Plaintiffs contend that the word "or" between the phrases "mentally ill" and "temporarily deranged," instructs officers to take people into custody solely because they are mentally ill.[8] *See* ¶¶ 132. This Court previously held that PG 221-13 is congruent with MHL 9.41, which is constitutional and unchallenged by plaintiffs.  *See* Order, at 36-37.  Plaintiffs also contend that the policy initiative announced by the City in November 2022 (the "Initiative"), also causes police to take people into custody solely because they are mentally ill.  ¶¶ 142-48.  But this Court also previously ruled that the Initiative is consistent with state law and the constitution.  *See* Order at 34-35, 37.

Plaintiffs seek monetary damages and equitable relief on behalf of themselves and a putative class, including an injunction preventing the NYPD from following current policies for obtaining psychiatric evaluations for persons who are mentally ill and conducting themselves in a manner presenting a danger to themselves or others, including an injunction requiring "that health professionals, rather than police, are first responders for mental health emergencies."  *Id.*, at 100.

### STANDARDS OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint.  That tenet, however, is "inapplicable to legal

---

[8] As set forth *infra*, Point I, plaintiffs reading of the Patrol Guide is neither a natural or common sense interpretation of its words, because the conjunctive phrase "and is conducting himself in a manner which a police officer reasonably believes is likely to result in serious injury to himself or others" obviously modifies both "mentally ill" and "temporarily deranged" persons.  Plaintiffs cite no facts showing that any police officer interprets PG 221-13 to mean that they can seize mentally ill people for psychiatric evaluation just because they are mentally ill.

conclusions." *Id.* Hence, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). On a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

## ARGUMENT

### POINT I

### PLAINTIFFS' *MONELL* CLAIMS ARE DEFICIENT AND SHOULD BE DISMISSED

The TAC does not contain any separate cause of action for *Monell* or municipal liability. However, plaintiffs embed an implied *Monell* claim within all of their claims under 42 U.S.C. § 1983, by asserting those claims against all defendants, including the City. But, just as with the SAC, the TAC fails to allege a viable claim under *Monell*, because the TAC fails allege facts supporting a plausible inference that a municipal policy or custom was the proximate cause of an alleged constitutional violation against plaintiffs. *See Cash v. Cnty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) ("'[P]roximate cause,' although derived from tort law, fairly describes a plaintiff's causation burden with respect to a municipal liability claim under § 1983.").

The mere conclusory allegation that a municipality has such a custom or policy that caused a constitutional violation is insufficient in the absence of factual allegations tending to support a plausible inference that the conclusory allegation is true. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). Rather, "[p]laintiff must demonstrate that the municipal "policy" at issue

was the "moving force" behind her injuries, and "the identified deficiency . . . must be closely related to the ultimate injury." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between the [policy] alleged, and the particular constitutional violation at issue." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985); **see** Def. First Mem. at 34 (citing additional authority).

The TAC relies on substantially the same allegations as the SAC to support the *Monell* claim, which the Court has already ruled are insufficient. Order at 34-37. The only arguably new theories in the TAC are: (i) the City's alleged 911 policy and practice of dispatching police to mental health emergencies is *ipso facto* unconstitutional, and PG 221-13 purportedly authorizes police to take any mentally ill person into custody because of the word "or" in its definition of "EDPs." *See supra* at 3-4. As set forth below, these arguments fail for substantially the same reasons as the Court rejected plaintiffs' other theories: PG 221-13 tracks the requirements of MHL 9.41, which is constitutional, and MHL 9.41 calls for police or peace officers, and not civilians, to take people into custody for psychiatric evaluation.

A.    **The Patrol Guide Cannot Serve as a Basis for Plaintiff's *Monell* Claim**

As the Court has already held, PG 221-13 tracks the requirements of MHL 9.41, which is constitutional and not challenged by plaintiffs. Order at 36-38. Therefore PG 22-13 cannot form the basis of a *Monell* claim. *Id.*; *see* Def. First Mem. at 23-24. As in the SAC, the TAC insists throughout that the police should not be involved in the role that New York State law calls upon them to serve. *See* supra at 3-4. But PG § 221-13 merely implements MHL 9.41. *Compare* PG § 221-13 (instructing that the stated procedures apply "[w]hen a uniformed member of the service reasonably believes that a person who is apparently mentally ill or emotionally disturbed, must be

taken into protective custody because the person is conducting himself in a manner likely to result in a serious injury to himself or others") *with* § 9.41 (stating a "police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others"). As this Court has held, there is no doubt that § 9.41, and therefore the NYPD policy implementing it, is constitutional. *Order* at 36-37; *see In re K.L.*, 1 N.Y.3d 362, 370 (2004) ("[W]here a patient presents a danger to self or others, the state may be warranted, in the exercise of its police power interest in preventing violence and maintaining order, in mandating treatment over the patient's objection.")

As this Court has also held, the City's Initiative, which plaintiffs continue to challenge, adds nothing to plaintiffs' claim because is a directive to apply existing law under Section § 9.41. Order at 37. As explained by the Court, the City's policy is well grounded in § 9.41, and presents no deviation from constitutional requirements. *Id.*; see also Def. First Mem. at 26. [9]

The TAC contends that the definition of EDP in PG 221-13 suggests that police officers should take a person into custody solely because they are mentally ill, because it includes the word "or" between "mentally ill" and "temporarily deranged." ¶ 132. They contend that this implies that a person may be taken into custody either when (1) they are "mentally ill," or (2) when they are "temporarily deranged and is conducting himself in a manner which a police officer reasonably believes is likely to result in serious injury to himself or others." Exhibit A to the TAC at 1. That is obviously not a common or reasonable reading of the definition, since neither this Court nor

---

[9] Moreover, plaintiffs fail to allege facts from which the Court can infer that the Initiative was the moving force behind the § 9.41 seizure of any individual plaintiff.[9]  On that basis alone, plaintiffs lack standing to challenge the Initiative under *Monell*.  *City of Canton*, 489 U.S. at 389; *Oklahoma City*, 471 U.S. at 823 n.8; *Vippolis*, 768 F.3d at 44. Plaintiffs also allege facts about a 1984 incident. ¶¶ 71, 82(a).  That incident is excluded from this total because it falls outside—by two decades— the more recent range during which all other alleged incidents occurred.

even plaintiffs in their SAC or their prior opposition papers read it that way.  The straightforward interpretation of the EDP definition is that the phrase "and is conducting himself in a manner which a police officer reasonably believes is likely to result in serious injury to himself or others" modifies both "mentally ill" and "temporarily deranged."  This is so because mentally ill and temporarily deranged are equivalent, simple adjectives that convey similar conditions, while the complex phrase following the word "and" is, in contrast, a description of the person's conduct and its possible consequences.

Moreover, the Patrol Guide itself belies plaintiffs' strained reading, stating unambiguously that the procedure in PG 221-13 is to be used when a police officer "reasonably believes that a person who is apparently mentally ill or emotionally disturbed, *must be taken into protective custody because the person is conducting himself in a manner likely to result in a serious injury to himself or others*."  Exhibit A at 2 (emphasis added).  This leaves no doubt that the person should be taken into custody *only when* "the person is conducting himself in a manner likely to result in a serious injury to himself or others." *Id*.  In any event, plaintiffs present no facts plausibly showing that any officer read PG 221-13 in the peculiar fashion now adopted by plaintiffs.

Plaintiffs also rely on 911 procedures, which they contend have no provision specifically for mental health emergencies and does not call for mental health professionals to be called to a scene instead of police and EMS.  ¶ 71.  However, because New York State law only authorizes police or peace officers to take people into custody for psychiatric evaluation, and that rule is constitutional, it would be insufficient under MHL 9.41 to fail to dispatch police, in addition to EMS.  While plaintiffs imply that EMS does not always respond, nothing suggests that EMS did not respond in each of plaintiffs' cases, and PG 221-13 calls for the police to utilize EMS whenever a person is taken into custody for psychiatric evaluation.  Exhibit A at 5 § 40.  Plaintiffs in essence

contend that the City should disregard MHL 9.41, which authorizes only police or peace officers[10] -- not EMS or 'mental health professionals' – to take a person into custody for psychiatric evaluation.

As in the SAC, the TAC relies on opinions of non-parties that it would be better if mental health professionals responded to mental health emergencies.  ¶¶ 16 n. 20, 84, 104-08.  These have no more weight than conclusory allegations or legal conclusions asserted by plaintiffs themselves.  But even if using mental health professionals as emergency first responders would be better for patients, there is no law requiring it.  EMS is dispatched to mental health calls, just as they would be to a call regarding physical illness or injury, and plaintiffs do not allege facts to the contrary.  The constitution does not require more, just because it might be plaintiff's preference.[11] There will always be policy arguments for the City to expend more of its scarce resources to hire more mental health professionals to assist those in need.  But it is for the elected representatives of the City and State of New York, not plaintiffs, to determine how tax money should be spent.

## B.    Plaintiffs Fail to Establish a *De Facto* Policy or Practice

The Court has already held that plaintiffs' allegations regarding a *de facto* policy are insufficient, and the TAC adds nothing material to the allegations of the SAC in that regard.  Order at 38-39; *see* ¶¶ 92, 135-41.  "To demonstrate the existence of a *de facto* policy or custom through a widespread practice, a plaintiff must allege the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively sanctioning or

---

[10] Plaintiffs do not contend that the City should instead dispatch "peace officers," who are authorized to exercise police powers under New York law.  *See* N.Y. Crim. P. Law §§ 2.10, 2.20.

[11]  For example, dispatching cardiac specialists to 911 calls about possible heart attacks, or neurologists for head injuries might be preferred by others, but neither is legally required.

approving the conduct." *Sauer v. Town of Cornwall*, 20 Civ. 4881 (NSR), 2022 U.S. Dist. LEXIS 179284, at **15–16 (S.D.N.Y. Sep. 30, 2022); *see* Def. First Mem. at 26-28.

Plaintiffs once again rely on allegations (not findings) of adverse outcomes in police responses to mental health calls, based on third and second-hand media reports of those events. ¶ 135-41. Plaintiffs contend that they have identified 20 people who were allegedly killed by police during a mental health emergency in the nine years since 2015 (¶ 92), and 50 lawsuits arising from police responses to mental health crises in a decade (¶ 139). But, as this Court has already held, such numbers are insufficient as a matter of law, in the context of the more than 300,000 mental health calls that the City responds to every year. Order at 39, ¶ 64. As the Court stated: "Even if all 30 incidents alleged in the SAC occurred in a single year, they would represent only a fraction of a percent of all EDP calls responded to by the NYPD annually." *Order at 39* (citing *Buari v. City of New York*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 613 (S.D.N.Y. 2015). Even the alleged 2,687 CCRB complaints in six years (for which plaintiffs cite a newspaper article) constitute only 0.15% of mental health calls in that period, and those are allegations, not findings of misconduct. The allegations on which plaintiffs rely are generally dissimilar (if described) and unproven. Thus, plaintiffs' allegations still fall far short of plausibly alleging "misconduct sufficiently persistent or widespread as to indicate a pattern acquir[ing] the force of law." *Nunez v. City of New York*, 735 F. App'x 756, 760 (2d Cir. 2018) (quotations omitted) (*Monell* claim properly dismissed where plaintiff cited 48 instances of various prosecutorial misconduct over 23 years); *see also* Def. First Mem. at 26-27.

In addition, the Court has already held that reports by the Urban Justice Center regarding NYPD practices, on which plaintiffs continue to rely, are insufficient to support *Monell* liability.

*See* ¶¶ 111-112, & page 32 n.70; Order at 5-6, 38-39. [12]   Plaintiffs' allegations of national statistics

regarding use of force in mental health emergencies add nothing.  *See* ¶ 90.  Nationwide statistics

– in which the City represents only 2.3% of the national population[13] – are logically irrelevant to

the City's policies or practices.  Nor do statistics relating to New York City support a policy or

practice of constitutional violations, since they only show the rate at which the police take action,

not the rate of any violations of law.  *See* ¶ 91.  Taking a person into custody under MHL 9.41 is

not *per se* unconstitutional, nor is the use of force to do so.  Nor do alleged programs in other states

establish constitutional requirements or conditions in the City.  ¶ 109-10.

For example, the TAC, citing the NYPD 2022 Use of Force Report (the "Report"),[14] alleges

that "police interactions with people with mental disabilities were the second most common

situation in which police officers used force."  ¶ 91.  The first category of use of force is

"crime/violation in progress," and the second category is "EDP." "EDP" is not equivalent to

"police interactions with people with mental disabilities," as plaintiffs pretend.  Rather, EDP, as

defined by the NYPD, means "a person who appears to be mentally ill or temporarily deranged

and is conducting themselves in a manner that a uniformed member of the service reasonably

believes is likely to result in serious injury to himself or others." PG 221-13; Report 2022, at 41.

Thus, all EDP situations call upon the police to use reasonably necessary force to take an

uncooperative EDP into custody (since EDP is defined to mean that the person meets the

requirements of MHL 9.41).  So, it is unsurprising that force is used in such situations, just as it is

---

[12] Moreover, the legal opinions of third parties alleged in the TAC carry no more weight as factual allegations than the plaintiffs' own legal conclusions; that is none.

[13] The City has a population of approximately 8 million and the United States has a population of approximately 345.4 million. *See* https://www.worldometers.info/world-population/us-population/#google_vignette;https://worldpopulationreview.com/us-cities/new-york-ny-population.

[14] https://www.nyc.gov/assets/nypd/downloads/pdf/use-of-force/use-of-force-2022.pdf.

unsurprising that it is used to stop crime (the other of the top two categories).  But what is surprising – which plaintiffs fail to note – is how *infrequently* EDP calls result in the use of force.  The Report states that force was used in 1,740 out of 176,314 service calls classified as EDP calls in 2022 (Report at 41, 47); i.e., in less than 1 percent of EDP calls (.0099 percent).  If these statistics mean anything, it means that the NYPD exercises extraordinary restraint in its use of force in EDP situations, not the opposite as plaintiffs contend.[15]

Plaintiffs lard the TAC with numerous citations to the opinions of other advocates allied with their cause, but these opinions do not add any factual support to their claims.  The opinions of other advocates carry no more weight than plaintiffs citing their own opinions.  The TAC contains no new factual allegations that should cause the Court to reconsider its prior holding that the same sorts of allegations do not set forth a *Monell* claim.

## C.    Plaintiffs Fail to Demonstrate Deliberate Indifference

Plaintiffs' *Monell* claim also fails under a deliberate indifference theory.  A "failure to train . . . employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train . . . led to an independent constitutional

---

[15] The force used by police in EDP calls in 2022 was overwhelmingly less than lethal.  Tasers were used in 375 EDP calls (*id*. at 40), and of the 13 police incidents in 2022 resulting in the death of a civilian, none arose as calls for assistance to an EDP.  *See* NYPD Report, Appendix B, at 60-62.  There were only 40 incidents in 2022 where NYPD officers intentionally discharged firearms in "adversarial conflicts with criminal suspects."  Report at 6.  To place this number in context, NYPD received *over 7.1 million* calls for assistance in 2022.  *Id*. at 20.  The Report does not state if any of intentional discharge incidents originated from EDP calls, but even if they all did, which is highly unlikely, that would constitute only a vanishingly small percentage of EDP calls.

violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick v. Thompson*, 563 U.S. 51, 68 (2011). In addition, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *see also* Def. Mem. at 28-29 (citing cases).

Here, the TAC, like the SAC, offers a litany of policy rationales for plaintiffs' argument that the City's current training program is inadequate. E.g., ¶¶ 104-10. But those alleged theoretical inadequacies do not, without more, equate to deficiencies of a constitutional proportion. Moreover, no facts alleged show that the City was on notice that its training was inadequate. Given the relatively small number of alleged—and unproven, dissimilar—on which plaintiffs rely, their claim fails the notice requirement. Order at 39. Thus, the TAC fails to state a deliberate-indifference *Monell* claim.

## POINT II

**THE CLAIMS AGAINST THE EXECITIVE DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT, BECAUSE THEY ARE DUPLICATIVE, AND ARE BARRED BY <u>ABSOLUTE AND QUALIFIED IMMUNITY</u>**

A. **The Claims Against Mayor Adams, Former Mayor de Blasio, NYPD Commissioner Caban, former NYPD Commissioner Sewell, and Former NYPD Commissioner Shea Should Be Dismissed for Lack of Personal Involvement.**

Plaintiffs name Mayor Adams, former Mayor De Blasio, NYPD Commissioner Caban, former NYPD Commissioner Sewell, and former NYPD Commissioner Shea (the "Executive Defendants") but fail to allege that any of them were personally involved in the plaintiffs' incidents. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brandon v.*

13

*Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal citations omitted). "To state a claim for damages under Section 1983, a plaintiff must allege specific facts to demonstrate that the defendants were personally or directly involved in the violation." *McCoy v. Goord*, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003). In other words, a plaintiff must allege facts showing "that there was 'personal participation by one who had knowledge of the facts that rendered the conduct illegal.'" *Id.* (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). Further, a defendant in a § 1983 action may *not* be held liable merely because he holds a high position of authority. *See Wright*, 21 F.3d at 501. Rather, "each Government official . . . is only liable for his . . . own misconduct." *Iqbal*, 556 U.S. at 677.

**Police Executives.** Regarding the claims brought against NYPD Commissioner Caban, former NYPD Commissioner Sewell, and former NYPD Commissioner Shea (the "Police Executives"), Plaintiffs fail to assert personal involvement in any cause of action. *See Bey*, 2022 U.S. Dist. LEXIS 202762, at *26 n. 11; *see also Dove*, 56 F.Supp.2d at 335; *Wright*, 21 F.3d at 501. Plaintiffs allege only that the current and former Commissioners had "final authority to promulgate and implement administrative and managerial [the City's] policies and procedures." ¶¶ 32–34. That is nothing more than saying that they should be liable because they held a policy-making position, which is insufficient. *See Wright*, 21 F.3d at 501. Therefore, as Plaintiffs have not established the personal involvement of these Defendants, they should be dismissed from all § 1983 claims.

**Former Mayor de Blasio.** In 2014, Mayor de Blasio issued an Action Plan aiming to better mend the criminal justice and health systems. *See* ¶ 117. The TAC states that Mayor de Blasio helped open diversion drop-off centers, create task **forces**, and establish pilot programs. *See id.* at ¶¶ 117–23. While these allegations would indicate that DiBlasio was far from indifferent to

the rights of the mentally ill, it would not matter if it were the opposite.  Plaintiffs must demonstrate that there was "personal participation by one who had knowledge of the facts that rendered the conduct *illegal*." *Provost*, 262 F.3d at 155 (emphasis added).  Plaintiffs' description of "flawed" and "failing" plans does not equate to establishing personal involvement for a § 1983 claim. ¶ 124. The TAC nowhere alleges that former Mayor de Blasio had knowledge of or directly participated in illegal conduct against the defendants, nor any illegal conduct at all, and therefore the claims against de Blasio should be dismissed.

**Mayor Adams**.  Plaintiffs make the same conclusory allegations against Mayor Adams as they do against former Mayor de Blasio.  The only specific allegation against Adams is plaintiffs' conclusory assertion that the Initiative that Mayor Adams announced "further encourages the NYPD to improperly arrest people with mental disabilities and transport them to hospitals for involuntary psychiatric evaluations." ¶ 142.  But this is tantamount to saying that Mayor Adams is liable for being a policy maker when the City adopted a policy that plaintiffs contend – unsuccessfully (see supra Point I) – supports *Monell* liability for the City.  But *Monell* is a doctrine of vicarious liability for municipalities, not individuals.  Therefore, the claims against Mayor Adams should also be dismissed.

**B.    The Claims Against the Executive Defendants Should be Dismissed as Redundant.**

A "suit against the mayor and police chief in their official capacities is essentially a suit against the City of [New York], because in a suit against a public entity, naming officials of the public entity in their official capacities adds nothing to the suit." *Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010). In *Bey v. Adams*, 22-cv-2593 (PAE) (RWL), 2022 U.S. Dist. LEXIS 202762, at *26 n. 11 (S.D.N.Y. Nov. 4, 2022), the court dismissed claims against the Mayor and Department of Correction's Commissioner, "[w]hether named individually or in their official capacity," because they were New York City officials, and the Complaint failed to assert personal

involvement to support any individual claim against them. *See also Dove v. Fordham University*, 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted"). Thus, the claims against the Executive Defendants should be dismissed.

**C.    Absolute Immunity Bars Claims Against the Mayoral Defendants.**

Even if some claim could be directed at Mayor Adams and former Mayor de Blasio (the "Mayoral Defendants") those claims should be dismissed on grounds of absolute legislative immunity. In *Tenney v. Brandhove*, 341 U.S. 367 (1951), the Supreme Court held that all actions "in the sphere of legitimate legislative activity" qualify for absolute legislative immunity. *See also Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). When determining whether an action was taken within the realm of legislative activity, courts generally find that an act was legislative if it was an "integral step[] in the legislative process." *Bogan*, 523 U.S. at 55.   In *Bogan*, the Supreme Court held that "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Id.* at 54. The Supreme Court noted that "[a]bsolute immunity for local legislators under § 1983 finds support not only in history but also in reason." *Id.* at 52 (citing *Spallone v. United States*, 493 U.S. 265, 279 (1990).

In addition, "officials outside the legislative branch," such as mayors, "are entitled to legislative immunity when they perform legislative functions." *Bogan*, 523 U.S. at 55 (holding the mayor was entitled to legislative immunity because introducing a budget and signing into law an ordinance were "integral steps to the legislative process") (citing *Sup. Ct. Va.* v. *Consumers Union of U.S., Inc.*, 446 U.S. 719, 731–34 (1980)); *see also Olma v. Collins*, 499 Fed. Appx. 98, 99–100 (2d Cir. 2012). Absolute legislative immunity applies to non-legislators when the defendant "(1)

was acting in his or her 'legislative' capacity under the test articulated in *Bogan*, and (2) the grant of the requested relief would enjoin the defendant in his or her performance of legislative functions." *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 212 (N.D.N.Y. 2020) (citing *State Emples. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 76 (2d Cir. 2007)).

Here, plaintiffs challenge the Mayoral policies – especially the directives in Mayor Adams' Initiative – that were promulgated to implement MHL 9.41 for the benefit of the public.  In *Bogan*, the Supreme Court held that a mayor was entitled to legislative immunity for signing an ordinance into law because the ordinance "bore all the hallmarks of traditional legislation" by reflecting a "discretionary, policymaking decision." 532 U.S. at 55; *see also Smiley v. Holm*, 285 U.S. 355, 372–63 (1932) (holding that the mayor's signing or vetoing a bill is considered a legislative act). Here, the policies on which plaintiffs base their suit, to the extent that they involved the Mayoral Defendants at all, were implemented through directives bearing the hallmarks of "traditional legislation," being "discretionary, policymaking decision[s]" that the Supreme Court has held immune from liability. 532 U.S. at 55.

### D.    All Executive Defendants Are Entitled to Qualified Immunity.

Even if the Court were to find – contrary to its prior holdings – that City and NYPD policies ran afoul of constitutional law – and even if the Executive Defendants were not dismissed for the reasons stated above – the claims against them should be dismissed on grounds of qualified immunity.[16]   Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

---

[16] Qualified immunity applies equally to state law as well as federal claims.  *See Concepcion v. City of New York*, 15-CV-4844 (AMD) (LB), 2019 U.S. Dist. LEXIS 76601, at *14 (E.D.N.Y. May 6, 2019) (applying qualified immunity to state and federal false arrest claims) (citing *Kass v. City of New York*, 864 F.3d 200, 206, 213-14 (2d Cir. 2017) (dismissing federal and state law false arrest claims)).

which a reasonable person would have known." *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A right is clearly established only when a plaintiff can point either to "cases of controlling authority in [the] jurisdiction at the time of the incident" or to a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Ashcroft v. al-Kidd*, 563 U.S. 73, 735 (2011) (quotation omitted).  Clearly established law should not be defined "as a high level of generality," *al-Kidd*, 563 U.S. at 742, but instead must be "'particularized' to the facts of the case.'" *White v. Pauly*, 580 U.S. 73, 78 (2017) (per curiam) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "If the law at that time [of the conduct] did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (U.S. 2004); *see also* Def. First Mem. at 15-16 (citing cases).  In light of the arguments above, and the Court's prior rulings, there can be no doubt that even if the Court were to find some constitutional defect in City policy, that defect could not be 'clearly established' as required to overcome qualified immunity, and the claims against the Executive Defendants should be dismissed.

## POINT III

### PLAINTIFF AYU'S CLAIM FOR UNCONSTITIONAL SEIZURE FOR HIS APRIL AND MAY 2022 INCIDENTS SHOULD BE DISMISSED.

The Court dismissed plaintiff Ayu's claims for unconstitutional seizure for his alleged April and May 2022 incidents. [17]  Order at 19-20.  Plaintiff Ayu continues to claim that he was

---

[17] Although plaintiffs sometimes refer to their seizures as "arrests," that term is not legally applicable under New York law to seizures under MHL 9.41.  *See infra* at 21-22.  However, probable cause is the legal standard for seizures under MHL 9.41, just as for actual arrests.  *See* Order at 17-18.

taken into custody without justification under MHL 9.41, but the TAC fails to cure the deficiencies in Ayu's prior claim for the same conduct.  The only addition in the TAC are more general and conclusory statements that the police should not have responded to the incidents.  *See* ¶¶ 176, 191, 225, 255, 290, 331.  Therefore, Ayu's claim for those two incidents should be dismissed, and the individual defendants are protected by qualified immunity for those incidents.

## POINT IV

### PLAINTIFF COLLINS, AYU, AND AMITABH'S CLAIMS FOR WARRANTLESS ENTRY SHOULD BE DISMISSED

This Court dismissed the warrantless entry claims of Collins, Ayu, and Amitabh because each were seized in public.  *See* Order at 21.  Although that basic fact has not changed, plaintiffs appear to replead their claims for warrantless entry in the TAC for all plaintiffs.  *See* ¶¶ 474–86. Accordingly, the three warrantless entry claims should be dismissed for the same reasons as before. Moreover, the individual defendants are protected by qualified immunity from these claims.

## POINT V

### PLAINTIFFS' DISABILITY CLAIMS UNDER FEDERAL AND STATE LAW SHOULD BE DISMISSED

As an initial matter, the Court dismissed the federal disability claims of Amitabh, Arvio and Collins from the SAC because they failed to allege that they had a disability, and therefore could not proceed with a disability claim for that reason alone.  *Id*. at 33 n. 14.  The TAC likewise fails to allege that those plaintiffs suffered from any mental disability:  *See* Amitabh (¶¶ 291, 330); Collins (¶ 226); Arvio (¶ 192).  Therefore, the disability claims for those plaintiffs must be dismissed for the same reason as before.

In addition, the Court held that plaintiffs alleged only an inadequacy in the services provided to plaintiffs, rather than discrimination against them in services provided to the public: "Plaintiffs cannot claim they were denied a service, because the program they challenge provides a service—transport to a hospital for mental health care—exclusively to the mentally disabled. Plaintiffs' claim is squarely that the service the City provides—§ 9.41, as implemented by the EDP and Involuntary Removal Policy—is inadequate because it is carried out by police and not mental health workers." Order at 30. As the Court previously explained, "the purpose of the disability discrimination statutes is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)." *Id*. at 29; *see also Tardif v. City of New York*. 91 F.3d 394, 404 (2d Cir. 2021)).[18]

As the Court noted, a "program which provides services exclusively to the mentally disabled cannot discriminate against the mentally disabled within the meaning of the ADA and Rehabilitation Act. *Id*. at 30-32. The Court's prior holding equally applies to the TAC:

> Plaintiffs cannot claim they were denied a service, because the program they challenge provides a service—transport to a hospital for mental health care—exclusively to the mentally disabled. Plaintiffs' claim is squarely that the service the City provides—§ 9.41, as implemented by the EDP and Involuntary Removal Policy—is inadequate because it is carried out by police and not mental health

---

[18] *See also, e.g., Cushing*, 970 F.2d at 1109 ("[T]he rehabilitation act does not create a cause of action based on a handicap that is directly related to providing the very services at issue."); *Harrell v. New York State Dep't of Corr. & Cmty. Supervision*, No. 15 Civ. 7065, 2019 WL 3821229, at *16 (S.D.N.Y. Aug. 14, 2019) (no ADA violation where plaintiff "merely asserts that his disability was not adequately treated, not that he was treated inadequately because of his disability"); *Bryant v. Steele*, 25 F. Supp. 3d 233, 242 (E.D.N.Y. 2014) ("[A]n accusation that an individual was involuntarily committed on the basis of a mental disability cannot serve as a basis for an ADA or Rehabilitation Act violation for disability discrimination because such a finding would convert every involuntary commitment transport into a civil rights violation." (quotation and alteration omitted)); *Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (no ADA claim where plaintiff is "in essence challenging the adequacy of the mental health services provided . . . not illegal disability discrimination").

workers.  But as in *Tardif*, this "claim relates solely to whether [Plaintiffs] received adequate medical treatment in police custody for [their] disability. . . [which] is not cognizable under the ADA." 991 F.3d at 404.

Order at 30-31.

But the Court held that some of the plaintiffs' federal disability claims could proceed where the plaintiffs alleged that they were disabled and were also "arrested," because "arrest" was a program or service that is applicable to the general public, and plaintiffs alleged that they were treated differently during an "arrest" because of a disability.  Order at 33.

Defendants respectfully submit that the Court should reconsider that portion of its prior ruling because the Court did not consider whether plaintiffs' incidents were alleged to be "arrests" in the relevant sense.  New York law authorizes the police to make an "arrest" when there is probable cause to believe that a person committed a crime.  *See* N.Y. Crim. P. Law § 140.10.  The TAC makes no allegation that any officer took action against the plaintiffs in order to arrest them for a crime under N.Y. Crim. P. Law § 140.10.  Rather, the TAC alleges that the plaintiffs were removed pursuant to MHL 9.41, and probable cause to believe a crime has been committed is not mentioned in MHL 9.41, which does not use the term "arrest." In fact, if someone were arrested pursuant to the criminal law, then MHL 9.41 would not apply, since the person would be in custody, and there would be no need to seize them again for a psychiatric evaluation.

Nor does MHL 9.41 call for the police to provide voluntary transportation for mentally ill people, although they will do so in order to assist members of the public.  Rather, MHL 9.41 applies *if and only if* the person is being taken into custody involuntarily for psychiatric evaluation. To characterize that act as an "arrest' in the same sense as a criminal arrest describes the program at a level of generality that is inconsistent with the governing law on which the Court has relied. As this Court held in rejecting a DOJ opinion on which plaintiffs continue to rely in the TAC:

> The State of New York has determined that those with mental disabilities who pose a substantial risk of danger to themselves or others require a discrete emergency service, as expressed in § 9.41 and the policies which implement it. This service applies exclusively to the mentally disabled in order to deliver them mental health care. *See* N.Y. Mental Hyg. Law § 9.41 ("Such officer may direct the removal of such person or remove him or her to any [approved] hospital . . . or any comprehensive psychiatric emergency program . . . .").

Order at 32; *see* ¶¶ 94-99. Thus, the "mental health arrest" referred to by the TAC, and the Court, is none other than the involuntary removal for psychiatric evaluation called for by MHL 9.41, which, as the Court held, is a program intended solely for persons having a mental disability, not the general public. Therefore, all of plaintiffs' disability claims should be dismissed.[19]

**NYCHRL**    The TAC's claims under the NYCHRL should be dismissed for the same reasons that were dismissed from the SAC. As the Court held: "{T]here is no violation of the NYCHRL because state law expressly permits the use of police in responding to mental health crises." Order at 34. Accordingly, all of plaintiffs' claims under NYCHRL should be dismissed. Order at 35.

### POINT VI

**PLAINTIFFS CLASS ACTION ALLEGATION SHOULD BE STRIKEN BECAUSE THE CLAIMS IN THE TAC COULD NOT BE CERTIFIED UNDER RULE 23.**

---

[19] Authorities relied on by the Court are consistent with this approach. *See Reyes v. Town of Thomaston*, No. 3:18-cv-831 (JBA), 2020 U.S. Dist. LEXIS 181331, at *9 n.1 (D. Conn. Sep. 30, 2020) (police responding to threat with a knife where "there is no evidence that the officers had knowledge that the call involved an emotionally disturbed person")(quotation omitted); *Butchino v. City of Plattsburg*, No. 8:20-cv-796 (MAD/CFH), 2022 U.S. Dist. LEXIS 7995, at *2 (N.D.N.Y. Jan. 14, 2022) ("Plaintiff was arrested for assault by the Plattsburgh Police Department following a night of drinking."); *see also, e.g., Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999) ("The police in each case misperceived the effects of a disability as illegal conduct."); *Id.*, 186 F.3d at 1222 (noting that a plaintiff could claim that police failed "to investigate and arrest such persons in a manner reasonably accommodating their disability," where they were arresting them for a crime); *Haberle v. Troxell*, 885 F.3d 171, 174 (3d Cir. 2018) (decedent broke into a friends' home and stole a handgun, and police obtained a warrant for his arrest).

Defendants move to strike plaintiffs' demand for class certification pursuant to Fed. R. Civ. P. 26(f). "Whether to grant or deny a motion to strike lies within the court's sound discretion." *Garcia v. Execu/Search Grp., LLC*, 17 Civ. 9401 (WHP), 2019 U.S. Dist. LEXIS 68904, at *3 (S.D.N.Y. Feb. 19, 2019). The court may grant a motion to strike a demand for class certification when the class certification "issues are plain enough from the pleadings." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982). Where, as here, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met, the Court may strike the class allegations at any practicable time after the suit has been filed." *Borgese v. Baby Brezza Enters. LLC*, 2021 U.S. Dist. LEXIS 30216, at *5-6 (S.D.N.Y. Feb. 18, 2021); *see also Camacho v. City of New York, et. al.*, 19 Civ. 11096 (DLC), 2020 U.S. Dist. LEXIS 125801, at *9–11 (S.D.N.Y. July 16, 2020) (striking class allegations before a motion for class certification was filed because it was "already clear" that the defects in the class allegations could not be cured); "[T]he plausibility standard will generally apply to such motions." *Borgese*, 2021 U.S. Dist. LEXIS 30216 at *6.

Fed. R. Civ. P. 23 governs class certification. As a general matter, Rule 23(a) establishes four prerequisites in which an individual—or individuals—may litigate on behalf of a class: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. *See Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiffs must satisfy at least one of the three requirements outlined in Rule 23(b). *See id.* The TAC fails to satisfy all requisite elements of Rule 23(a), 23(b)(3) and 23(b)(2). Thus, this Court should strike plaintiffs' demand for class certification pursuant to Fed. R. Civ. P. 12(f).

**A.    Plaintiffs' Claims Cannot Meet the Requirements of Rule 23(a)**

In general, Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-mart*, 564 U.S. at 349. The four elements listed

above—numerosity, commonality, typicality, and adequate representation—"limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Id.* (citations omitted).

Commonality is satisfied when plaintiffs' claims share a common question of law or fact. *See id.* Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). The commonality and typicality elements "tend to merge." *Falcon*, 457 U.S. at 157–58 n.13. Neither commonality nor typicality will be satisfied for false arrest and excessive force claims "merely because there are some common issues" between each class member. *See Haus v. City of New York*, 03 Civ. 4915 (RWS) (MHD), 2011 U.S. Dist. LEXIS 155735, at *300, 323 (S.D.N.Y. Aug. 31, 2011) (if "[t]he lawfulness of each arrest requires an assessment of the circumstances surrounding it," commonality and typicality are not met); *see also Mothersell v. City of Syracuse*, 289 F.R.D. 389, 395–96 (N.D.N.Y. 2013) (strip search); *Packard v. City of New York*, 2020 U.S. Dist. LEXIS 54003 (S.D.N.Y. Mar. 25, 2020) (false arrest); *Universal Calvary Church v. City of New York*, 177 F.R.D. 181, 183 (S.D.N.Y 1988) (excessive force).

Further, courts in this Circuit have denied class action certification for Title III of the Americans with Disabilities Act ("ADA") claims, given the time-consuming and fact-specific nature of individualized cases. *See Grinblat v. Michell Wolf LLC*, 338 F.R.D. 15, 16 (E.D.N.Y. 2021) (stating "Title III ADA cases against a single franchisee are particularly poor candidates for class certification and thus successful class certification motions in this Circuit in cases like this are few and far between."); *see also Grinblat v. Nulife of Brooklyn, LLC*. 20-CV-5854 (PKC) (PK), 2021 U.S. Dist. LEXIS 60534, at *2 (E.D.N.Y. Mar. 30, 2021).

Commonality exists only when the purported common question is "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350–51.  A court may certify a class when the "class members' injuries 'derive from a unitary course of conduct by a single system[.]'" *See Brennan v. City of New York*, 2023 U.S. Dist. LEXIS 155576, at *12 (E.D.N.Y. Sept. 1, 2023) (citations omitted).  Here, no "unitary system" is alleged that is the cause of a deprivation of rights, because, as set forth above, MHL 9.41 is constitutional. For the same reasons, plaintiffs could not meet the requirement of Rule 23(b)(2)&(3).[20]

## **CONCLUSION**

For the reasons stated above, the Court should dismiss the specified claims in the Third Amended Complaint and strike the plaintiffs' demand for class action certification and class-wide relief.

Dated:        New York, New York
              August 19, 2024

                        MURIEL GOODE-TRUFANT
                        Acting Corporation Counsel of the
                         City of New York
                        *Attorney for Defendants*
                        100 Church Street, Room 3-177
                        New York, New York 10007
                        (212) 356-2344


                  By:    *Alan Scheiner* /s/
                         _____
                         Alan Scheiner
                         *Senior Counsel*

---

[20] Defendants sought permission to file excess pages, but the Court has not ruled on the application. Therefore, defendants are required to omit a full written argument under Fed. R. Civ. P. 12(b)(2)&(3).  Defendants will submit their additional two pages of argument should the Court grant permission to do so.